UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL ELECTION COMMISSION,<br>999 E Street N.W., Washington D.C.<br>20463<br><br>       Plaintiff,<br><br>   v.<br><br>CLUB FOR GROWTH, INC.,<br>2001 L Street N.W., Suite 600,<br>Washington, D.C. 20036<br><br>       Defendant. | Civ. No.<br><br><br><br><br><br>COMPLAINT FOR DECLARATORY,<br>INJUNCTIVE, AND OTHER<br>APPROPRIATE RELIEF<br>(EQUITABLE RELIEF SOUGHT) |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND
OTHER APPROPRIATE RELIEF**

    1.  This action principally concerns the failure of defendant Club for Growth, Inc. ("Club") to register as a political committee with the Federal Election Commission ("FEC" or "Commission"), despite spending millions of dollars on federal campaign activity during the 2000, 2002, and 2004 election cycles, and despite receiving significant contributions from donors in response to solicitations clearly indicating that their donations would be used to help elect or defeat specific federal candidates.  As set forth below, the vast majority of the Club's disbursements are for federal campaign activity, including candidate research and evaluation, polling, and advertisements referencing or expressly advocating the election or defeat of clearly identified federal candidates.  The Club itself has repeatedly asserted that its purpose is to "elect pro-growth congressmen" and "defeat status quo incumbents."  <u>Infra</u> at ¶ 21.  In violation of the Federal Election Campaign Act ("FECA" or "Act"), however, the Club has never registered as a political committee with the Commission and has failed to report to the Commission its receipts and

disbursements, which include more than a quarter million dollars in prohibited contributions from corporations and more than $9 million in contributions that exceed the limits of the Act. Even if the Club were not required to abide by the rules and restrictions applicable to political committees, it nevertheless violated the Act by using its own corporate funds for communications expressly advocating the election or defeat of federal candidates.

## JURISDICTION AND VENUE

2. This action seeks declaratory, injunctive, and other appropriate relief pursuant to the express authority granted to the FEC by the Act, as amended (codified at 2 U.S.C. 431-455).

3. This Court has jurisdiction over this suit pursuant to 28 U.S.C. 1345 as an action brought by an agency of the United States expressly authorized to sue by an act of Congress. See 2 U.S.C. 437d(a)(6), 437g(a)(6).

4. Venue is properly found in the District of Columbia in accordance with 2 U.S.C. 437g(a)(6)(A) and 28 U.S.C. 1391(b). The Defendant Club resides and transacts business in this district, and a substantial part of the acts and omissions giving rise to the claims in this action occurred in this district.

## PARTIES

5. Plaintiff FEC is the independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the Act. See generally 2 U.S.C. 437c(b)(1), 437d(a), & 437g. The Commission is authorized to institute investigations of possible violations of the Act, 2 U.S.C. 437g(a)(1) and (2), and has exclusive jurisdiction to initiate civil actions in the United States district courts to obtain judicial enforcement of the Act, 2 U.S.C. 437c(b)(1), 437d(e).

6. Defendant Club for Growth, Inc. is a Virginia corporation with its principal place of business at 2001 L Street N.W., Suite 600, Washington, D.C. 20036. Prior to moving to this address, the Club's principal place of business was on K Street in Washington, D.C. The Club is registered with the Internal Revenue Service ("IRS") as a political organization under Section 527 of the Internal Revenue Code, but has not registered with the FEC as a political committee. Although the Club has an affiliated political committee, Club for Growth PAC ("PAC"), which is registered with the FEC, the contributions and expenditures referenced herein were not received or made by the PAC.

ADMINISTRATIVE PROCEEDINGS

7. This matter was initiated by an administrative complaint filed with the Commission by the Democratic Senatorial Campaign Committee ("DSCC"). See 2 U.S.C. 437g(a)(1). In its administrative complaint, the DSCC alleged, among other things, that the Club had improperly failed to register as a political committee, and was "us[ing] its soft money to corrupt our elections." For administrative purposes, this matter was designated as Matter Under Review ("MUR") 5365.

