UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL ELECTION COMMISSION,          )
                                      )          Case No.  1:05cv01851
                    Plaintiff,        )          Judge Urbina
                                      )
          v.                          )
                                      )
CLUB FOR GROWTH, INC.,                )
                                      )
                    Defendant.        )


**PLAINTIFF FEDERAL ELECTION COMMISSION'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

Lawrence H. Norton
General Counsel

Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

David Kolker
Assistant General Counsel
(D.C. Bar #394558)

Erin Monaghan
Attorney
(D.C. Bar #438434)

Kai Richter
Attorney

FOR THE PLAINTIFF FEDERAL
ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C.  20463
(202) 694-1650
(202) 219-0260 (FAX)

Date:  December 23, 2005

## TABLE OF CONTENTS

**Page**

BACKGROUND ...........................................................................................2

  A.  The Federal Election Commission and the FECA .............................2

  B.  The Administrative Proceedings Against the Club .............................4

  C.  The Conciliation Process....................................................................6

  D.  The Present Action.............................................................................8

ARGUMENT ..............................................................................................9

  I.  STANDARD OF REVIEW ................................................................9

  II.  THERE ARE NO BARRIERS TO THE COURT'S EXERCISE OF
      JURISDICTION OVER THIS CASE, AND THE CLUB'S MOTION TO
      DISMISS SHOULD BE DENIED..................................................11

      A.  The Commission Has Voted to Initiate and Maintain This Action ......12

          1.  The Commission Voted Post-Conciliation to Ratify the Filing of
             Suit and Re-Authorize the General Counsel to Pursue
             this Action .....................................................................13

          2.  The Commission's Initial Vote to Authorize This Litigation
             Satisfied the Requirements of 2 U.S.C. 437g(a)(6) ........................16

          3.  Any Alleged Defect in the Timing of the Commission's Vote
             Would Not Deprive the Court of Jurisdiction................................19

      B.  There Is No Basis For Dismissing This Action Based On The
          Commission's Allegedly Inadequate Attempt To Conciliate ..............20

          1.  The Commission Met Its Obligation to Attempt to Resolve
             the Club's Violations of the Law Through Conciliation ..............21

          2.  The Act's Conciliation Requirement Is Not Jurisdictional............25

      C.   The Commission Provided Adequate Notice To The Club
          Of The Administrative Complaint ........................................26

1.    The Club Had Actual Notice of the DSCC's Complaint Within Five Days ...................................................................27

2.    Failure to Meet Administrative Timing Requirements Is Not a Basis for Dismissal ..................................................................28

CONCLUSION.............................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

American Fed'n of Gov't Employees v. Fed. Labor Relations Auth., 778 F.2d 850
(D.C. Cir. 1985) ..........................................................................................17

*Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003)..................................................29

Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395
    (D.C. Cir. 1988) ..................................................................................27, 28

Beverly Enterps., Inc. v. Herman, 130 F. Supp. 2d 1 (D.D.C. 2000) ...........................10

Bowles v. Wheeler, 152 F.2d 34 (9th Cir. 1945)....................................................14, 15

Branch Ministries v. Rossotti, 211 F.3d 137 (D.C. Cir. 2000) ...................................11

Brock v. Pierce Co., 476 U.S. 253 (1986) ........................................................29, 30, 31

Brotherhood of Ry. Carmen Div., Transp. Comm. Int'l Union v. Pena, 64 F.3d
    702 (D.C. Cir. 1995) ..................................................................................29

Bruce v. S & H Riggers & Erectors, Inc., 732 F. Supp. 1172 (N.D.Ga. 1990) ...........27

Buckley v. Valeo, 424 U.S. 1 (1976)...............................................................3, 31

Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080
    (D.C. Cir. 1998) ......................................................................................9

Common Cause v. FEC, 842 F.2d 436, 448 (D.C. Cir. 1988).....................................10

Communist Party of the U.S.A. v. Commissioner of Internal Revenue, 332 F.2d
    325 (D.C. Cir. 1964) ..................................................................................14

Day v. Avery, 548 F.2d 1018 (D.C. Cir. 1976) ..........................................................16

Dinkins v. Charoen Pokphand USA, Inc., 133 F. Supp. 2d 1237
    (M.D.Ala. 2001)..................................................................................11, 22

Doolin Security Sav. Bank, F.S.B. v. Office of Thrift Supervision, 139 F.3d 203
    (D.C. Cir. 1998) ..................................................................................15

EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256 (11th Cir. 2003).........................24

EEOC v. Colgate-Palmolive Co., 1983 WL 621 (S.D.N.Y. 1983)..............................25

EEOC v. Dial Corp., 156 F.Supp. 2d 926 (N.D.Ill. 2001)..............................................22

EEOC v. Equicredit Corp. of Am., 2002 WL 31371968 (E.D.Pa. Oct. 8, 2002) ........ 22

EEOC v. First Midwest Bank, N.A., 14 Supp. 2d 1028 (N.D.Ill. 1998) .....................25

EEOC v. Gard Corp., 795 F. Supp. 1066 (D.Kan. 1992) ............................................23

*EEOC v. Keco Indus., 748 F.2d 1097 (6th Cir. 1984)...........................................22, 23

EEOC v. Klingler Elec. Corp., 636 F.2d 104 (5th Cir. 1981)......................................25

EEOC v. Magnolia Elec. Power Ass'n, 635 F.2d 375 (5th Cir. 1981) .........................28

EEOC v. Massey-Ferguson, Inc., 622 F.2d 271 (7th Cir. 1980) .................................23

EEOC v. MFC Servs., 1975 WL 199 (S.D.Miss. Mar. 20, 1975) ................................18

EEOC v. Nat'l Cash Register Co., 405 F. Supp. 562 (N.D.Ga. 1975) ..................11, 15

EEOC v. Odd Fellows Home of Virginia, Inc., 2005 WL 1950185
     (W.D.Va. Aug. 15, 2005)....................................................................................24

EEOC v. Otto, 1976 WL 610 (D.Md. Feb. 20, 1976)............................................18, 19

EEOC v. Raymond Metal Prods. Co., 530 F.2d 590 (4th Cir. 1976) ...........................17

EEOC v. Sears, Roebuck & Co., 504 F. Supp. 241 (N.D.Ill. 1980) ......................21, 26

EEOC v. Sears, Roebuck, & Co., 1980 WL 108 (N.D.Ga.
     Mar. 14, 1980)...............................................................................................22, 23

EEOC v. Sears, Roebuck & Co., 650 F.2d 14 (2d Cir. 1981) .................................... 24

*EEOC v. Sears, Roebuck, & Co., 1989 WL 120650 (N.D.Cal.
     Aug. 21, 1989) .....................................................................................................23

*EEOC v. Shell Oil Co., 466 U.S. 54 (1984) ..............................................................30

EEOC v. Times-Picayune Pub. Corp., 500 F.2d 392 (5th Cir. 1974)...........................11

EEOC v. Zia Co., 582 F.2d 527 (10th Cir. 1978) ........................................................22

\*FEC v. Committee to Elect Lyndon LaRouche, 613 F.2d 834 (D.C. Cir. 1979) ..............................................................................16, 17, 20

FEC v. Committee to Elect Lyndon LaRouche, 613 F.2d 849 (D.C. Cir. 1979)..........28

FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27 (1981) ..................7, 10

FEC v. Franklin, 718 F. Supp. 1272 (E.D.Va. 1989), aff'd in relevant part, 902 F.3d 3 (4th Cir. 1989) ......................................................................28

FEC v. Lane Evans, No. 04-4003, slip op. at 3 (C.D.Ill. Feb. 8, 2005)..................10, 11

\*FEC v. Legi-Tech, 75 F.3d 704 (D.C. Cir. 1996)................................................passim

\*FEC v. Malenick, 310 F. Supp. 2d 230 (D.D.C. 2004)....................................7, 11, 23

\*FEC v. National Rifle Ass'n of Am, 553 F. Supp. 1331 (D.D.C. 1983) ............passim

FEC v. National Rifle Ass'n of Am., 1995 WL 870598 (D.D.C. Aug. 1, 1995) ......................................................................................13

FEC v. National Right to Work Cmte., 459 U.S. 197 (1982)......................................27

French v. Edwards, 80 U.S. 506 (1871)..........................................................................29

FTC v. Carter, 636 F.2d 781 (D.C. Cir. 1980)................................................................28

FTC v. Standard Oil Co. of California, 449 U.S. 232 (1980)........................................25

General Motors Corp. v. United States, 496 U.S. 530 (1990) ......................................29

Gottlieb v. Pena, 41 F.3d 730 (D.C. Cir. 1994) ......................................................29, 30

Henderson v. United States, 517 U.S, 654 (1996) ........................................................31

Herbert v. National Academy of Sciences, 974 F.2d 192 (D.C. Cir. 1992) ..................9

Hoffman v. Fairfax Co. Redevelopment and Housing Auth., 276 F. Supp. 2d 14 (D.D.C. 2003) ............................................................................9

In re Sealed Case, 131 F.3d 208 (D.C. Cir. 1997) ........................................................10

