# EXHIBIT 1

Federal Election Commission v. The Club for Growth

Case No. 1:05cv01851 (RMU)

**BEFORE THE FEDERAL ELECTION COMMISSION**

In the Matter of                                      )
                                                      )
                                                      )    MUR 5024R
Council for Responsible Government, Inc.              )
    and its Accountability Project; and               )
Gary Glenn and William "Bill" Wilson,                 )
    as corporate officers                             )

**CONCILIATION AGREEMENT**

This matter was generated by a complaint filed with the Federal Election Commission by Anthony S. Cicatiello and Kean for Congress. The Commission first considered this matter on November 4, 2003, and voted to dismiss the complaint and close the file in this matter. Complainants filed suit for judicial review of the dismissal of their administrative complaint, *see Kean for Congress Comm. v. FEC*, Civil Action No. 1:04CV00007 (JDB), United States District Court for the District of Columbia, and the case was remanded back to the Commission for reconsideration in light of the Supreme Court's decision in *McConnell v. FEC*, 540 U.S. 93 (2003). The Commission found reason to believe that the Council for Responsible Government violated 2 U.S.C. §§ 433, 434, 441d(a), or, in the alternative, that the Council for Responsible Government and William "Bill" Wilson and Gary Glenn, as corporate officers of the Council, (referred to collectively hereinafter as "Respondents") violated 2 U.S.C. §§ 441b(a) and 441d(a).

NOW, THEREFORE, the Commission and the Respondents, having participated in informal methods of conciliation, prior to a finding of probable cause to believe, do hereby agree as follows:

1   I.   The Commission has jurisdiction over the Respondents and the subject matter of
2   this proceeding.
3   II.  Respondents have had a reasonable opportunity to demonstrate that no action
4   should be taken in this matter.
5   III. Respondents enter voluntarily into this agreement with the Commission.
6   IV.  The pertinent facts in this matter are as follows:

**Background**

8   1. The Council for Responsible Government incorporated in the state of Virginia on
9   May 2, 2000, and is established pursuant to Section 527 of the Internal Revenue Code. The
10  organization has no employees and does not maintain office space, but does maintain a mailing
11  address and one bank account.
12  2. William "Bill" Wilson and Gary Glenn are officers of the Council for Responsible
13  Government and members of its Board of Directors.
14  3. The Council for Responsible Government is not registered with the Commission as a
15  political committee. From July 1, 2000 through December 31, 2002, the Council for Responsible
16  Government reported all of its receipts and disbursements to the Internal Revenue Service.
17  4. The Council for Responsible Government has received no donations since January 1,
18  2003. Since that time the organization has made approximately $6,900 in disbursements and
19  each of these disbursements was made for one of three purposes: post office box rental, legal
20  fees, or corporate registration filing fees.
21  5. During the 2000 election cycle, the Council for Responsible Government received in-
22  kind support from U.S. Term Limits, Inc., a 501(c)(4) corporation based in Glenview, Illinois

Conciliation Agreement
MUR 5024R
Page 3

1  whose mission is "[t]o rally Americans to restore citizen control of government by limiting the

2  terms of politicians at the local, state and congressional levels." William "Bill" Wilson, officer

3  and board member of the Council for Responsible Government is also a member of the Board of

4  Directors of U.S. Term Limits, Inc. U.S. Term Limits, Inc. is not a respondent in this matter and

5  it is not registered as a political committee with the Commission.

6  **Applicable Law**

7  6. The Federal Election Campaign Act of 1971, as amended ("the Act" or "FECA")

8  prohibits corporations from making contributions or expenditures in connection with federal

9  elections. *See* 2 U.S.C. § 441b.

10  7. The Act defines "contribution" and "expenditure" to include a gift, loan, advance,

11  deposit of money or anything of value made by any person for the purpose of influencing any

12  election for Federal Office. 2 U.S.C. §§ 431(8)(A)(i) and 431(9)(A)(i). The definition of

13  "person" includes an individual, partnership, committee, association, corporation, or any other

14  organization or group of persons. 2 U.S.C. § 431(11). "Anything of value" includes any goods

15  or services including but not limited to securities, facilities, equipment, supplies, advertising

16  services, membership lists, and mailing lists. 11 C.F.R. § 100.7(a)(1)(iii) and 11 C.F.R.

17  § 100.8(a)(1)(iv)(A).

18  8. An "independent expenditure" is defined as an expenditure by a person expressly

19  advocating the election or defeat of a clearly identified candidate which is made without

20  cooperation or consultation with any candidate, or any authorized committee or agent of such

21  candidate, and which is not made in concert with, or at the request or suggestion of, any

22  candidate, or any authorized committee or agent of such candidate. 2 U.S.C. § 431(17).

