UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | Case No.  1:05cv01851 |
| Plaintiff, | ) | Judge Urbina |
| | ) | |
| v. | ) | |
| | ) | |
| CLUB FOR GROWTH, INC., | ) | FEC'S SURREPLY IN OPPOSITION |
| | ) | TO DEFENDANT'S MOTION TO |
| Defendant. | ) | DISMISS |

**PLAINTIFF FEDERAL ELECTION COMMISSION'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

In its opening brief in support of its motion to dismiss, Defendant Club for Growth, Inc. ("Club") principally argued that jurisdiction was lacking because Plaintiff Federal Election Commission ("FEC" or "Commission") allegedly voted to authorize suit in this matter prematurely, prior to conciliation.  Now that the Commission has mooted this argument by voting a second time — <u>after</u> conciliation — to reauthorize this action and ratify the filing of suit, the Club has changed its argument and requested a different remedy.  Instead of seeking merely a second vote by the Commission after an attempt to conciliate (precisely what the FEC provided in response to the Club's motion), the Club now seeks a third vote by a new set of Commissioners (Reply at 7), in the hope that they will reach a different result.[1]  For the reasons explained below, the Club is not entitled to yet another vote just because the composition of the Commission has changed.  Accordingly, its motion should be denied.

In <u>FEC v. Legi-Tech, Inc.</u>, 75 F.3d 704 (D.C. Cir. 1996), the D.C. Circuit held that the FEC may ratify a defective initial vote to authorize suit.[2]  Although the Club contends (Reply

---

[1]    The Club hints that, in its view, even a third vote might not suffice.  <u>Id</u>. at n.7.

[2]    As explained in the FEC's Opening Brief at 16-19, the Commission's initial vote in the instant matter was not defective.

1

at 5) that ratification here is not an "adequate" remedy for the prejudice it has allegedly suffered, its Reply relies principally upon its argument (id. at 5-7) that another vote by the new Commissioners at the FEC may stop this lawsuit and thus offer it relief. The Club's new reliance upon the happenstance of the President's recent appointments to the Commission, however, is neither supported by the decision in Legi-Tech nor consistent with the law's treatment of institutional bodies.

In particular, the Club notes the D.C. Circuit's observation in dictum that "there had been no significant change in the membership of the Commission" by the time the district court improperly dismissed the Legi-Tech action. Club Reply at 5 (citing Legi-Tech, 75 F.3d at 709). The Club then leaps to the conclusion (Reply at 7) that a different result should apply here because "[t]hree of the six Commissioners have been replaced" since the FEC voted to reauthorize suit in this action. However, the mere fact that the composition of the Commission has changed does not entitle the Club to a new vote on whether to authorize suit. Under 2 U.S.C. 437g(a)(6), only one vote to authorize suit is required, and nothing in the statute or Legi-Tech suggests that the Commission must vote to confirm its support for pending litigation every time a Commissioner departs or joins the FEC.

Indeed, it is precisely this sort of revisiting of old decisions that the Supreme Court and D.C. Circuit have sought to avoid, even where the Commission's initial decision-making process was found unconstitutional. In Buckley v. Valeo, 424 U.S. 1, 142-43 (1976), the Supreme Court held that the FEC was not required to revisit prior votes (including votes to authorize suit) that had been made by unconstitutionally-appointed voting members. In Legi-Tech, 75 F.3d at 708-09, the D.C. Circuit held that it was sufficient for the Commission to ratify, en masse, votes that were subject to the influence of unconstitutionally-appointed non-voting members, even if

2

the ratification vote amounted to nothing more than a "rubberstamp."  In neither case did the court require a fresh look at pending litigation files by "untainted" Commissioners who had been appointed since the initial vote to authorize suit.  There is thus no factual or legal basis for assuming that a third vote would come out any differently, much less a jurisdictional mandate to dismiss this case on the speculative chance that it might.[3]

What the Club seeks is not due process, but a windfall in the form of a new vote based on the coincidence that three new Commissioners were recently appointed to the FEC.  In Common Cause v. FEC, 842 F.2d 436, 450 (D.C. Cir. 1988), the D.C. Circuit considered the similar issue of whether the Commission should be required to issue a statement of reasons explaining the basis for its vote not to take further enforcement action, where "only two of the six Commissioners who participated in the challenged vote still remain[ed] at the FEC."  The court declined to impose such a requirement, in part on the ground that it would be a waste of administrative resources to require the Commission to revisit its earlier vote.  Id.  The same is true here.

