UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Federal Election Commission, Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:05cv01851 (RMU) |
| | ) |
| The Club for Growth, Inc., Defendant. | ) |

**THE CLUB FOR GROWTH'S SURREPLY IN RESPONSE TO THE FEC'S SURREPLY IN OPPOSITION TO THE CLUB'S MOTION TO DISMISS**

The Surreply of the Federal Election Commission ("Surreply") fails to establish the points it selects for additional discussion. In this pleading, the Club for Growth, Inc. ("Club") responds to issues the Surreply raises. The Club reaffirms, however, the broader challenges presented in its opening Memorandum and Reply.

The FEC acknowledges (Surreply at 4) that 2 U.S.C. § 437g(a)(6) authorizes the Commission to "vote to institute a civil action <u>if it is unable</u> to correct or prevent a violation through conciliation." Thus, the statute expressly conditions the power to "vote" to sue – not merely the commencement of litigation – on an actual inability to conciliate.[1] Moreover, the statute commands the FEC to actually pursue conciliation for at least 30 days, no matter how hopeless the effort may appear. 2 U.S.C. § 437g(a)(4)(A)(i). Thus, what the statute means by "unable" to conciliate is the actual failure of a good faith attempt, and that is what must exist <u>before the "vote"</u> to sue.

The Surreply (at 4) says the vote was "contingent." But it remains a "vote" to sue taken when there was no inability to conciliate. The statute does not authorize such a vote. Moreover, leaving it to the staff to determine later that the Commission was unable

---

[1] The Surreply's assertion (at 4 n.6) that "a vote is required only if the Commission wishes to <u>accept</u> a conciliation proposal" is perplexing. That assertion indicates that the Commission may not have understood its statutory obligations.

1

to conciliate would violate the statutory ban on Commission delegation of its decisions. 2 U.S.C. § 437c(c).

The Surreply does not withdraw the FEC's earlier concession that its own regulation, 11 C.F.R. § 111.19, "contemplates" the "vote" will occur after conciliation has failed and before litigation is in progress (Op. at 16 n.10). Nor does the Surreply deny that the sequence contemplated by the regulation and the statute has been the historic practice of the FEC.

The Surreply asserts (at 4 n.5) the Club is not the only victim of a vote conducted before conciliation has been attempted, but it offers only one example and provides no explanation of why the occasional respondent is denied proper statutory procedure. Isolated departures from historic practice for no disclosed reason are the very paradigm of arbitrary and unlawful agency action – all the more troubling when they violate both statute and regulation and burden core First Amendment activity.

In sum, the Surreply utterly fails to establish statutory authority for the "vote" to sue the Club. Thus, the Surreply's greater effort is to avoid assessment of that issue by claiming it was "mooted" by a later vote to "ratify" – a vote the Surreply asserts this Court must accept even though it occurred under circumstances that perpetuated the structural incentives to litigate rather than conciliate, contrary to the purpose of the violated statute and regulations.

The Surreply fundamentally misconstrues *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 707-09 (D.C. Cir. 1996), claiming (at 1) it allows the agency to "moot" any challenge to unlawful agency votes by waiving a "ratification" wand without regard to whether the later vote occurred in permissible circumstances, cured the particular violation, and went

as far as practical to eliminate possible prejudice.  Thus, it shrugs off *Legi-Tech*'s stress on the fact that Commission membership had not changed as a mere "observation in dictum."  It is doubly mistaken.

First, the supposed "dictum" was central to the court's decision not to dismiss.  Although the "ratifying" vote in *Legi-Tech* had directly cured the only alleged violation – because a constitutionally constituted body had acted there was no separation of powers violation – the court recognized that dismissal still would be proper if it plausibly might cure remaining prejudice.  However, it was not obvious what any such prejudice might be.  Moreover, and fundamentally, dismissal would not cure any such hypothetical prejudice because, since the Commission membership had not changed, the court could be confident that any future vote would be the same.  *Id.* at 708-09.  The court declined to order a meaningless and futile act.  *Id.* at 709.

