UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REPRESENTATIVE CHRISTOPHER SHAYS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL ELECTION COMMISSION, <br><br> Defendant. | Civil Action No. 04-1597 (EGS) |
| BUSH-CHENEY '04, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL ELECTION COMMISSION, <br><br> Defendant. | Civil Action No. 04-1612 (EGS) |

**FEDERAL ELECTION COMMISSION'S
NOTICE OF FILING**

Attached are the two news articles mentioned by counsel for the Commission during the December 13, 2005 hearing.

Respectfully submitted,

/s/

Lawrence H. Norton
General Counsel

/s/

Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

|  |  |
|---|---|
|  | /s/ _____ |
|  | Colleen T. Sealander |
|  | Assistant General Counsel |
|  |  |
|  | Robert W. Bonham III |
|  | Senior Attorney (D.C. Bar # 397859) |
|  |  |
|  | Holly J. Baker, Attorney |
|  | Vivien Clair, Attorney |
|  | Brant S. Levine, Attorney |
| December 20, 2005 | FOR THE DEFENDANT |
|  | FEDERAL ELECTION COMMISSION |
|  | 999 E Street, N.W. |
|  | Washington, D.C. 20463 |
|  | (202) 694-1650 |

[Back]  [Search All Issues]  [Contents]

A BNA Monitoring Service

# Money & Politics Report

September 19, 2005
ISSN 1523-570X

Lead Report
News

**FEC Enforcement**
**Pending FEC Cases From 2004 Campaign**
**Could Clarify Legal Status of 527 Groups**

The Federal Election Commission has 85 "pending investigations" involving matters arising from the 2004 campaign season, FEC General Counsel Lawrence Norton said Sept. 16.

Norton provided no details on the status of the investigations or parties involved because of FEC rules requiring that open enforcement matters be kept secret. Others indicated, however, that a number of the current probes involve the activities of independent political organizations--often known as Section 527 groups--which rose to prominence in last year's presidential campaign.

Attorney Kenneth Gross, who advises campaign donors, said that many donors recently have received government subpoenas asking for information about their involvement with Section 527 groups. Gross and other private attorneys suggested that donors may not be the target of current probes but are being contacted as witnesses in these investigations.

Norton, the FEC counsel, and Gross, a partner with the law firm Skadden Arps Slate Meagher and Flom, spoke to an audience of corporate attorneys and others at an annual Washington conference on corporate political activities sponsored by the Practising Law Institute (PLI).

### 'Donors Getting Subpoenas.'

"We're finding that donors are getting subpoenas even if they have no liability" for campaign finance violations, Gross said. While none of the pending cases has reached a conclusion that the activities of Section 527 groups were illegal, Gross said that the existence of the current investigations has chilled activity in this area during the current election cycle, at least for the time being.

He said, though, that it was too early to say whether the role of such organizations would be diminished in next year's congressional elections and the 2008 presidential race.

Independent political groups rose to prominence in 2004, collecting hundreds of millions of dollars mainly in large contributions after the 2002 Bipartisan Campaign Reform Act barred unlimited "soft money" contributions to the national political parties. Groups such as America Coming Together and the Media Fund helped boost Democratic presidential candidate John Kerry, while GOP-leaning groups like Progress for America and Swift Boat Veterans for Truth supported President Bush.

Speaking to BNA after his presentation at the PLI conference, Norton said the FEC so far has received 307 enforcement matters, including complaints filed with the commission, arising from the 2004 campaign. He said more than half of these--168--have already been dismissed, while 85 cases have been activated by the commission.

Another 54 cases remain in limbo, neither dismissed or activated, Norton said. These could include cases not yet reviewed or cases that a majority of FEC commissioners could not agree to activate or dismiss.

### Cases to 'Develop Law'?

The FEC considered but ultimately did not adopt a stringent regulation that could have curbed the activities of Section 527 groups in 2004. Various parties involved in the campaign contended, nonetheless, that the activities of some or all of these groups were illegal and filed enforcement complaints with the FEC, the bulk of which still are believed to be open.

Norton said that, despite the FEC's inability to clarify the status of the 527 groups through a regulation, "the law can be developed in other ways." He suggested that the results of pending cases, once concluded and revealed, could establish the legal status of independent groups.

Last year's proposed FEC regulation to curb Section 527 groups was advanced by two commissioners, Democrat

Scott Thomas and Republican Michael Toner, who also spoke at the PLI conference. Like Norton, the two commissioners also hinted that the legal status of the independent groups could be clarified through FEC enforcement matters, though they also provided no details.

Addressing the potential liability of donors to such groups, Thomas noted that the FEC "very, very rarely" has acted in the past against supporters of groups claiming exemption from FEC rules. On the other hand, Toner said that he would advise people to be "very cautious" because "there is a lot of fluidity" due to ongoing activity in this area. Toner noted, for example, that lawsuits remain pending in federal court challenging the FEC's actions on regulating Section 527 groups.