8. On October 19, 2004, by an affirmative vote of at least four of its members, the Commission found reason to believe that the Club had violated the Act and authorized an investigation. See 2 U.S.C. 437g(a)(2). Among other things, the Commission found:

    A. Reason to believe that the Club violated 2 U.S.C. 433 and 434 by failing to register as a political committee with the Commission and report its contributions and expenditures;

    B. Reason to believe that the Club violated 2 U.S.C. 441a(f) by knowingly accepting contributions in excess of $5,000 and 2 U.S.C. 441b(a) by knowingly accepting corporate contributions; and

    C. Reason to believe that the Club violated 2 U.S.C. 441b and 11 C.F.R. 114.2(a) by making prohibited corporate expenditures.

9. After completing an investigation, the Commission's General Counsel notified the Club on April 25, 2005, that he was prepared to recommend that the Commission find probable cause to believe that the Club violated the Act. At that time, the General Counsel also provided the Club with a brief stating his position on the factual and legal issues involved. The Club filed its response on May 31, 2005.

10. On July 19, 2005, the Commission voted to find probable cause to believe that the Club violated the Act, and approved a proposed conciliation agreement with the Club. Specifically, the Commission found:

    A. Probable cause to believe the Club violated 2 U.S.C. 433 and 434 by failing to register as a political committee with the Commission and report its contributions and expenditures;

    B. Probable cause to believe that the Club violated 2 U.S.C. 441a(f) by knowingly accepting contributions in excess of $5,000 and 2 U.S.C. 441b(a) by knowingly accepting corporate contributions; and

    C. In the alternative, probable cause to believe that the Club violated 2 U.S.C. 441b and 11 C.F.R. 114.2(a) by making prohibited corporate expenditures.

11. On July 21, 2005, the Club was notified of the Commission's actions and received a copy of the Commission's proposed conciliation agreement. For a period of not less than 30 days, the Commission endeavored to correct the Club's violations through informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with the Club. See 2 U.S.C. 437g(a)(4)(A)(i). However, the Commission has been unable to secure an acceptable conciliation agreement with the Club.

12. The Commission has satisfied all of the jurisdictional requirements in the Act that are prerequisite to filing this action against the Club.

## RELEVANT STATUTORY AND REGULATORY PROVISIONS

13. Under the Act, any committee, club, association, or other group of persons that receives "contributions" or makes "expenditures" aggregating in excess of $1,000 during a calendar year is a "political committee," 2 U.S.C. 431(4)(A), if influencing elections is its major purpose. Buckley v. Valeo, 424 U.S. 1, 79 (1976).

14. A "contribution" includes "any gift, subscription, loan, advance, … or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. 431(8)(A)(i).

15. An "expenditure" includes "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. 431(9).

16. The Act requires all political committees to register with the Commission and to file periodic reports of their receipts and disbursements for disclosure to the public. 2 U.S.C. 433 and 434.

17. The Act prohibits any political committee from knowingly accepting or receiving a contribution from a corporation or union in connection with any election for federal office. 2 U.S.C. 441b(a).

18. The Act also limits the amount that can be contributed to political committees by individuals and other entities. 2 U.S.C. 441a. See also 11 C.F.R. parts 100, 110, and 114. Under the Act, contributions to a non-party, multicandidate political committee are limited to $5,000 during a calendar year, and have been so limited throughout the Club's existence. 2 U.S.C. 441a(a)(1).

19. The Act prohibits corporations and unions from making expenditures in connection with a federal election from their general treasury funds. 2 U.S.C. 441b(a). See also 11 C.F.R. 114.2. Although corporations and unions may make such expenditures from separate segregated funds established pursuant to the Act, all contributions to such funds must comply with the source restrictions and contribution limitations in the Act applicable to independent political committees.