In re Sealed Case, 237 F.3d 657 (D.C. Cir. 2001) ........................................................10

Lambert v. Sperry Rand Corp., 1974 WL 296 (W.D.La. Nov. 8, 1974) ......................15

Lewis v. NLRB, 357 U.S. 10 (1958) ........................................................................16

Marshall v. Sun Oil Co., 605 F.2d 1331 (5th Cir. 1979) .................................25

Perot v. FEC, 97 F.3d 553 (D.C. Cir. 1996) ........................................................28

Pipefitters Local Union No. 562 v. United States, 407 U.S. 385 (1972)......................27

Ralpho v. Bell, 569 F.2d 607 (D.C. Cir. 1977)............................................................30

Richardson v. United States, 193 F.3d 545 (D.C. Cir. 1999) .........................................9

Rusello v. United States, 464 U.S. 16 (1983) ............................................... 30

Sands v. Ridefilm Corp., 212 F.3d 657 (1st Cir. 2000)...................................16

Sinclair v. Kleindienst, 711 F.2d 291 (D.C. Cir. 1983) ....................................9

Sullivan v. Carrick, 888 F.2d 1 (1st Cir. 1989) ...............................................15

United States v. Armstrong, 517 U.S. 456 (1996) ....................................10, 11

United States v. California Dept. of Corrections, 1990 WL 145599
    (E.D.Cal. Feb. 7, 1990) ..........................................................................22

United States v. Hillman Housing Corp., 212 F. Supp. 2d 252 (S.D.N.Y.
    2002) .............................................................................................20, 25

United States v. James Daniel Good Real Property, 510 U.S. 43 (1993)......................29

United States v. Montalvo-Murillo, 495 U.S. 711 (1990) ......................................29, 31

United States v. Washington, 705 F.2d 489 (D.C. Cir. 1983) ......................................11

Wirtz v. Atlantic States Const. Co., 357 F.2d 442 (5th Cir. 1966)................................15

**Statutes and Regulations**

Federal Election Campaign Act, 2 U.S.C. 431-55................................................passim

2 U.S.C. 431(4)(A)....................................................................................................3

2 U.S.C. 431(8)(A)(i)................................................................................................3

2 U.S.C. 431(9) .......................................................................................................3

2 U.S.C. 433.......................................................................................................3, 6

2 U.S.C. 434................................................................................................3, 6

2 U.S.C. 437c(b)(1).........................................................................................2

2 U.S.C. 437c(c)............................................................................................16

2 U.S.C. 437c(f)(4).........................................................................................17

2 U.S.C. 437d(e)..............................................................................................2

2 U.S.C. 437g................................................................................2, 18, 20

2 U.S.C. 437g(a)(1)....................................................................2, 27, 28, 29

2 U.S.C. 437g(a)(2)..................................................................................2, 28

2 U.S.C. 437g(a)(3)..........................................................................................3

2 U.S.C. 437g(a)(4)........................................................................................24

2 U.S.C. 437g(a)(4)(A)(i).........................................................................passim

2 U.S.C. 437g(a)(6)...............................................................................3, 15, 17

2 U.S.C. 437g(a)(6)(A)...................................................................................12

2 U.S.C. 437g(a)(12)......................................................................................10

2 U.S.C. 441a(a)(1)..........................................................................................3

2 U.S.C. 441a(f)................................................................................................6

2 U.S.C. 441b...............................................................................................6, 7

2 U.S.C. 441b(a)...........................................................................................3, 6

42 U.S.C. 2000e-5(b)......................................................................................30

42 U.S.C. 2000e-5(f).......................................................................................17

11 C.F.R. 111.2(b)...........................................................................................27

11 C.F.R. 111.19 ...........................................................................................16

11 C.F.R. 114.2(a) .........................................................................................6

**Other Authorities**

RESTATEMENT (SECOND) OF AGENCY § 84, cmt. b (1958) ..........................................14

H. Rep. No. 96-422 (1979), <u>reprinted in</u> 1979 U.S.C.C.A.N. 2860............................30

Fed. R. Evid. 408 ...........................................................................................8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL ELECTION COMMISSION,    )
                                )    Case No.  1:05cv01851
            Plaintiff,          )    Judge Urbina
                                )
        v.                      )
                                )    OPPOSITION TO
CLUB FOR GROWTH, INC.,          )    DEFENDANT'S MOTION TO DISMISS
                                )
            Defendant.          )

**PLAINTIFF FEDERAL ELECTION COMMISSION'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

The Federal Election Commission ("FEC" or "Commission") brought this action to
remedy serious violations of the Federal Election Campaign Act ("FECA" or "Act"), 2 U.S.C.
431-55.  The Commission's complaint primarily concerns the failure of defendant Club for
Growth, Inc. ("Club") to register as a political committee with the FEC despite spending millions
of dollars on federal campaign activity during the 2000, 2002, and 2004 election cycles.
Complaint ¶ 7.  The Club's failure to abide by the rules applicable to political committees means
that it has deprived the public of a full record of its electoral activities, and has violated the Act's
limits on the source and amount of contributions.

Before bringing this de novo action, the Commission furnished the Club with ample
administrative process, complying with all the specific prerequisites of the Act and more.
Specifically, the FEC's General Counsel twice served the Club's then-President with a copy of
the administrative complaint that had been filed against it, and the Club made its case to the
Commission three separate times before the agency ultimately found "probable cause" to believe
that the Club had violated the Act.  The Commission voted to authorize a proposed conciliation
agreement that contained the framework for an acceptable settlement, and attempted to conciliate

1

the matter for 60 days (twice the statutory minimum of 30 days), offering the Club two separate conciliation proposals consistent with the Commission's vote. The Club's counteroffers did not come close to satisfying the Commission's settlement demands, so this suit was filed.

Before this case was filed, the Commission had voted to authorize litigation, contingent on the inability of the parties to reach a conciliation agreement consistent with the conciliation proposal specifically authorized by the Commission. After the Club filed its motion to dismiss alleging that the Commission's initial vote to authorize litigation was defective, the Commission again voted to ratify the filing of this action and to authorize the General Counsel to continue to pursue this litigation. FEC Ex. A. This ratification and reauthorization moots any question about a possible defect in the Commission's original vote. In sum, despite the Commission's compliance with the Act's specified administrative procedures, the Club has filed a motion to dismiss that relies upon a number of flawed, procedural arguments, and fails to demonstrate any prejudice. For the reasons explained below, the Club's motion to dismiss should be denied.

## BACKGROUND

### A.    The Federal Election Commission and the FECA

The FEC is an independent agency of the United States government with exclusive jurisdiction to administer, interpret, and civilly enforce the FECA. Complaint ¶ 5; 2 U.S.C. 437c(b)(1), 437d(e) & 437(g). Under the Act, any person may file an administrative complaint with the Commission, alleging a violation of the FECA. 2 U.S.C. 437g(a)(1). Once the respondent is notified of the complaint and has at least 15 days to respond, the Commission conducts an initial vote on the complaint. Id. If at least four of the Commission's six members find "reason to believe" that a violation of the Act has occurred, the Commission is authorized to undertake an investigation. 2 U.S.C. 437g(a)(2).

Upon completion of such an investigation, the Commission's General Counsel may submit a brief to the Commission recommending that it find "probable cause" to believe that a violation of the Act has occurred.  2 U.S.C. 437g(a)(3).  The respondent receives a copy of this brief and has at least 15 days to respond.  Id.  If at least four Commissioners find "probable cause," the Commission is required to attempt to correct or prevent the violation by engaging in conciliation with the administrative respondent for at least 30 days.  2 U.S.C. 437g(a)(4)(A)(i). If conciliation fails, the Commission may bring suit against the respondent to enforce the Act. 2 U.S.C. 437g(a)(6).

Under the FECA, any committee, club, association, or other group of persons that receives contributions or makes expenditures aggregating in excess of  $1,000 during a calendar year is a "political committee," if its major purpose is to influence the nomination or election of candidates.  2 U.S.C. 431(4)(A); Buckley v. Valeo, 424 U.S. 1, 79 (1976).[1]  All political committees are required to register with the Commission and to file periodic reports of their receipts and disbursements for disclosure to the public.  2 U.S.C. 433, 434.  In addition, the Act prohibits any political committee from knowingly accepting or receiving contributions from corporations or unions in connection with any election for federal office, 2 U.S.C. 441b(a), and also limits the amount that can be contributed to political committees by individuals and other entities, 2 U.S.C. 441a(a)(1).

---

[1]     A "contribution" includes "any gift, subscription, loan, advance, … or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. 431(8)(A)(i).  An "expenditure" includes "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office."  2 U.S.C. 431(9).