Conciliation Agreement
MUR 5024R
Page 4

1  9. The definition of a "clearly identified" candidate is set forth at 2 U.S.C. § 431(18),

2  and includes "(A) the name of the candidate involved appears; (B) a photograph or drawing of

3  the candidate appears; or (C) the identity of the candidate is apparent by unambiguous reference."

4  In July 1995, the definition of "clearly identified" at 11 C.F.R. § 100.17 was amended to include

5  an "unambiguous reference" to a person's "status as a candidate."

6  10. The definition of "expressly advocating" is set forth in the Commission's regulations

7  at 11 C.F.R. § 100.22.

8  11. Persons, other than political committees, who make independent expenditures in

9  an aggregate amount, or valued at, more than $250 in a calendar year must file a statement of

10 these expenditures with the Commission. 2 U.S.C. § 434(c)(1). Such statements must include

11 the identification of each person who has made contributions in excess of $200 to the person

12 filing such statement which was made for the purpose of furthering an independent expenditure.

13 2 U.S.C. § 434(c)(2). The statement must also indicate whether the independent expenditure is in

14 support of, or in opposition to, the candidate involved and include a certification whether or not

15 such independent expenditure is made in cooperation, consultation, or concert, with, or at the

16 request or suggestion of, any candidate or any authorized committee or agent of such candidate. *Id.*

17 12. Section 441d of the Act requires that any person making an expenditure for

18 a communication which expressly advocates the election or defeat of a candidate must include a

19 statement in the communication stating who has paid for the communication and whether or not

20 it has been authorized by the candidate and/or his or her authorized committee. 2 U.S.C.

21 § 441d(a)(3). This requirement extends to persons making independent expenditures. 11 C.F.R.

22 § 109.3.

## 2000 Election Cycle Activities

13. In April 2000 the Council for Responsible Government decided to disseminate communications regarding a candidate in the Republican primary for New Jersey's Seventh Congressional District, Tom Kean, Jr. Council for Responsible Government approached U.S. Term Limits, Inc., a 501(c)(4) organization, for financial assistance in paying for these communications. U.S. Term Limits agreed to pay for the services of the vendor used to layout, print, and mail the communications.

14. The communications consisted of two brochures focusing on the qualifications of candidate Tom Kean, Jr.

15. The first brochure ("Brochure 1") shows two apparently identical photographs of Tom Kean, Jr., one large photograph covering the whole page and a much smaller photograph superimposed on the larger one. In both photographs, Tom Kean, Jr. is wearing a business suit with a campaign button or sticker on the left breast pocket of his suit jacket that states "Tom Kean, Jr. for Congress." The following statement is superimposed over the photographs:

### TOM KEAN, JR.

No experience. Hasn't lived in New Jersey for 10 years.
It takes more than a name to get things done.

The second page contains the following text:

NEVER. Never worked in New Jersey. Never ran for office. Never held a job in the private sector. Never paid New Jersey property taxes. Tom Kean Jr. may be a nice young man and you may have liked his dad a lot—but he needs more experience dealing with local issues and concerns. For the last 5 years he has lived in Boston while attending college. Before that, he lived in Washington. New Jersey faces some tough issues. We can't afford on-the-job training. Tell Tom Kean Jr. . . . **New Jersey needs New Jersey leaders.**

Conciliation Agreement
MUR 5024R
Page 6

2  (Emphasis in original.) The following disclaimer appears at the bottom of the second page of

3  Brochure 1: "Paid for by the Accountability Project of the CRG."

4     16.   The second brochure ("Brochure 2") shows a full-page photograph of Tom Kean,

5  Jr. on the first page. The photograph appears to be the same photograph with the "Tom Kean, Jr.

6  for Congress" campaign button or sticker used in Brochure 1. The following text is

7  superimposed over the photograph:

> For the last 5 years Tom Kean Jr. has lived in Massachusetts. Before that, he lived in Washington, D.C. And all the time Tom Kean lived in Massachusetts and Washington, he never held a job in the private sector. And until he decided to run for Congress—Tom never paid property taxes. No experience. **TOM KEAN MOVED TO NEW JERSEY TO RUN FOR CONGRESS.** New Jersey faces some difficult problems. Improving schools, keeping taxes down, fighting overdevelopment and congestion. Pat Morrisey has experience dealing with important issues. It takes more than a name to get things done. Tell Tom Kean Jr. . . . **NEW JERSEY NEEDS NEW JERSEY LEADERS.**

20  (Emphasis in original.) The following disclaimer appears on the bottom of the page: "Paid for

21  by the Accountability Project of the CRG." The second page of Brochure 2 shows four

22  photographs almost evenly distributed over the full face of the brochure. The photographs are of

23  former professional basketball player Larry Bird, of the Boston Celtics; Senator Edward

24  Kennedy; what appears to be a statue of a Revolutionary War "Minuteman"; and what appears to

25  be the same photograph of Tom Kean, Jr. with the "Tom Kean, Jr. for Congress" campaign

26  button or sticker. Superimposed over the photographs is the following statement: "What do all

27  these things have in common? They all have homes in Massachusetts."