Fundamentally, the Club "has no legally cognizable interest in the composition of the [FEC's] membership."  Sprague Elec. Co. v. United States, 529 F. Supp. 676, 682 (C.I.T. 1981).  The Commission is "an institutional agency and the appeal must be to the institution, not to the personal predilection of the individual members."  Braniff Airways, Inc. v. Civil Aeronautics Bd., 379 F.2d 453, 468 (D.C. Cir. 1967) (quoting T.S.C. Motor Freight Lines, Inc. v. United States, 186 F. Supp. 777, 784 (S.D. Tex. 1960)).  Thus, even if the new Commissioners did not support this action — which the Club does not even dare to speculate — that would not be a

---

[3]   Of course, if a majority of the current Commission wanted to withdraw this lawsuit, they could do so without any action by this Court since no answer has been filed.  See Fed. R. Civ. P. 41(a)(1).

basis for dismissing this action to require the Commission to revisit its two prior unanimous decisions to authorize suit. See Mallory v. Eyrich, 922 F.2d 1273, 1281 (6th Cir. 1991) (changes in composition or political makeup of county Board of Elections did not justify setting aside a consent judgment agreed to by the Board).[4]

As previously explained (FEC Opening Brief at 16-19), the Commission's initial vote complied with 2 U.S.C. 437g(a)(6), which provides that the Commission may vote to institute a civil action if it is unable to correct or prevent a violation through conciliation. By voting to grant "contingent suit authority," the Commission did exactly that — it adopted a formal conciliation proposal setting out its position on how the case should be settled and voted to authorize a civil action if (and only if) conciliation based on that proposal failed.[5] The Club asserts that the statute forbids the Commission from voting on that question until after it makes a determination that conciliation has failed, but section 437g(a)(6) does not say that. That provision does not mandate any particular sequence of events, require the Commission to vote on whether conciliation has failed,[6] or contain any other language purporting to restrict the time at

---

[4]  As explained in the FEC's opening brief (at 19-20, 25-26, 28-31), the proper remedy for a failure to follow administrative procedures is a stay until those procedures are followed, not dismissal.

[5]  Although the Club suggests that it is being singled out for unfair treatment, the Commission has voted to grant contingent suit authority in other cases, sometimes against groups with political views different from the Club's. See, e.g., Certification in MUR 4643 dated Feb. 26, 2002, available on the FEC's website at http://eqs.sdrdc.com/eqs/searcheqs. In any event, the Club has come nowhere near satisfying the extremely high standard for proving a claim of selective prosecution. See FEC Opening Brief at 10 & n.8.

[6]  By law, a vote is required only if the Commission wishes to accept a conciliation proposal. See 2 U.S.C. 437g(a)(4)(A)(i).

4

which the vote to authorize litigation must take place.[7]  Once the Commission has voted to authorize suit, nothing in section 437g(a)(6) forbids it to permit its General Counsel to choose the date of filing.  See 2 U.S.C. 437d(a)(6) (authorizing the Commission "to initiate" enforcement litigation "through its general counsel").  The subsequent appointment of new Commissioners is wholly irrelevant under this statutory analysis.

The Commission's subsequent vote to ratify and reauthorize suit also was proper, even under the Club's construction of the statute, without regard to whether new Commissioners were appointed after this Commission vote was final.  By the time of the second vote on December 5, 2005, both the minimum 30-day period and the maximum 90-day period allowed for conciliation had expired.  See 2 U.S.C. 437g(a)(4)(A)(i).  Two proposals had been offered by each side, and the parties were at an impasse in their negotiations.  See Club Ex. 20.[8]  Contrary to what the Club suggests in its brief (Reply at 8), the Commission was aware of this impasse when this case was filed, and it was obviously aware of the Club's allegations of inadequate conciliation efforts when it voted to continue this litigation after the Club filed its motion to dismiss.  Finally, there is no assertion, much less proof, that any of the Commissioners were biased in their decision.  Absent such bias, there is no justification for second-guessing the Commission's decision to pursue litigation.  See Legi-Tech, 75 F.3d at 709 ("we cannot, as Legi-Tech argues, examine the

---

[7]    By contrast, section 437g(a)(1) specifically provides that the Commission may not conduct any vote on an administrative complaint (other than a vote to dismiss) until the respondent has had at least 15 days to respond to the charges, and section 437g(a)(11) provides that the Commission cannot vote to petition a court for a contempt citation until "after an investigation" leading to a determination that a court order has been violated.  The fact that Congress clearly imposed such timing requirements elsewhere in section 437g(a) strongly suggests that it did not intend to incorporate one into section 437g(a)(6).  See Chao v. Day, __ F.3d __, 2006 WL 162920 at *3 (D.C. Cir. Jan. 24, 2006) (citation omitted).

[8]    The General Counsel offered to continue to try to settle the case even after this action was filed, id. at 3, but the Club has not submitted any new proposals or indicated any desire to negotiate further.

internal deliberations of the Commission, at least absent a contention that one or more of the Commissioners were actually biased").

## CONCLUSION

For the foregoing reasons and the reasons explained in the FEC's opening brief, the Club's motion to dismiss should be denied.

                                                Respectfully submitted,

                                                /s/
                                                Lawrence H. Norton
                                                General Counsel

                                                /s/
                                                Richard B. Bader
                                                Associate General Counsel
                                                (D.C. Bar # 911073)

                                                /s/
                                                David Kolker
                                                Assistant General Counsel
                                                (D.C. Bar #394558)

                                                /s/
                                                Erin Monaghan
                                                Attorney
                                                (D.C. Bar #438434)

                                                /s/
                                                Kai Richter
                                                Attorney

                                                FOR THE PLAINTIFF FEDERAL
                                                ELECTION COMMISSION
                                                999 E Street, N.W.
                                                Washington, D.C.  20463
                                                (202) 694-1650
                                                (202) 219-0260 (FAX)

Dated: January 25, 2006