Second, the reasoning of an appellate decision is not mere dicta.  It is instead a critical part of the precedent that such an opinion establishes.  *See Seminole Tribe v. Florida*, 517 U.S. 44, 66-67 (1996) ("[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which" a court is bound); *County of Allegheny v. ACLU*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring and dissenting) ("*stare decisis* directs us to adhere [to] explications of the governing rules of law"); *Shea v. Mitchell*, 421 F.2d 1162, 1165 (D.C. Cir. 1970) (following the "ratio decidendi" or a U.S. Supreme Court opinion); *Ealy v. Richardson-Merrell, Inc.*, 897 F.2d 1159, 1162 (D.C. Cir. 1990) (following the "ratio decidendi" of a prior D.C. Court of Appeals' opinion).

The Surreply cannot and does not deny that the factors relied upon by the *Legi-Tech* opinion all point in favor of dismissal here. For example:

- The violation here was not a respondent-neutral compliance with a clear statute but, instead, was an unexplained violation of clear statutes and regulations that targeted a particular respondent that lacked any benefit from the bipartisan structure of the Commission.

- The "ratifying" vote did not cure the statutory violation but, instead, occurred while the agency was committed to litigation and the statute's intended structural protection of the preferred remedy of conciliation was defeated.[2]

- Allowing ratification to avoid dismissal here would invite further violations of the same type, thus negating the carefully-crafted statutory procedures and allowing the agency to ignore its own regulation.

- There is a real prospect that dismissal will lead the three new Commissioners to make further efforts to conciliate, and certainly the court cannot confidently rule out such efforts.[3]

---

[2] The statute and regulation violated here obviously intend that the "vote" to bring suit will occur while the agency is not in litigation – since the whole purpose of the vote is to allow the agency to bring suit. Thus, the FEC's later vote, taken while this litigation was ongoing, did not <u>cure</u> the statutory violation but, to the contrary, <u>violated the statute again</u>. In *Legi-Tech* the claimed violation had nothing to do with whether the agency had voted before or during litigation.

[3] Because the only violation in *Legi-Tech* was technical – the wrong people had been in the room when the proper people voted, there was no identifiable continuing prejudice, and a dismissal would have done nothing to reduce even speculative prejudice – the court concluded that even a "rubberstamp" vote to ratify would be an adequate cure. By contrast, in this case the problem extends beyond the timing of the vote to evidence that the agency also slighted its duty to conciliate in good faith. Thus, this Court properly may be concerned with the lack of evidence that the "ratification" vote was based on fair disclosure of the circumstances, including how the staff had misused the earlier vote to limit negotiation and the extent of the flexibility demonstrated by the Club. But since the "ratification" vote here occurred in structurally improper

4

The Surreply's claim (at 3) that the Club is asserting a protected interest in the membership of the Commission is nonsense. The Club is asserting its right to have the Commission follow procedures established by Congress to minimize the threat to core First Amendment activity by creating structural incentives for the agency to conciliate and to treat litigation as a last resort. The Commission's changed membership is relevant because it precludes a finding that dismissal would be futile.

The closest the Surreply comes to addressing the futility question is its baseless claim (at 5) that no conciliation could occur after a dismissal because "the maximum 90-day period allowed for conciliation" has expired. However, when the staff stopped conciliating and filed suit, only about 60 of the 90 days had expired.[4] Clearly the agency cannot count as pre-suit conciliation a period during which it had ceased conciliating and gone to court. Moreover, the Surreply does not deny that the agency regularly conciliates for more than 90 days when the respondent is willing to waive the 90-day limit.

The FEC's decision to submit a Surreply, like its decision to conduct a "ratification" vote, demonstrates the agency's own awareness that its position is not tenable. The tenor and content of the Surreply, like that of the FEC's Opposition, demonstrates that, nevertheless, the FEC does not take the statutory procedures seriously. Unless this action is dismissed, the FEC will continue to disregard its legal obligations, burdening core First Amendment activity in ways Congress never authorized.

---

circumstances and a dismissal here offers a meaningful cure to continuing prejudice, the Court can dismiss without reaching those other defects.

[4] Moreover, no days of good faith conciliation on the alternate theory had elapsed since the staff initially refused to conciliate on that theory and then made a facially untenable proposal.

5

        Respectfully submitted,

              /s/
        _____
        Carol A. Laham (D.C. Bar # 415171)
        Thomas W. Kirby (D.C. Bar # 915231)
        Caleb P. Burns (D.C. Bar # 474923)
        WILEY REIN & FIELDING LLP
        1776 K Street, NW
        Washington, DC 20006
        (202) 719-7000
        (202) 719-7049 (FAX)

Date: February 3, 2006