Toner added that recent years have seen more changes in campaign finance law than have been witnessed in a long time and suggested that the law will continue to develop quickly over the next several months.

### DOJ Has Active Probes

In addition to the discussion of FEC activity, officials from the Justice Department told the PLI conference that DOJ has become more active in this area in the wake of BCRA's passage. Craig Donsanto, chief of DOJ's Election Crimes Branch, noted that BCRA strengthened criminal enforcement provisions of campaign finance law, and the department has taken this as a signal to crack down in this area.

The FEC has civil enforcement authority for all violations of federal campaign finance law and brings cases that can result in fines. DOJ has criminal enforcement authority for "knowing and willful" violations and now has the authority to bring cases that can result in serious jail time for campaign finance violators, Donsanto said.

He said DOJ currently has 50 "active investigations" of possible criminal violations of campaign finance laws. He said the usual focus of criminal probes is on violations of "heartland" provisions of the law, such as the ban on corporate campaign contributions, contributing through "conduits" to avoid campaign finance limits, and obstructing investigations of such violations. Donsanto added that the department is set to publish soon a revised manual for prosecuting campaign finance crimes that will take "a much more aggressive tone" than previous guidelines about prosecuting such crimes.

Donsanto's superior at DOJ, Noel Hillman, head of the Public Integrity Section, said the department views public corruption cases, including campaign finance cases, as a very high priority. "We're training a small army federal prosecutors" to pursue such cases, he said.

At the same time, Hillman said DOJ's prosecutorial decisions would be fair and objective and would not "target people based on political affiliation."

Private attorneys at the PLI conference suggested DOJ may be becoming too aggressive and may be focusing unfairly on donors rather than candidates asking for contributions. But, Donsanto responded that "when we have a case, we take it as high as we can," including pursuing a candidate in matters where there is knowledge and intent to violate the law.

*By Kenneth P. Doyle*

Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1523-570X
Copyright © 2005, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form,
without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V



**The colonial me**
*wants to cower beneath very comfortable sheets.*



# TIME
## NATION

Tuesday, Sep. 27, 2005

## The Feds Take On Political Advertising Groups

**The Federal Election Commission sues the Club for Growth, a conservative political group, and may launch probes into similar orgainizations**

By VIVECA NOVAK

A campaign-finance loophole is suddenly getting squeezed. A year after so-called 527 political groups, like Swift Boat Veterans for Truth and America Coming Together, played a piviotal role in the election and drew the ire of political figures on both sides of the aisle, the Federal Election Commission is taking closer look at their activities. The agency filed suit last week against the Club for Growth, a pro-free market, anti-tax group that raised $8.5 million last year and targeted, among others, former Senate Minority Leader Tom Daschle. The FEC's lawsuit, which accuses the conservative group of operating as a political committee which is therefore subject to caps on contributions, could be the first in a string of similar actions. America Coming Together, the mammoth pro-Democratic voter mobilization group, is also being investigated by the FEC, the group's former CEO, Steve Rosenthal, told TIME. America Coming Together and its counterpart, the Media Fund, raised nearly $200 million in the 2004 election cycle for get-out-the-vote efforts and ads in battleground states. Election lawyers in Washington say the FEC has been papering other 527s with subpoenas.

In the aftermath of campaign-finance reform, 527 committees are among the few permissible repositories of big-dollar political donations, and they have become a haven for individuals pushing particular issues or agendas. Under current elections law, 527 committees that aren't registered with the FEC can raise unlimited amounts of money and use it for advertising and other activities, as long as they don't specifically advocate the election or defeat of a particular candidate. The agency attempted but failed last year to come up with regulations to rein in the groups, and its attempt to do so now through litigation is raising the hackles of some campaign finance lawyers. "What the FEC is doing is chilling speech" as the First Amendment defines it, says attorney Ken Gross.

Even if the FEC's lawsuit doesn't hold up in court, the uncertainty over the legal status of 527s may be enough to dampen their effectiveness. Without clear regulations but with at least one suit pending and other probes in progress, the groups and their would-be donors won't be sure what they're allowed to do, Gross says.

If the FEC wins its suit against the Club for Growth, the agency wants the group to return millions in donations and pay an unspecified fine. If it also sues Rosenthal's group it may have to settle for less: America Coming Together recently folded its tent, leaving little but a mailing address. In the meantime the lawsuit is shaking up the political world just as fundraising for congressional midterm elections kicks into gear.

Copyright © 2005 Time Inc. All rights reserved.    Privacy Policy
Reproduction in whole or in part without permission is prohibited.