FACTUAL BACKGROUND

20. The Club was incorporated in 1999 to help elect candidates who would vote for and implement its policy views. In its July 28, 2000 registration statement with the IRS, the Club described itself as "primarily dedicated to helping elect pro-growth, pro-freedom candidates through political contributions and issue advocacy campaigns." In correspondence with prospective supporters, the Club has stated that it has a "sole mission — to support political candidates who are advocates of the Reagan vision of limited government and lower taxes." CLUB 0384 (text accompanying membership acceptance form).[1] Its bylaws state that "[t]he mission of the Club is to identify … political candidates running for elected office who believe in these ideals, to help finance their elections, and to monitor their performance in elected office." CLUB 000001.

21. The Club's primary electoral focus is congressional races. For example, the Club's former President, Stephen Moore, has solicited donations to the Club by stating, "Since we target the most competitive races in the country, your membership in the Club will help Republicans keep control of Congress." CLUB 000151 (emphasis in original). In addition, numerous other

---

[1] All references to bates-numbered "CLUB" documents are to documents produced by the Club to the Commission in MUR 5365; the Club numbered the documents before providing them to the Commission.

solicitations from the Club to existing or potential Club donors urge them to support the Club to "elect pro-growth congressmen[,]" CLUB 000025 (membership acceptance form); "help elect leaders," CLUB 000046 (letter from Stephen Moore); "get pro-growth candidates elected[,]" CLUB 000174 (letter from Stephen Moore) (emphasis omitted); and "defeat status quo incumbents," CLUB 0211 (letter from Stephen Moore).

22. The Club has described itself as having "played a big role in helping elect 10 new fiscal conservatives to Congress in the 2000 election[,]" CLUB 000042 (sample letter), and as "a major factor in the successful effort to keep the House under Republican control," CLUB 000058 (memo to Club for Growth members and friends). Congressman Paul Ryan also stated that in 2002, "the Club for Growth help[ed] Republicans keep a majority in the House[.]" CLUB 000178 (letter to Stephen Moore).

23. In 2004, the Club continued its efforts to influence federal elections, by seeking to "elect 20 more new Club for Growth candidates to Congress" and to "[e]lect more Club for Growth Senators." CLUB 0844 (memo to Club for Growth members). In this and other election cycles, the Club also singled out particular candidates for defeat. For example, with respect to the 2004 Republican primary in Nebraska's First Congressional District, Stephen Moore reportedly stated, "All we cared about was keeping Curt Bromm out of the Congress — that was our whole agenda." CLUB 0954 (Associated Press article).

24. On May 17, 2004, shortly after Bromm was defeated, the Club claimed that "[o]ur strategy of gradually improving the gene pool in Congress by making sure that all open-seat races go to strong pro-growth candidates is working well – though this approach takes time to rid the Congress of RINOs [Republicans In Name Only]." CLUB 0953 (memo from Stephen Moore and Club Executive Director David Keating). The Club has reportedly stated that its long-term

7

goal is becoming such a dominant force in federal elections that "no one can win a Senate or House seat without the support of Club for Growth." Matt Bai, <u>Fight Club</u>, N.Y. TIMES MAG., Aug. 10, 2003, at 24.

***Contributions to the Club***

25. Much of the Club's funding comes from contributions that exceed the Act's contribution limits. In the most recent calendar year, 2004, the Club received more than $4,000,000 in contributions from persons who gave in amounts that exceeded the $5,000 statutory limit. Over $3,000,000 of these contributions came from a small group of just fourteen donors, who donated in amounts ranging from $100,000 to at least $475,000 for the calendar year.

26. The Club actively encourages these large donations exceeding the limits of the Act. The Club's Executive Director and former President have both told its supporters to "remember that you can write a check for any amount to the Club for Growth…. Contributions of $1 million or more will be gratefully accepted and won't count against any limits." CLUB 0936 (memo to Club for Growth members).

27. The Club also encourages and accepts contributions from corporations. The Club's bylaws expressly state that one way an individual may become a member of the Club is by "[a]uthorizing or successfully soliciting a corporate supporting membership contribution" to the Club. CLUB 000006. The Club accepted at least $123,289 in corporate contributions in 2000, and $222,000 in corporate contributions in 2001. The Club has accepted corporate contributions in other years as well.