**B.      The Administrative Proceedings Against the Club**

On May 13, 2003, the Democratic Senatorial Campaign Committee ("DSCC") filed an administrative complaint against "Club for Growth," asserting, <u>inter alia</u>, that it had violated the Act by failing to register with the FEC as a political committee and publicly report its activities as required by the Act.  Complaint ¶ 7; Club Ex. 1 at 6.  On May 19, 2003, four business days later, the FEC's Office of General Counsel provided notice of the administrative complaint to Stephen Moore, as treasurer of the Club for Growth, Inc. PAC ("PAC").[2]  Club Ex. 1.  On May 29, 2003, the Club for Growth objected to this notice on the ground that it had been sent to the PAC instead of the Club for Growth, Inc. ("Club").  Club Ex. 3 at n.1.  On June 3, 2003, in order to cure this alleged notice defect, the General Counsel again provided the Club with notice of the administrative complaint by re-serving the complaint on Moore, this time in his capacity as president of the Club.  Club Ex. 2.  Three days later, on June 6, 2003, the Club's counsel responded to the allegations in the administrative complaint, explicitly stating that the response was being filed on behalf of the Club, and not the PAC.  Club Ex. 3 at n.1.

On May 13, 2004, the General Counsel submitted a draft factual and legal analysis to the Commission for its approval, and recommended that the Commission find "reason to believe" that the Club had violated the Act.  <u>See</u> FEC Ex. B at 7.  On October 19, 2004, the Commission adopted the factual and legal analysis, voted to find reason to believe, and authorized an investigation.  Complaint ¶ 8; FEC Ex. B.

On October 27, 2004, the General Counsel notified the Club of the Commission's reason to believe findings and provided the Club a copy of the Commission's factual and legal analysis supporting its findings.  Club Ex. 4.  In this notice, the General Counsel offered the Club an

---

[2]      The Club for Growth, Inc. PAC, unlike Defendant Club for Growth, Inc., is registered with the Commission as a political committee.  Complaint ¶ 6.

opportunity to request pre-probable cause conciliation (which the Club declined), and also

attached a subpoena, signed by the Chairman of the Commission, calling for the Club to produce

certain documents within 30 days.[3]  Id.

The Club filed a late and incomplete response to the subpoena on December 21, 2004; the

majority of responsive documents were not produced until March 1, 2005.  FEC Exs. C, D.

Because this late production was still deficient in several material respects, see FEC Ex. E, the

General Counsel sent a second subpoena to the Club on March 22, 2005, "primarily request[ing]

materials … within the scope of the initial subpoena[.]"  FEC Ex. F.  However, the Club refused

to respond to this subpoena, and demanded on April 8, 2005, that the Commission dismiss the

proceedings against it.  Club Ex. 6.  Although the Club indicated that it would "consider a

response" to the subpoena if the Commission denied its request, id., the Club has never produced

the responsive documents.  On April 22, 2005, the General Counsel notified the Club that the

FECA and its implementing regulations do not contemplate motions to dismiss matters under

review by the Commission.  Club Ex. 7.  Nevertheless, the General Counsel agreed to accept the

Club's motion and treat it as part of the Club's response to the Commission's reason to believe

findings.  Id.

Three days later, on April 25, 2005, the General Counsel notified the Club that he was

prepared to recommend that the Commission find probable cause to believe that the Club

violated the Act.  Complaint ¶ 9; Club Ex. 8.  At the same time, the General Counsel provided

the Club with a copy of his brief to the Commission supporting a probable cause

---

[3]      When respondents engage in pre-probable cause conciliation with the Commission, the
investigation process can be shortened, saving the parties' resources, and cases can be resolved
without the Commission formally finding that there is probable cause to believe that the Act has
been violated.

recommendation and, at the Club's request, allowed the Club well over 15 days (the statutory minimum) to respond.  Complaint ¶ 9.

After considering the Club's response and its earlier motion to dismiss, the Commission voted on July 19, 2005, to find "probable cause" to believe that the Club violated the Act. Complaint ¶ 10; FEC Ex. G.  Specifically, the Commission found:

1.    Probable cause to believe that Club for Growth, Inc. violated 2 U.S.C. 433 and 434 by failing to register as a political committee with the Commission and report its contributions and expenditures;

2.    Probable cause to believe that Club for Growth, Inc. violated 2 U.S.C. 441a(f) by knowingly accepting contributions in excess of $5,000 and 2 U.S.C. 441b(a) by knowingly accepting corporate contributions; and

3.    In the alternative to [findings] 1 and 2, probable cause to believe that Club for Growth, Inc. violated 2 U.S.C. 441b and 11 C.F.R. 114.2(a) by making prohibited corporate expenditures.

Id.  At the same time, the Commission voted to approve a conciliation agreement for the Club's consideration.  Id.  That proposed agreement contained a detailed recitation of the conduct and violations at issue, an admission of liability, reporting obligations, and a specific dollar amount for a civil penalty.  Club Ex. 10.[4]  In addition, the Commission granted the General Counsel "contingent suit authority" to file a civil enforcement action against the Club if no appropriate conciliation agreement could be reached that was consistent with the Commission's proposal.  FEC Ex. G.

C.    The Conciliation Process

On July 21, 2005, the General Counsel notified the Club of the Commission's probable cause findings and tendered the Commission's approved conciliation proposal to the Club.

---

[4]    As the Club explained (Br. at 10-11), it has filed under seal various exhibits that disclose the contents of the conciliation proposals and negotiations.  Because this brief is being filed on the public record, the Commission also will restrict itself to "general descriptive statements" about these sealed materials, as did the Club in its brief.  Club Br. at 11.

Complaint ¶ 11; Club Exs. 9-10.  On August 4, 2005, counsel for the FEC and the Club met in person to discuss conciliation.  See Club Ex. 12.  Although the General Counsel's brief recommending probable cause and the conciliation agreement approved by the Commission both focused on the "political committee" findings (findings 1 and 2), the Club refused to conciliate these findings at all.[5]  Instead, the Club's counterproposal focused exclusively on the FEC's third finding that the Club made unlawful corporate expenditures.  Club Ex. 11.  However, as discussed infra p. 23, the third finding is an alternative finding that only has relevance if it is first determined that the Club has not been operating as a political committee.  See FEC v. Malenick, 310 F. Supp. 2d 230, 239 (D.D.C. 2004) (alternative allegation under 2 U.S.C. 441b mooted by finding that Triad Inc. was a political committee).

After considering the Club's position, the Office of General Counsel submitted a revised conciliation proposal to the Club on August 8, 2005, which addressed all three of the Commission's probable cause findings, including the corporate expenditure finding that the Club preferred to address.  Club Ex. 15.  After the Club rejected this revised proposal, the Office of General Counsel on August 11, 2005, reiterated that it was "open to resolving this matter through conciliation" and would "carefully consider the terms of any proposals," but indicated that it could not recommend for Commission approval any conciliation agreement that did not address the political committee findings that were central to the matter.  Club Ex. 16.

To accommodate the Club, the FEC's Office of General Counsel agreed to continue the conciliation period a month beyond the 30-day statutory minimum prescribed by 2 U.S.C.

---

[5]     Less than a page of the General Counsel's 32-page brief recommending probable cause dealt with the corporate expenditure theory.  The General Counsel's brief serves as the basis for the Commission's decision because the Commissioners who voted to follow the General Counsel's recommendation to find probable cause did not issue a separate statement of reasons. See FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 38 n.19 (1981).

437g(a)(4)(A)(i), until September 19, 2005. Club Ex. 17. However, it warned the Club that it was "[]prepared to go forward if conciliation is not fruitful[,]" and specifically outlined several deficiencies in the Club's initial proposal. Id. Despite repeated requests by the General Counsel's Office for a revised proposal, the Club did not make any further conciliation efforts until September 14, 2005, when counsel for the FEC and the Club again met in person to discuss conciliation. During this "last chance" meeting, held just three business days before the September 19, 2005 conciliation deadline, the Club submitted an incomplete "draft" counterproposal, Club Ex. 18 at 1, which was deficient on several fundamental levels, including those previously outlined to the Club. Club Ex. 20 at 2-3. See also Club Ex. 17 (itemizing deficiencies in Club's prior counterproposal). In light of these deficiencies, the General Counsel informed the Club on September 19, 2005, that its conciliation proposal was unacceptable and "provides an insufficient basis to continue settlement discussions within the enforcement process." Club Ex. 20 at 2.

### D.    The Present Action

Prior to the filing of this action, the Commission received a copy of the General Counsel's letter to the Club summarizing the status of conciliation and indicating that an action would be commenced against the Club. Club Ex. 20. The Commission did not object to this filing or suggest that the General Counsel should undertake further conciliation efforts before proceeding.[6] To the contrary, on December 5, 2005, the Commission voted 5-0 to ratify the filing of this action and once again to authorize the General Counsel to pursue this litigation. FEC Ex. A.

---

[6]    The compromise terms offered to the Club during conciliation were quite generous, given the magnitude of its nearly $10 million violation. See Complaint ¶ 1. Those compromise terms do not diminish the Club's liability, and it would be improper for the Club to use the vehicle of a Rule 12 motion to imply anything from the conciliation negotiations about its liability or the size of an appropriate civil penalty. See Fed. R. Evid. 408.