1  17. The text of each of the communications was prepared by William "Bill" Wilson,

2  an officer and member of the Board of Directors of the Council for Responsible Government.

3  Pursuant to its agreement to assist in paying for the communications, U.S. Term Limits paid

4  vendor A&E Mailers for laying out, printing, and mailing the communications. U.S. Term

5  Limits wrote three checks in the amount of $3,722.90 each, totaling $11,168.70, directly to A&E

6  Mailers to pay for the expenses incurred for the layout, printing, and mailing of the Kean

7  brochures. Each check was drawn from an account maintained and controlled by U.S. Term

8  Limits and contained a memo stating, "In-kind contribution for Council for Responsible

9  Government."

10  18. None of these communications contained a statement indicating whether or not it

11  has been authorized by a candidate and/or his or her authorized committee.

12  19. The Commission's reason to believe findings in this matter relied alternatively on

13  two separate definitions of express advocacy set forth in 11 C.F.R. § 100.22(a) and 11 C.F.R. §

14  100.22(b). Respondents maintain that they made these communications with the good faith

15  belief that they did not contain express advocacy under either definition and that their activity

16  was constitutionally protected.

17  V. Respondents believe it is in their best interest to settle this matter. For that

18  purpose, without admitting or denying the legal conclusions, Respondents will no longer contest

19  the Commission's finding that there is reason to believe they violated 2 U.S.C. §§ 441b(a) and

20  441d by making prohibited corporate expenditures totaling $11,168.70 during 2000 for

21  communications about Tom Kean, Jr., as described herein, and failing to include a statement in

1   public communications as to whether the communications had been authorized by a candidate

2   and/or his or her authorized committee.

3       VI.  1. Respondents will pay a single civil penalty of $5,500 to the Federal Election

4   Commission pursuant to 2 U.S.C. § 437g(a)(5)(B). The Commission could have sought a

5   penalty equal to 100 percent of the amount disbursed, or $11,168.70, 2 U.S.C. § 437g(a)(5)(A),

6   in addition to another statutory penalty amount for the improper disclaimer. However, given the

7   particular facts and circumstances of this matter, including the cessation of all activities by the

8   Council for Responsible Government at the end of 2002, the Commission will accept the

9   statutory penalty to be paid by Respondents.

10      2. Respondents will submit a filing to the Commission disclosing information regarding

11  the disbursements made in connection with the Kean brochures and the source of the money used

12  to make those disbursements.

13      3. Respondents will cease and desist from violating 2 U.S.C. §§ 441b and 441d.

14      VII.  Respondents shall have no more than 30 days from the date this agreement

15  becomes effective to comply with and implement the requirements contained in this agreement

16  and to so notify the Commission.

17      VIII.  The Commission, on request of anyone filing a complaint under 2 U.S.C.

18  § 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance

19  with this agreement. If the Commission believes that this agreement or any requirement thereof

20  has been violated, it may institute a civil action for relief in the United States District Court for

21  the District of Columbia.

Conciliation Agreement
MUR 5024R
Page 9

IX.   This agreement shall become effective as of the date that all parties hereto have executed same and the Commission has approved the entire agreement.

X.   This Conciliation Agreement constitutes the entire agreement between the parties on the matters raised herein, and constitutes a final settlement as to Respondents with respect to all issues arising herein in connection with all communications by Respondents prior to and/or in connection with the 2000 Republican congressional primary elections in the State of New Jersey. *See* 2 U.S.C. § 437g(a)(4). No other statement, promise, or agreement, either written or oral, made by either party or by agents of either party, that is not contained in this written agreement shall be enforceable.

FOR THE COMMISSION:

                                  Lawrence H. Norton
                                  General Counsel

11/16/05
Date                        BY:   Rhonda J. Vosdingh
                                  Associate General Counsel

FOR THE RESPONDENTS:

Nov. 2, 2005
Date                                Richard E. Coleson
                                  Counsel for Council for Responsible Government, Inc. and its Accountability Project; Gary Glenn and William Wilson