28. Some of the Club's solicitations for donations make clear that contributions will be used for the purpose of supporting or opposing specific federal candidates. Funds given in

8

response to such solicitations are "contributions" under 2 U.S.C. 431(8) because they are given for the purpose of influencing federal elections. See FEC v. Survival Education Fund, Inc., 65 F.3d 285, 295 (2d Cir. 1995).

29. For example, a solicitation dated September 13, 2000, states that "[n]ow is the time when you can make the most impact for Jeff Flake and our other candidates.  Please join the Club for Growth with your gift of $50, $100, $250 or $1,000 today[.]" CLUB 000152 (letter from Stephen Moore) (emphasis in original).  Jeff Flake was, at that time, a candidate for Congress.

30. Another solicitation dated August 8, 2003, announces the release of a Club advertisement that "hits Senate Democrat Leader Tom Daschle right between the eyes[,]" and states that "[a]ll funds you donate will be earmarked for this ad and others in our advertising campaign to expose Daschle's anti-growth record." CLUB 0436-37 (Tom's House Ad Campaign Support Memorandum).  In exhorting potential donors to contribute, this solicitation notes that "South Dakota is a conservative state that voted Republican in the 2000 presidential election with 60% of the vote.  With George Bush at the top of the ticket in '04, Daschle is even more vulnerable….  The potential prize here is enormous." Id.

31. The Club has received much more than $1,000 in response to these solicitations, and has received large amounts of money in response to other solicitations indicating that contributions would be targeted to the election or defeat of clearly identified candidates for federal office.  For example, the Club solicited "unlimited contribution[s]" in 2004 to air ads attacking Democratic presidential candidate John Kerry in "key battleground states." CLUB 1541 (videotape solicitation).

9

*Expenditures by the Club*

32. The Club spends the vast majority of its money on candidate research, polling, and advertising. These expenditures are made primarily in connection with congressional races. On information and belief, the Club did not make any disbursements on state and local races during the 2004 election cycle.

33. During every election cycle, the Club evaluates which candidates to endorse by engaging in an extensive research process that includes (1) candidate interviews; (2) visits to their districts; (3) days or even weeks of staff time reviewing information about the candidates, their record and positions, the district in which they are running, and their financial resources; and (4) input from outside political researchers or consultants.

34. The Club also has frequently commissioned polls to determine its favored candidates' chances of winning.

35. The largest single component of the Club's expenditures is political advertising. In 2002, for example, more than half of the Club's disbursements were for advertising. On information and belief, the Club also spent more than half its budget on political advertising in 2000 and 2004.

36. Many of the Club's advertisements contain words that expressly advocate the election or defeat of clearly identified federal candidates. In total, the Club has spent more than $1 million on communications to the general public expressly advocating the election or defeat of clearly identified federal candidates.

37. For example, the Club spent more than $30,000 in late September and early October 2000 to produce and air the following radio advertisement on behalf of Ric Keller, a challenger in the primary runoff for Florida's Eighth Congressional seat: "This is a mission for Orange

10

County Republican primary run-off voters.  Your mission is to find a Republican for Congress who will battle liberal Democrat Linda Chapin….  Remember, only a tax cutter like Ric Keller can help you accomplish your mission."  CLUB 000305 ("Mission" ad script).  In addition, the Club spent more than $85,000 on a television advertisement containing nearly identical language.

38.  In 2002, the Club spent at least $140,000 to produce and air an advertisement on behalf of Republican primary candidate Steve King in Iowa's Fifth Congressional District.  This advertisement begins by stating that "Congress sure could use a real Iowa conservative" and ends by telling potential voters that "Steve King is the real deal."  www.clubforgrowth.org/video/king-script.php (last visited Aug. 5, 2005) ("Courage" script).

39.  The Club also expressly advocates the election or defeat of federal candidates through other communications.  For example, the Club spent more than $4,000 in September 2000 in connection with the following phone bank message from former congressman Jack Kemp on behalf of congressional candidate Jeff Flake: "Jeff will serve your first district, I believe in Arizona, with honest [sic], integrity and dedication.  Please vote on Tuesday and keep Jeff Flake in mind when you do."  CLUB 000333 (script).