**ARGUMENT**

**I.    STANDARD OF REVIEW**

"To survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff is not required to plead facts sufficient to prove [its] allegations; rather, a court should only dismiss a complaint for lack of subject matter jurisdiction if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" Richardson v. United States, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).  "The rule that the allegations of the complaint must be construed liberally and most favorably to the pleader is so well recognized that no authority need be cited." Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983). See also Hoffman v. Fairfax Co. Redevelopment and Housing Auth., 276 F. Supp. 2d 14, 17 (D.D.C. 2003) (court "must assume the truth of the allegations made and construe them in a light favorable to the plaintiff") (citation omitted).  The court is not limited, however, to the allegations contained in the complaint.  "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

In an apparent effort to disregard the applicable standard of review and to have the Court construe the Commission's allegations unfavorably, the Club repeatedly includes innuendo and unsupported speculation in its motion.  See, e.g., Club Br. at 5 (accusing the Commission of "prior misdeeds" and suggesting that this case therefore "demands careful judicial scrutiny").  Specifically, the Club erroneously alleges (Br. at 2) that this action "arises in suspicious circumstances" and that the Commission disregarded its obligations because of outside political

pressure. The Club presents not a shred of <u>evidence</u> to support this attack on the motives of the Commission.[7]

As the administrative agency charged with enforcing the FECA, the FEC "must decide issues charged with the dynamics of party politics, often under the pressure of an impending election" and is "precisely the type of agency to which deference should presumptively be afforded." <u>FEC v. Democratic Senatorial Campaign Comm.</u>, 454 U.S. 27, 37 (1981). <u>See also</u> <u>Common Cause v. FEC</u>, 842 F.2d 436, 448 (D.C. Cir. 1988). The FEC has "broad discretion" to choose the enforcement cases on which to spend its finite administrative resources, and its decision to prosecute is entitled to a "presumption of regularity." <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996); <u>FEC v. Lane Evans</u>, No. 04-4003, slip op. at 3 (C.D.Ill. Feb. 8, 2005) (attached as FEC Ex. H). This "presumption of administrative regularity and good faith … must be overcome with evidence." <u>Beverly Enterps., Inc. v. Herman</u>, 130 F. Supp. 2d 1, 8 (D.D.C. 2000). <u>See also</u> <u>In re Sealed Case</u>, 131 F.3d 208, 214 (D.C. Cir. 1997) ("[T]he exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively unreviewable…. [G]iven the limited resources and policy objectives of the federal government, not every violation of a federal law is prosecuted in federal court."); <u>FEC v. Legi-Tech</u>, 75 F.3d 704, 709 (D.C. Cir. 1996) ("We must bear in mind that we have no statutory authority to review the FEC's decision to sue…").[8]

---

[7]    To support its allegation that the Commission "rushed" to litigation, the Club relies (Br. at 4) upon <u>In re Sealed Case</u>, 237 F.3d 657, 668 (D.C. Cir. 2001), which involved altogether different facts concerning the Commission's past practice of filing subpoena enforcement actions on the public record — and an altogether different legal issue concerning the Act's confidentiality provision, 2 U.S.C. 437g(a)(12) — not an allegation that the Commission prematurely filed an enforcement action after completing its investigation.

[8]    The Club has not overtly invoked the doctrine of selective prosecution, but it has insinuated, again without any supporting evidence, that the Commission singled it out for prosecution. <u>See</u> Club Br. at 2-3. To establish a selective prosecution claim, however, the Club

II.    **THERE ARE NO BARRIERS TO THE COURT'S EXERCISE OF
       JURISDICTION OVER THIS CASE, AND THE CLUB'S MOTION TO
       DISMISS SHOULD BE DENIED**

The Commission has satisfied the requirements necessary to maintain this action.

Among other things, the record establishes that (1) "[f]or a period of not less than 30 days, the

Commission endeavored to correct the Club's violations through informal methods of

conference, conciliation, and persuasion, and to enter into a conciliation agreement with the

Club," Complaint ¶ 11; (2) "the Commission has been unable to secure an acceptable

conciliation agreement with the Club," id.; and (3) "[t]he Commission has satisfied all of the

jurisdictional requirements in the Act that are prerequisite to filing this action against the Club."

Complaint ¶ 12.  These allegations satisfy notice pleading requirements regarding administrative

preconditions to suit, see EEOC v. Times-Picayune Pub. Corp., 500 F.2d 392, 392-93 (5th Cir.

1974) (per curiam); Dinkins v. Charoen Pokphand USA, Inc., 133 F. Supp. 2d 1237, 1241

(M.D.Ala. 2001); EEOC v. Nat'l Cash Register Co., 405 F. Supp. 562, 565 (N.D.Ga. 1975) ("it

was sufficient for the EEOC to aver generally that 'all conditions precedent to the institution of

the lawsuit have been fulfilled' "), and are entitled to the same favorable treatment as the rest of

the Commission's allegations.

---

would have to "prove that (1) [it] was singled out for prosecution from among others similarly
situated and (2) that [the] prosecution was improperly motivated, i.e., based on race, religion or
another arbitrary classification."  Branch Ministries v. Rossotti, 211 F.3d 137, 144 (D.C. Cir.
2000) (brackets in original) (quoting United States v. Washington, 705 F.2d 489, 494 (D.C. Cir.
1983)).  Moreover, even if the FEC had not prosecuted these types of cases in the past, "selective
enforcement" would not be a defense to this action.  United States v. Armstrong, 517 U.S. 456,
464 (1996); Lane Evans, slip op. at 3 (attached as FEC Ex. H).  In any event, the FEC won a
similar enforcement action just last year.  See FEC v. Malenick, 310 F. Supp. 2d 230 (D.D.C.
2004).

**A.    The Commission Has Voted to Initiate and Maintain This Action**

When the Commission is unable to correct a violation of the FECA through conciliation or other informal methods, it may vote to institute a civil action to obtain judicial relief.  2 U.S.C. 437g(a)(6)(A).  In this case, the Commission has voted more than once to proceed with the litigation, and each of its votes is sufficient to defeat the Club's claim that the Commission failed to vote properly to authorize this action.  On July 19, 2005, the Commission voted to grant the General Counsel contingent suit authority to file a civil enforcement action against the Club if no satisfactory conciliation agreement could be reached.  Complaint ¶ 10; FEC Ex. G.  The Club complains that this vote was "premature" because it took place prior to conciliation.  Br. at 1.  However, suit authorization was expressly made "contingent" on the failure to reach a conciliation agreement with the Club, the Commission approved a proposed agreement that gave specific direction to the General Counsel as to the parameters of an acceptable settlement, and conciliation was attempted for 60 days before this action was filed.  See infra pp. 16-19 (vote for contingent suit authority satisfied the Act).

In any event, after the Club alleged in its motion to dismiss that this vote to authorize litigation was premature, the Commission voted again on December 5, 2005, both to ratify the filing of this action and to authorize the General Counsel to pursue this litigation.  FEC Ex. A.  Thus,  although there was nothing improper about the Commission's initial vote to grant contingent suit authority, the subsequent vote on December 5 renders the Club's arguments about the initial vote moot.

### 1. The Commission Voted Post-Conciliation to Ratify the Filing of Suit and Re-Authorize the General Counsel to Pursue this Action

Even if the Club were correct (Br. at 15) that "[a] valid post-conciliation vote is an essential precondition to suit," that condition has been fulfilled. Eleven weeks after conciliation reached an impasse and 136 days after it began, the Commission voted on December 5 to:

1. Ratify the filing of suit in <u>FEC v. Club for Growth, Inc.</u>, 1:05cv01851 (D.D.C. Sept. 19, 2005); and

2. Authorize the General Counsel to continue to pursue litigation in <u>FEC v. Club for Growth, Inc.</u>, 1:05cv01851 (D.D.C. Sept. 19, 2005).

FEC Ex. A. Because this vote took place after conciliation,[9] the question of whether the Commission's pre-conciliation vote to grant contingent suit authority was premature is now moot.

In <u>FEC v. Legi-Tech, Inc.</u>, 75 F.3d 704 (D.C. Cir. 1996), the D.C. Circuit held that the Commission may ratify an earlier vote to file suit, even if — unlike the vote at issue here — that earlier vote was constitutionally defective. In that case, the defendant moved for dismissal on the ground that the Commission unconstitutionally included <u>ex officio</u> members when it initially voted to authorize suit. <u>Id</u>. at 705-06. Although the Commission voted a second time, without the <u>ex officio</u> members, to ratify its probable cause findings and re-authorize suit, the defendant "conten[ded] that the FEC's reconstitution and ratification [was] not an effective remedy[.]" <u>Id</u>. at 708. The D.C. Circuit disagreed. Even though it found that the defendant "may well be right" in contending that the ratification vote was nothing more than a "rubberstamp[,]" the court expressly held that "the FEC's post-reconstitution ratification of its prior decisions … [was] an adequate remedy for the … constitutional violation." <u>Id</u>. at 709. <u>Accord</u>, <u>FEC v. National Rifle</u>

---

[9]    Indeed, the <u>maximum</u> conciliation period provided by law had expired. <u>See</u> 2 U.S.C. 437g(a)(4)(A)(i) (providing for conciliation period of "at least 30 days" and "not more than 90 days").