40.  By making these and other expenditures for the purpose of influencing federal elections, the Club triggered political committee status at least as of August 2000.  However, the Club never has acknowledged its status as a political committee with the Commission, either by registering or reporting with the Commission as a political Committee, and never has sought to terminate its status as a political committee under the Act.

## FIRST CAUSE OF ACTION

41. The Commission hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

42. In multiple calendar years, the Club has received in excess of $1,000 in contributions and made in excess of $1,000 in expenditures.

43. The Club's major purpose is to influence the nomination or election of candidates to federal office.

44. Beginning no later than 2000, the Club violated 2 U.S.C. 433 by failing to register with the Commission as a political committee.

## SECOND CAUSE OF ACTION

45. The Commission hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

46. As a political committee, the Club was required to file periodic reports with the Commission detailing its receipts and disbursements, pursuant to 2 U.S.C. 434.

47. The Club violated 2 U.S.C. 434 by failing to file each of these required reports since it has been a political committee.

## THIRD CAUSE OF ACTION

48. The Commission hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

49. As a political committee, the Club was prohibited from knowingly accepting contributions in excess of the $5,000 limitation established by 2 U.S.C. 441a(a)(1).

50. The Club violated 2 U.S.C. 441a(f) by knowingly accepting contributions in excess of this limitation.

### FOURTH CAUSE OF ACTION

51. The Commission hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

52. As a political committee, the Club was prohibited by 2 U.S.C. 441b from knowingly accepting corporate contributions.

53. The Club violated 2 U.S.C. 441b by knowingly accepting corporate contributions.

### FIFTH CAUSE OF ACTION

54. The Commission hereby realleges and incorporates each of the foregoing allegations as if set forth herein.

55. As a corporation, the Club was prohibited by 2 U.S.C. 441b from making expenditures in connection with federal elections.

56. The Club violated 2 U.S.C. 441b by making prohibited corporate expenditures.

### REQUEST FOR RELIEF

Wherefore, Plaintiff Federal Election Commission requests that this Court:

A. Declare that Club for Growth, Inc. violated 2 U.S.C. 433 by failing to register as a political committee with the Commission.

B. Declare that Club for Growth, Inc. violated 2 U.S.C. 434 by failing to file periodic reports of its receipts and disbursements with the Commission.

C. Declare that Club for Growth, Inc. violated 2 U.S.C. 441a(f) by knowingly accepting contributions that exceeded the limitations established by the Act.

D. Declare that Club for Growth, Inc. violated 2 U.S.C. 441b by knowingly accepting prohibited corporate contributions.

E.    In the alternative, declare that Club for Growth, Inc. violated 2 U.S.C. 441b by making prohibited corporate expenditures.

F.    Permanently enjoin Club for Growth, Inc. from engaging in further violations of the Act similar to those found by the Court.

G.    Order Club for Growth, Inc. to register with the Commission as a political committee.

H.    Order Club for Growth, Inc. to file disclosure reports with the Commission as required of political committees regarding its receipts and disbursements since it became a political committee.

I.    Order Club for Growth, Inc. to file ongoing disclosure reports with the Commission as required of political committees until such time as the Club terminates its status as a political committee in the manner provided in 2 U.S.C. 433(d)(1) and 11 C.F.R. 102.3.

J.    Order Club for Growth, Inc. to disgorge all excessive and prohibited contributions that it has received since it became a political committee.

K.    Assess an appropriate civil penalty against Club for Growth, Inc. See 2 U.S.C. 437g(a)(6)(B).

L.    Grant Plaintiff Federal Election Commission such other relief as may be appropriate.

Respectfully submitted,

Lawrence H. Norton
General Counsel

Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

14

*[signature]*
David Kolker
Assistant General Counsel
(D.C. Bar #394558)

*[signature]*
Erin Monaghan
Attorney
(D.C. Bar #438434)

*[signature]*
Kai Richter
Attorney

FOR THE PLAINTIFF
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C. 20463
(202) 694-1650
(202) 219-0260 (FAX)

Date: September 19, 2005