Ass'n of Am., 1995 WL 870598, *2 (D.D.C. Aug. 1, 1995) ("NRA II") (denying defendant's

motion to dismiss where FEC "voted to ratify it [sic] prior decisions and continue pursuing this

case").  The D.C. Circuit further explained that there was no need to force the Commission to

take up the matter yet again, since a third vote would "promise[] no more detached and 'pure'

consideration of the merits of the case than the Commission's ratification decision reflected."

Legi-Tech, 75 F.3d at 709.

      Here, where the alleged defect is not that the Commission's initial vote was void ab initio

because of a "structural constitutional defect," Legi-Tech, 75 F.3d at 707-08, but merely that the

Commission's initial vote to authorize suit was premature, the case for effective ratification is

even stronger than it was in Legi-Tech.  Moreover, the ratification language approved by the

Commission in this case is substantially the same as that in Legi-Tech, and thus is equally

effective.  Compare FEC Ex. I ("The Commission decided by a vote of 6-0 to ratify… its

authorizations for the General Counsel to pursue civil enforcement litigation in [Legi-Tech] and

authorize the General Counsel to continue to pursue this litigation"), with FEC Ex. A (quoted

supra p. 13).

      It is "settled law that the unauthorized bringing of an action may be ratified by the person

in whose name and on whose account it was brought so as to sustain the action from the

beginning."  Bowles v. Wheeler, 152 F.2d 34, 40 (9th Cir. 1945) (internal ellipses and quotation

marks omitted) (citing cases and authorities).  See also Communist Party of the U.S.A. v.

Commissioner of Internal Revenue, 332 F.2d 325, 328 n.5 (D.C. Cir. 1964) (allegedly

unauthorized tax petition filed on behalf of Communist Party held ratified by Party's national

committee); RESTATEMENT (SECOND) OF AGENCY § 84, cmt. b (1958) ("The bringing or

continuing of an action … can be ratified").  This rule applies to governments as well as private

parties.  See Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989) ("A governmental body 'may effectively ratify what it could theretofore have lawfully authorized.'").  Therefore, regardless of whether the Commission's vote on December 5, 2005, is viewed as ratifying its initial decision to authorize suit, as in Legi-Tech, or the General Counsel's act of filing suit, as in other cases, the result is the same, and the action should be allowed to proceed.  See Doolin Security Sav. Bank, F.S.B. v. Office of Thrift Supervision, 139 F.3d 203, 212-13 (D.C. Cir. 1998) (Office of Thrift Supervision effectively ratified decision of invalidly appointed "acting director" to initiate enforcement proceeding); Wirtz v. Atlantic States Const. Co., 357 F.2d 442, 446 (5th Cir. 1966) (upholding ratification of allegedly unauthorized suit filed on behalf of the Secretary of Labor); Bowles, 152 F.2d at 40 (suit filed on behalf of Office of Price Administration).  Accord, EEOC v. Nat'l Cash Register Co., 405 F. Supp. 562, 572 (N.D.Ga. 1975) (upholding EEOC's ratification of district director's issuance of right to sue letter); Lambert v. Sperry Rand Corp., 1974 WL 296, *2 (W.D.La. Nov. 8, 1974) (same).

Finally, in its recent vote, the Commission did not simply ratify the filing of the instant lawsuit, but also independently authorized this suit a second time.  FEC Ex. A at ¶ 2.  This provides yet another basis, separate from ratification, for satisfying the Act's administrative requirements to maintain this action.  In other words, even if the vote on July 19 had never taken place, and even if the Commission had not subsequently voted to ratify the initial filing of this action, its additional vote to authorize the General Counsel to pursue this litigation clearly took place after conciliation ended and therefore independently satisfies the requirements of 2 U.S.C. 437g(a)(6).

### 2.    The Commission's Initial Vote to Authorize This Litigation Satisfied the Requirements of 2 U.S.C. 437g(a)(6)

The Commission's initial suit authorization vote was sufficient to support the filing of this action, even without the Commission's subsequent ratification and authorization.  Although the initial vote to authorize litigation took place before conciliation efforts had failed, the efficacy of that authorization was expressly made "contingent" upon the failure of conciliation. FEC Ex. G.  In that sense, the actual authorization to file suit did not become operative unless and until conciliation efforts had come to a conclusion, thus satisfying the statutory requirement that litigation not commence before conciliation ends unsuccessfully.[10]  Cf. Day v. Avery, 548 F.2d 1018, 1025 n.32 (D.C. Cir. 1976) (written agreement never becomes effective until all conditions precedent are satisfied); Sands v. Ridefilm Corp., 212 F.3d 657, 661-62 (1st Cir. 2000) (same).

Moreover, contrary to the Club's suggestion (Br. at 10, 15) that the initial vote improperly delegated authority to the General Counsel, the Commission's attorney was neither vested with unfettered discretion nor acting contrary to his client's instructions.  Cf. Lewis v. NLRB, 357 U.S. 10, 14 (1958) (NLRB's practice of providing pre-signed, blank subpoenas to regional directors for service on respondents did not improperly delegate to regional directors the ministerial authority to issue subpoenas).  Rather, as noted above, the Commission voted to

---

[10]     Although 11 C.F.R. 111.19 contemplates that the Commission will normally vote to authorize suit after conciliation has already failed, the Commission is not prohibited from voting in advance to grant "contingent suit authority" that takes effect once conciliation fails, since the practical effect is the same.  Cf. FEC v. Committee to Elect Lyndon LaRouche, 613 F.2d 834, 842 n.15 (D.C. Cir. 1979) ("LaRouche I") (although Congress "expressly provid[ed] only for post-certification audits" of candidates' campaign expenses, this did not mean that it intended to prohibit pre-certification audits or that "the Commission is without authority to conduct an audit during the certification process"); id. at 848 n.22 (separately stating, with respect to the FECA's non-delegation provision, that "section 437c(c) requires only that a majority vote be taken, not that it be taken in any specified manner").

approve the specific terms of the conciliation agreement that was provided to the Club with the notice of probable cause findings. Complaint ¶ 11; FEC Ex. G at ¶ 5. See also Club Ex. 10. Because the Club did not come close to accepting these terms, see infra pp. 22-25, it would have been a needless waste of time for the Commission to take another vote on the matter. Cf. Legi-Tech, 75 F.3d at 708-09 (remand to Commission is "an unnecessary formality where the outcome is clear") (citing American Fed'n of Gov't Employees v. Fed. Labor Relations Auth., 778 F.2d 850, 862 n.19 (D.C. Cir. 1985)). Therefore, the General Counsel properly took the action contemplated by the Commission's initial vote and carried out the intentions of his client by filing suit.[11] See 2 U.S.C. 437c(f)(4).

In cases involving the closely analogous administrative provisions governing the Equal Employment Opportunity Commission ("EEOC"), courts have rejected the type of "delegation" arguments raised by the Club here.[12] For example, in EEOC v. Raymond Metal Prods. Co., 530 F.2d 590, 594 (4th Cir. 1976), the defendant sought to dismiss an EEOC enforcement action, contending that an EEOC regulation granting the Commission's district directors unreviewable authority to determine reasonable cause and oversee conciliation efforts was invalid. Id. at 593. According to the defendant, this regulation improperly gave the "district directors[] implicit

---

[11]    The General Counsel took this action only after providing each of the Commissioners with a copy of his letter to the Club's counsel indicating the Commission planned to file suit later that day. See Club Ex. 20. The Commission did not raise any objection to this letter or to the filing. Cf. LaRouche I, 613 F.2d at 847 n.2 (rejecting defendant's contention that field interviews were unauthorized where "the Commissioners … raised no objection to a staff memorandum recommending that the field interviews be conducted and stating that '(i)f no objection is raised within 24 hours, the staff will proceed as outlined above'").

[12]    Similar to the FECA, the civil suit provision in 42 U.S.C. 2000e-5(f), provides that "[i]f the [EEOC] has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action[.]" Cf. 2 U.S.C. 437g(a)(6) ("If the [FEC] is unable to correct or prevent any violation …, the Commission may … institute a civil action for relief[.]"). Because these provisions are analogous, EEOC caselaw is "instructive" in determining whether the statutory prerequisites to suit have been satisfied under the FECA. FEC v. Nat'l Rifle Ass'n of Am., 553 F. Supp. 1331, 1344 (D.D.C. 1983) ("NRA I").

power to disapprove a conciliation agreement and gave them 'de facto power' to commence civil actions." Id. However, the Fourth Circuit held otherwise, and "conclude[d] that the regulation [was] not invalidated either by the absence of a provision for administrative review … or by the director's implied power to disapprove a conciliation proposal." Id. at 594.[13]

Although the Club places great emphasis on the fact that the FEC voted to authorize suit before conciliation, this does not mean that the Commission "delegated" the decision to file suit. In EEOC v. Otto, 1976 WL 610 (D.Md. Feb. 20, 1976), the court was presented with a similar situation in which the EEOC voted to sue before its Baltimore district director terminated conciliation with the defendants.  Rejecting the defendants' "delegation" argument, the court explained:

> The only contention conceivably left open to the defendants … is that upon the voluntary offer of the Baltimore district director to reopen conciliation discussions after the Commission had already authorized suit, any subsequent decision that conciliation had failed must be made by the Commission itself.  Otherwise, the defendant argues, the district director, in fact, made a determination which triggered suit.
>
> The argument, on the facts of this case, is not persuasive….  All that was added to the record that was before the Commission was the fact that the defendant had failed to take advantage of yet another offer to conciliate.  No useful purpose could possibly be served by requiring the district director under such circumstances to refer the case once again to the Commission.  The district director was justified in assuming that nothing had occurred which would require a new Commission authorization to sue.  The decision to sue, therefore, was that of the Commission and it was that decision which triggered this suit.

---

[13]    The court also noted that "adequate judicial safeguards existed" because the EEOC "has no adjudicative powers," and that "a respondent who has rejected conciliation can defend [itself] in a trial de novo[.]" Id. Accord, EEOC v. MFC Servs., 1975 WL 199, *1 (S.D.Miss. Mar. 20, 1975) (accepting government's argument to this effect).  The same reasoning applies here. Under 2 U.S.C. 437g, the FEC has no adjudicative powers (except in unrelated administrative fines matters).  Therefore, the Club will have the right to defend itself in a de novo proceeding before this Court.  See NRA I, 553 F. Supp. at 1340 n.20 ("[T]he FEC is not the final arbiter, but merely the vehicle chosen by Congress for conducting an investigation, finding probable cause, and conducting informal conciliation prior to de novo review by the Court.") (emphasis in original).

<u>Id.</u> at *6-7 (emphasis in original).

Once again, the same reasoning applies here. When the Club rejected the Commission's conciliation proposal, the General Counsel's Office continued to try to conciliate the matter by forwarding a second conciliation proposal to the Club that took account of its concerns. Club Ex. 15. Upon receiving this second offer, the Club failed to respond substantively for more than a month, and then did so with an incomplete counterproposal (Club Ex. 18) that was unacceptable for several fundamental reasons (Club Ex. 20 at 2-3), two of which had been outlined to the Club previously, Club Ex. 17. On <u>none</u> of the key points did the Club accept the terms approved by the Commission, or propose something remotely similar. Under these circumstances, "no useful purpose" would have been served by taking the matter back to the Commission, and the General Counsel was "justified in assuming that nothing had occurred which would require a new Commission authorization to sue." <u>Otto</u>, 1976 WL 610, at *7. Because the Club was soliciting and accepting large, unlawful contributions on a rolling basis in the 2000 election year, five years before this action was filed, <u>see</u> Complaint ¶¶ 1, 25-29, it made sense for the FEC to grant contingent suit authority in this case, so as not to risk losing the ability to seek a civil penalty regarding any of these unlawful contributions. <u>See</u> 28 U.S.C. 2462; <u>Legi-Tech</u>, 75 F.3d at 708 (recognizing potential effect of statute of limitations in analysis of Commission's ratification vote).

> ### 3.    Any Alleged Defect in the Timing of the Commission's Vote Would Not Deprive the Court of Jurisdiction

Even if the Commission committed a technical error in voting for contingent suit authority prior to conciliation, and failed to remedy that error by ratifying the filing of this action and re-authorizing suit, the Court should excuse this alleged error as non-prejudicial. <u>See</u>

LaRouche I, 613 F.2d at 847 ("Even though the Commission acted [u]ltra vires in authorizing the audit of CTEL's records, we regard this error as nonprejudicial…. [W]e sustain the Commission's audit").  The Club's only conceivable prejudice from the timing of the Commission's initial vote to authorize suit is that, in its view, the conciliation process was cut short.  As discussed infra pp. 20-25, however, the Commission's conciliation efforts easily satisfied the requirements of 2 U.S.C. 437g.

It is well-established that administrative conciliation and timing requirements are not jurisdictional, and that a failure to meet them does not justify the harsh remedy of dismissal.  See infra pp. 25-26, 28-31 (Act's conciliation requirement and timing of initial notice not jurisdictional); see also United States v. Hillman Housing Corp., 212 F. Supp. 2d 252, 254 (S.D.N.Y. 2002) ("The timing requirements and the conciliation requirement are equally mandatory congressionally-imposed procedural rules ....  Cases finding one such requirement non-jurisdictional are highly persuasive with respect to the other, parallel requirements.").  Thus, even if the sufficiency of the Commission's votes to maintain this action were in doubt, the Club has suffered no prejudice that could justify dismissing this action.

**B.    There Is No Basis For Dismissing This Action Based On The Commission's Allegedly Inadequate Attempt To Conciliate**

When the FEC finds probable cause to believe that a violation of the Act has occurred, it is required to "attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved."  2 U.S.C. 437g(a)(4)(A)(i).  Here, the pleadings establish that the Commission did just that.  Complaint ¶ 11 ("For a period of not less than 30 days, the Commission endeavored to correct the Club's violations through informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with the

20

Club.").  In fact, as discussed below, the Commission attempted to conciliate this matter for 60

days, twice the statutory minimum, but the Club was unwilling to make any proposal that came

close to what the Commission believed was necessary to remedy the serious violations that had

taken place.

Although the Club objects to the specific terms offered by the Commission during

conciliation, that substantive disagreement neither negates the Commission's attempts to

conciliate nor is a proper basis for dismissing this action.  The terms offered by the Commission

fall within its discretion and are not reviewable by the Court.  In any event, the proper remedy

for a failure to conciliate is not dismissal, but rather a stay of the action pending further

settlement discussions.

### 1.    The Commission Met Its Obligation to Attempt to Resolve the Club's Violations of the Law Through Conciliation

Although the Club objects to the substantive terms offered by the FEC during

conciliation, the question is not whether the Club, or even the Court, considers the terms of the

FEC's two conciliation proposals reasonable or fair.  Rather, it is simply whether there was an

"attempt to conciliate[.]"[14]  NRA I, 553 F. Supp. at 1339.  See also EEOC v. Sears, Roebuck &

Co., 504 F. Supp. 241, 262 (N.D.Ill. 1980) ("Sears I") ("'Attempt to conciliate' is the prevailing

standard") (collecting EEOC cases).  "The gravamen of [the Club's] assertions is that the FEC

has an affirmative duty to do more than mail two conciliation offers to [the Club], prior to

---

[14]    The Club's motion refers to language from "the Conference Report accompanying
FECA's 1976 amendments," claiming that "the FEC 'is required to make every endeavor to
correct or prevent the violation by informal methods [of conciliation] prior to instituting any civil
action.' "  See Club Br. at 16.  The FECA was later amended, however, and the statutory
language governing conciliation was changed; rather than specifying that the FEC "shall make
every endeavor," the FECA has since early 1980 stated that the FEC "shall attempt" to conciliate
for at least 30 days.  2 U.S.C. 437g(a)(4)(A)(i).  Thus, the statutory language and the legislative
history cited by the Club have been invalid for at least 15 years, and the applicable standard is
whether there was an "attempt" to conciliate.

recommending suit." NRA I, 553 F. Supp. at 1338. This argument was expressly rejected by the court in NRA I, and also should be rejected here.

As the Sixth Circuit explained in EEOC v. Keco Indus., 748 F.2d 1097, 1102 (6th Cir. 1984), a case decided under the EEOC's analogous conciliation and enforcement statute:

> The district court finding that the EEOC did not sufficiently conciliate the … claim reflects an apparent dissatisfaction with the EEOC conciliation attempt. This is not the appropriate standard of review. The district court should only determine whether the EEOC made an attempt at conciliation. The form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our discrimination laws and is beyond judicial review.

Therefore, the Court should not "examine the details of the offers and counteroffers between the parties, nor impose its notions of what the agreement should provide[.]" EEOC v. Sears, Roebuck & Co., 1980 WL 108, *13 (N.D.Ga. Mar. 14, 1980) ("Sears II") (quoting EEOC v. Zia Co., 582 F.2d 527, 533 (10th Cir. 1978)). The form and substance of any conciliation agreement is a matter of agency discretion, and is not subject to "judicial second-guessing." EEOC v. Equicredit Corp. of Am., 2002 WL 31371968, *3 (E.D.Pa. Oct. 8, 2002) (quoting EEOC v. Dial Corp., 156 F. Supp. 2d 926, 934 (N.D. Ill. 2001)). See also Dinkins, 133 F. Supp. 2d at 1244.[15]

Contrary to the Club's arguments (Br. at 17-19), the FEC was not obligated to conciliate exclusively on the Club's preferred theory of liability ("corporate expenditure" theory), instead of the primary theory advanced by the FEC ("political committee" theory). See United States v. California Dept. of Corrections, 1990 WL 145599, *7 (E.D.Cal. Feb. 7, 1990) ("[T]he 'good faith' requirement is properly limited to a good faith effort to allow an out-of-court settlement, rather than a good faith effort to meet the defendant on its own terms"). The FEC is deemed to

---

[15]    Because the details of the parties' efforts at conciliation are not properly before the Court — and, in any event, are well-known to both parties — any request by the Club for "jurisdictional discovery" (Br. at 4 n.1) should be denied.

be expert in matters relating to the FECA and "is not bound to accept a conciliation agreement which it finds unacceptable." NRA I, 553 F. Supp. at 1339.  Indeed, because the corporate expenditure theory is an alternative theory that only becomes relevant if the Commission is unable to demonstrate that the Club was acting as a political committee, the Commission would have totally abandoned its primary finding if it had agreed to conciliate only on the corporate expenditure theory.  See Malenick, 310 F.Supp. 2d at 239 (noting interaction between these two alternative theories of liability).  The conciliation agreement approved by the Commission called for conciliation of the "political committee" findings, and the General Counsel was not obligated to conciliate under a different theory once the Club rejected the Commission's offer.  See e.g., Keco Indus., 748 F.2d at 1101-02 ("The EEOC is under no duty to attempt further conciliation after an employer rejects its offer"); EEOC v. Gard Corp., 795 F. Supp. 1066, 1069 (D.Kan. 1992) (same).

In EEOC v. Sears, Roebuck, & Co., 1989 WL 120650, *3 (N.D.Cal. Aug. 21, 1989) ("Sears III"), the court addressed a similar argument that the EEOC could not bring an age discrimination claim because it only had conciliated the Commission's findings of race discrimination.  The court rejected this argument, noting that "[i]n general, courts have held that the failure to specifically refer to all aspects of a case in conciliation does not affect subsequent litigation on the merits."  Id.  Accord, EEOC v. Massey-Ferguson, Inc., 622 F.2d 271, 277 (7th Cir. 1980) ("While the Commission must conciliate the charges or practices which are at issue …, there is no duty to conciliate with respect to every possible form of relief which might be sought in order to remedy these practices"); Sears II, 1980 WL 108 at *13 (N.D.Ga. 1980).

In any event, the General Counsel did continue to attempt conciliation, even after the Club rejected the Commission's approved proposal, by submitting a second conciliation proposal

to the Club that responded to the Club's concerns and addressed the alternative "corporate expenditure" theory. Club Ex. 15. In addition, the General Counsel continued the conciliation period an additional 30 days beyond the statutory minimum, to allow the Club ample opportunity to consider this second proposal. Club Ex. 17. However, the Club did not even respond to the General Counsel's amended offer until the second 30-day period had almost expired, and when it did, the Club submitted an incomplete "draft" counterproposal that was unacceptable for several fundamental reasons. See Club Ex. 20 at 2-3. If the Club believes that it held back its "best and final offer" (Br. at 16) — just days before the extended conciliation period was about to expire — that is not the Commission's fault. The FEC clearly made an attempt to conciliate the matter within the meaning of section 437g(a)(4).[16]

"Where … a defendant repeatedly refuses to negotiate, concede culpability, or respond to the FEC's conciliation attempts, it is not improper for the FEC to suspend conciliation efforts and file suit." NRA I, 553 F. Supp. at 1339 (emphasis added). Here, it is undisputed that the Club repeatedly refused to concede culpability in its conciliation proposals, including its most recent one. Compare FEC's proposals, Club Ex. 10 at 7, Ex. 15 at 7, with Club's limited acknowledgments, Club Ex. 11 at 7, Ex. 18 at 7. After receiving the Club's first

---

[16]    The cases upon which the Club relies (Br. at 17) are not to the contrary. In EEOC v. Sears, Roebuck & Co., 650 F.2d 14 (2d Cir. 1981) ("Sears IV"), the court found it objectionable that the EEOC was attempting to litigate a narrow set of individualized claims that it did not conciliate when attempting to reach a broad, nationwide agreement. See Sears IV, 650 F.2d at 19. Here, by contrast, the Club is seeking to dismiss broad claims that were conciliated ("political committee" claims) because the FEC allegedly did not also conciliate solely on an alternative, narrower claim ("corporate expenditure" claim). In any event, the Second Circuit found that "it would have been preferable for the district court to stay the proceedings to promote renewed conciliation rather than dismiss the action." Id. See infra at pp. 25-26 (dismissal not appropriate remedy). See also EEOC v. Odd Fellows Home of Virginia, Inc., 2005 WL 1950185, *5 (W.D.Va. Aug. 15, 2005) (distinguishing EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256 (11th Cir. 2003), by noting that in Asplundh, EEOC had not even responded to defendant's request for an extension of time or considered defendant's counteroffer).

counterproposal, the FEC warned the Club that its failure to concede liability was a deal breaker. Club Ex. 17. Yet the Club continued to refuse to concede any violations in its second counterproposal, Club Ex. 18 at 7, which was one of the reasons why the FEC filed suit. Club Ex. 20 at 2. This refusal alone is a sufficient basis for proceeding to litigation. NRA I, 553 F. Supp. at 1340 n.20 ("[T]here is nothing wrong with the defendants' decision to refuse to concede culpability or negotiate an admission where the defendants believe they have acted lawfully. By doing so, however, they waive their defense of inadequate conciliation and should reasonably expect the agency to file suit.").

**2.      The Act's Conciliation Requirement Is Not Jurisdictional**

Even if the FEC's conciliation efforts had been inadequate as a matter of law, the proper remedy would be to stay the proceedings pending further negotiations, not to dismiss the action. In the analogous EEOC enforcement context, "courts that have considered the question have without exception found that neither the conciliation requirement nor any of the other, equally mandatory, procedural requirements of the Act defeat the Court's jurisdiction over subsequent … suits." Hillman Housing Corp., 212 F. Supp. 2d at 254 (collecting cases). See also, e.g., Marshall v. Sun Oil Co., 605 F.2d 1331, 1339 n.8 (5th Cir. 1979) ("The Act's conciliation requirement is not jurisdictional"); EEOC v. Colgate-Palmolive Co., 1983 WL 621, *4 (S.D.N.Y. Aug. 12, 1983) ("failure to conciliate has been held not to constitute a jurisdictional defect requiring dismissal of the complaint"). Therefore, "[i]f a district court finds improper conciliation efforts were made, the appropriate remedy is not dismissal, but a stay of the proceedings so that conciliation between the parties may take place." EEOC v. First Midwest Bank, N.A., 14 F. Supp. 2d 1028, 1031 (N.D.Ill. 1998). See also EEOC v. Klingler Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981) ("summary judgment is far too harsh a sanction to impose on

the EEOC even if the court should ultimately find that conciliation efforts were prematurely aborted"); Sears I, 504 F. Supp. at 262.

In NRA I, the only FECA case addressing the adequacy of the FEC's attempts to conciliate, the court found it unnecessary to consider whether "the FEC is entitled to a stay pending cure of … pre-suit defects." NRA I, 553 F. Supp. at 1338. However, it suggested that absent a "total failure" to conciliate, id. — which not even the Club alleges here — a court may "stay the action pending cure by the FEC" instead of "dismiss[ing] the suit for want of subject matter jurisdiction." Id. at 1333. Indeed, dismissal would be particularly inappropriate because the Club has not presented any evidence of prejudice or harm. Id. at 1339. Although the Club conclusorily asserts that the consequences of premature litigation can be severe, it does not claim, let alone present evidence, that the Club itself has been affected by the parade of horribles listed in its brief. See Club Br. at 13. At this point, there has been no adjudication of the Club's liability and it has suffered no prejudice; it will have every chance to defend itself against the Commission's allegations in this de novo lawsuit. See FTC v. Standard Oil Co. of California, 449 U.S. 232, 241-42 (1980).

### C.     The Commission Provided Adequate Notice To The Club Of The Administrative Complaint

Although the Club claims (Br. 20-21) that it did not receive proper notice of the underlying administrative complaint, the Club's President was timely provided a copy of the complaint, received a second notice of the complaint 15 days later, and knew that the complaint was directed against the Club. Moreover, even if the Club were correct that the notice it received was inadequate, dismissal of this case would not be the appropriate remedy. The Club has addressed the charges against it multiple times and has suffered no prejudice.

1.      **The Club Had Actual Notice of the DSCC's Complaint Within Five Days**

It is undisputed that Stephen Moore received notice of the administrative complaint on May 19, 2003, fewer than five business days after the FEC received the complaint.  See 2 U.S.C. 437g(a)(1); 11 C.F.R. 111.2(b).  Although this notice was sent to Moore as President of the Club for Growth PAC, he also was President of the Club for Growth, Inc., at the time.  Complaint ¶ 21.  In fact, all of the PAC's employees — not just Moore — are also employees of the Club, and receive their paychecks from the Club, not the PAC.  FEC Ex. J.  This overlap is not unusual.  As the Supreme Court has explained:

> [A] separate segregated fund may be completely controlled by the sponsoring corporation or union, whose officers may decide which political candidates[] contributions to the fund will be spent to assist. The "fund must be separate from the sponsoring union [or corporation] only in the sense that there must be a strict segregation of its monies" from the corporation's other assets.

FEC v. National Right to Work Comm., 459 U.S. 197, 200 n.4 (1982) (emphasis added) (quoting Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 414-17 (1972)).  Thus, it is a fiction for the Club to argue that it did not have actual notice of the administrative complaint within five days.  See Bruce v. S & H Riggers & Erectors, Inc., 732 F. Supp. 1172, 1177 (N.D.Ga. 1990) (notice of pendent EEOC charges afforded to president of subsidiary corporation effectively provided notice to him in his capacity as president of parent company) (citing, inter alia, Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1434 (D.C. Cir. 1988)).[17]

The Club also knew from the outset that the charges were directed principally at it.  The administrative complaint generically named "Club for Growth" as a respondent, and was not

---

[17]    As explained supra p. 4, on June 3, 2003, in order to cure the alleged notice defect, the General Counsel re-served notice of the administrative complaint on Moore, this time in his capacity as President of the Club.  Club Ex. 2.

specific to the PAC.  The Club itself objected to the notice just days after it was received, on the ground that it had been sent to the wrong entity.

Because the Club had actual notice of the DSCC's charges against it within five days, it cannot object that the FEC's service of those charges was untimely or defective.  For example, in FEC v. Committee to Elect Lyndon LaRouche, 613 F.2d 849 (D.C. Cir. 1979) ("LaRouche II"), two organizational defendants to an FEC subpoena enforcement action asserted that the FEC did not properly serve them with a show cause order because the individuals served on behalf of the organizations did not hold positions as officers or managing or general agents.  Id. at 862 n.19.  However, the D.C. Circuit rejected the defendants' argument that service was "defective," in part because they "had adequate actual notice" of the order.  Id.  This "actual notice" rule is well-established in this circuit, and applies equally in this case.  See Berger, 843 F.2d at 1434; FTC v. Carter, 636 F.2d 781, 791 (D.C. Cir. 1980) (citing LaRouche II, 613 F.2d at 862 n.19).  Accord, FEC v. Franklin, 718 F. Supp. 1272 (E.D.Va. 1989) (client of private investigator put on actual notice by Commission's notice of administrative complaint to investigator), aff'd in relevant part, 902 F.2d 3 (4th Cir. 1989).[18]

### 2.    Failure to Meet Administrative Timing Requirements Is Not a Basis for Dismissal

Even if the Club had not received actual notice within five days, "there is no presumption or general rule that for every duty imposed upon … Government and its prosecutors there must

---

[18]    Although the Club relies upon (Br. at 21) Perot v. FEC, 97 F.3d 553 (D.C. Cir. 1996), that case had nothing to do with notice or 2 U.S.C. 437g(a)(1).  The court's holding addressed whether the plaintiffs had a right to force the FEC to rule on their administrative complaint faster than the 120-period prescribed by section 437g(a)(2).  Id. at 558-59.  Similarly, EEOC v. Magnolia Elec. Power Ass'n, 635 F.2d 375 (5th Cir. 1981), does not support the Club's position, since the court reversed a district court order dismissing the EEOC's action, and stated that "when … there has been 'virtual compliance with all the statutory procedural steps' …, then the EEOC will be barred from prosecuting its suit only upon a clear showing of substantial prejudice to the respondent."  Id. at 378 (citation omitted).

exist some corollary punitive sanction for departures or omissions, even if negligent." United States v. James Daniel Good Real Property, 510 U.S. 43, 64 (1993) (quoting United States v. Montalvo-Murillo, 495 U.S. 711, 717 (1990) (citing French v. Edwards, 80 U.S. 506, 511 (1871)). "If a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." Barnhart v. Peabody Coal Co., 537 U.S. 149, 159 (2003) (quoting James Daniel Good Real Property, 510 U.S. at 63); Brotherhood of Ry. Carmen Div., Transp. Comm. Int'l Union v. Pena, 64 F.3d 702, 704 (D.C. Cir. 1995); Gottlieb v. Pena, 41 F.3d 730, 734 (D.C. Cir. 1994)). Absent a clear indication that Congress intended otherwise, such timing provisions are deemed to be "directory," rather than "mandatory." Brotherhood of Ry. Carmen, 64 F.3d at 704.

The fact that section 437g(a)(1) provides that notice "shall" be provided within five days does not mean that it is mandatory, since the Commission is not expressly prohibited from taking action on an administrative complaint if notice is not provided within five days. See Barnhart, 537 U.S. at 158-59; James Daniel Good Real Property, 510 U.S. at 63; Brock v. Pierce Co., 476 U.S. 253, 262 (1986); Brotherhood of Ry. Carmen, 64 F.3d at 704 ; Gottlieb, 41 F.3d at 733. By contrast, the statute does expressly state that "[t]he Commission may not conduct any investigation or take any other action under this section solely on the basis of a complaint of a person whose identity is not disclosed to the Commission." 2 U.S.C. 437g(a)(1). By declining to impose the same sanction for late notice, Congress clearly indicated that the five-day notice rule at issue here is only directory. See General Motors Corp. v. United States, 496 U.S. 530, 539 (1990) ("The fact that Congress explicitly enacted an enforcement bar similar to the one proposed by [defendant] in one section of the statute, but failed to do so in the section at issue in

this case[,] reinforces our refusal to import such a bar here") (citing Rusello v. United States, 464 U.S. 16, 23 (1983)).

The EEOC's analogous notice provision, 42 U.S.C. 2000e-5(b), has been construed as directory. "[W]hen the EEOC has failed to notify the accused employer within 10 days of the filing of the charge, the courts have uniformly held that, at least in the absence of proof of bad faith on the part of the Commission or prejudice to the employer, the result is not to bar a subsequent suit either by the aggrieved party … or by the Commission[.]" EEOC v. Shell Oil Co., 466 U.S. 54, 66 n.16 (1984) (citations omitted).

The purpose of the notice rule is "to inform the respondent that a complaint has been filed [and] of the basic charges" against it, so that it can respond to those charges and defend itself. NRA I, 553 F. Supp. at 1337 (quoting H. Rep. No. 96-422, at 20 (1979), reprinted in 1979 U.S.C.C.A.N. 2860, 2880). As for the five-day time limit, this is "undoubtedly designed 'to spur the [agency] to action, not to limit the scope of [its] authority.'" Gottlieb, 41 F.3d at 735 (quoting Brock, 476 U.S. at 265). "Statutes that, for guidance of a governmental official's discharge of duties, propose 'to secure order, system, and dispatch in proceedings' are usually construed as directory, whether or not worded in the imperative, especially when the alternative is harshness or absurdity." Ralpho v. Bell, 569 F.2d 607, 627 (D.C. Cir. 1977) (footnotes and citations omitted).

Here, it would be both harsh and absurd to dismiss this action based on the Club's claim of inadequate notice. Aside from the fact that the initial notice was served within five days, the Club was re-served with the administrative complaint just fifteen days later, and responded to the DSCC's charges before the FEC took any action. Club Ex. 3. In fact, the Club pleaded its case to the Commission no less than three separate times: (1) in its June 6, 2004 response to the

administrative complaint, prior to the Commission's finding of "reason to believe," id.; (2) in its March 22, 2005 motion to dismiss, prior to the General Counsel's recommendation of a "probable cause" finding, Club Ex. 6; and (3) in its May 31, 2005 response to the General Counsel's brief recommending "probable cause," Complaint ¶ 9. Any alleged notice defect was thus cured multiple times, long ago. "[C]ourts have consistently found, absent prejudice to the defendant, that the failure of an administrative agency to adhere to a statutory deadline is harmless error." NRA I, 553 F. Supp. at 1341 n.2 (citations omitted). Because the Club had an opportunity to defend itself in the administrative proceedings and will continue to have the opportunity to defend itself in this court, the "core function" of the notice requirement has been served. Henderson v. United States, 517 U.S. 654, 672 (1996) (footnote omitted).

In contrast, the public interest would suffer gravely if this action were dismissed. The public interest in detecting and remedying FECA violations is compelling. See, e.g., Buckley, 424 U.S. at 26-29, 66-68. Even when the Commission has proceeded in an unconstitutional manner, the Supreme Court has treated the agency's past actions as de facto valid and allowed it to continue to exercise its powers (including its enforcement powers) for a limited time, so that the public interest will not suffer and the FEC may cure the defect. Id. at 142-43. More generally, the Supreme Court also has explained that it is "most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." Brock, 476 U.S. at 260 (excusing failure to meet statutory deadline). "[T]here is no need to bestow upon the defendant a windfall and to visit upon the Government and its citizens a severe penalty." Montalvo-Murillo, 495 U.S. at 720.

## CONCLUSION

For the foregoing reasons, the Club's motion to dismiss should be denied.


Respectfully submitted,

_____/s/_____
Lawrence H. Norton
General Counsel

_____/s/_____
Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

_____/s/_____
David Kolker
Assistant General Counsel
(D.C. Bar #394558)

_____/s/_____
Erin Monaghan
Attorney
(D.C. Bar #438434)

_____/s/_____
Kai Richter
Attorney

FOR THE PLAINTIFF FEDERAL
ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C.  20463
(202) 694-1650
(202) 219-0260 (FAX)

Date:  December 23, 2005