# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL ELECTION COMMISSION,    :
                                   :

                Plaintiff,    :     Civil Action No.:     05-1851 (RMU)
                                   :

                v.           :     Document No.:     7
                                   :

CLUB FOR GROWTH, INC.,           :
                                   :

                Defendant.    :

## MEMORANDUM OPINION

### DENYING THE DEFENDANT'S MOTION TO DISMISS

## I.   INTRODUCTION

The Federal Election Commission ("FEC" or "Commission"), brings this suit against Club for Growth, Inc. ("Club for Growth"), alleging that the defendant failed to register as a political organization despite spending millions of dollars supporting the Republican National platform during the 2000, 2002, and 2004 elections cycles.  The FEC claims that these actions violate the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431-55.  The defendant has moved to dismiss this action claiming that because the plaintiff failed to follow proper statutory and regulatory procedures before bringing this lawsuit, this court lacks subject-matter jurisdiction.  Because the plaintiff's failure to provide timely notice to the defendant of the administrative complaint constitutes harmless error, because the plaintiff is entitled to substantial deference in its conciliation procedures, and because the plaintiff ratified its decision to institute this lawsuit, the court denies the defendant's motion to dismiss.

## II.   BACKGROUND

This civil action has its roots in an administrative action with the FEC.  On May 13, 2003, according to the plaintiff, the Democratic Senatorial Campaign Committee ("DSCC") filed an administrative complaint alleging that the defendant failed to register as a political committee and publicly report its activities.  Compl. ¶ 7.  The DSCC alleged that Club for Growth's actions (or lack thereof) violated FECA.  *Id.*  Four days following receipt of DSCC's complaint, on May 29, 2003, the FEC sent notice of this complaint to Club for Growth, Inc., PAC ("PAC"), the political action committee affiliated with Club for Growth, Inc.  Pl.'s Opp'n at 4.  On June 3, 2003, the FEC sent notice of the DSCC's complaint directly to Club for Growth.  *Id.*  Club for Growth, acting through its attorney, responded to DSCC's allegations on June 6, 2003.

On October 19, 2004, the Commission adopted a factual and legal analysis originally prepared by the Commission's General Counsel on May 13, 2004.  *Id.*  The Commission provided the defendant with a copy of its findings, a notice of opportunity for conciliation, and a subpoena for documents on October 27, 2004.  *Id.* at 4-5.  Over the next several months, the parties engaged in numerous correspondence in an attempt to conciliate their dispute.  Pl.'s Opp'n at 5-8.

Critical to the instant motion to dismiss is an undated letter received by Club for Growth on July 21, 2005.  In the letter, the General Counsel of the FEC stated that if the parties were unable to reach an agreement, "the Commission has authorized this Office to file suit in United States District Court."  Def.'s Mot., Ex. 9.  On September 19, 2005, the General Counsel of the FEC notified Club for Growth that it had rejected Club for Growth's September 14, 2005 offer and filed the instant lawsuit.  *Id.* ¶ 19.  On December 5, 2005, the Commission voted to ratify its

prior decision authorizing this lawsuit.  Pl.'s Opp'n at 8.

Before the court is the defendant's motion to dismiss.  The defendant argues principally that the FEC violated FECA by authorizing the General Counsel to initiate this lawsuit prior to the conclusion of the conciliation process.  Def.'s Mot. at 13-15.  The defendant also argues that the Commission violated FECA in refusing to conciliate in good faith, *id.* at 15-20, and by failing to provide Club for Growth with timely notice of the administrative action, *id.* at 20-21. According to the plaintiff, these statutory violations divest the court of subject-matter jurisdiction over this case.  *See id.*  The court now turns to the defendant's motion.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction

only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338,

343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim,

however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of

Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court

is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227,

241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine

whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.   The Court Denies the Defendant's Motion to Dismiss

The defendant makes three distinct arguments in support of its motion to dismiss.  First,

the defendant argues that the FEC violated FECA in failing to provide Club for Growth with

timely notice of the allegations levied against it.  Second, the defendant claims that the FEC

failed to conciliate in good faith with the defendant.  Third, the defendant argues that the FEC

violated FECA by authorizing this lawsuit prior to the completion of the conciliation process.

The court rejects each of these arguments for the reasons set forth below.

1.     **The Plaintiff's Failure to Provide Timely Notice Constitutes Harmless Error**

The defendant argues that the court should dismiss this action because the FEC failed to provide timely notice to Club for Growth of the underlying administrative action.  Def.'s Mot. at 20.  Under FECA, "[w]ithin 5 days after receipt of a complaint, the Commission shall notify, in writing, any person alleged in the complaint to have committed such a violation."  2 U.S.C. § 437 (a)(1).  On May 19, 2003, the FEC sent notice of the administrative complaint to Stephen Moore, who serves as both the Treasurer of PAC and as the President of Club for Growth, Inc.  Pl.'s Opp'n, Ex. 1.  The address line on the letter read as follows: "Stephen Moore, Treasurer, Club for Growth, Inc., PAC, 1776 K Street, NW Suite 300, Washington, DC 20006."  The defendant argues that this constitutes ineffective notice because the FEC, in trying to notify a representative of Club for Growth Inc., instead notified Mr. Moore as the Treasurer of Club for Growth Inc. PAC.  On June 3, 2005, apparently realizing the error in the notice letter, the FEC sent notice again to Mr. Moore, this time addressing the document to Stephen Moore, President of Club for Growth, Inc.  Pl.'s Opp'n, Ex. 2.  To the defendant, this notice defect warrants dismissal.  Def.'s Mot. at 20-21.  The court cannot agree.

The D.C. Circuit, in considering notice issued by an administrative official not authorized to issue the notice, ruled that irregularities in notice procedures should be disregarded if the irregularity constitutes "harmless error."  *Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 212 (D.C. Cir. 1998).  The defendant argues that this principle is inapplicable to the instant case because the notice procedures set forth in Section 437g "must be followed."  Def.'s Mot. at 21 (quoting *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996)).  Although the defendant is correct that FECA sets forth specific procedures that the FEC must follow, courts, in

analyzing agency action, invoke the Administrative Procedure Act's "harmless error" doctrine.

*Doolin*, 139 F.3d at 212.  This rule "tempers judicial consideration of 'challenges to 'preliminary,

procedural, or intermediate agency action." *Id.*

        Stephen Moore acts as both Treasurer of PAC and President of Club for Growth.  For this

reason, though the original (and timely) notice was sent to him in his capacity as Treasurer of

Club for Growth, Inc. PAC, Moore, as President of Club for Growth, Inc. surely had coterminous

notice.  *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 224 (4th Cir. 1999) (stating that

if a document names a party "in such terms that every intelligent person understands who is

meant . . . the misnomer of a corporation in a notice, summons . . . or other step in a judicial

proceeding is immaterial if it appears that [the corporation] could not have been, or was not,

misled"); *See SEC v. Lines Overseas Mgmt., Inc.*, 2005 WL 3627141 * 10 (D.D.C. Jan. 7, 2005)

(ruling that a subpoena issued to a company called "LOM Group of Companies" was not invalid

where the target company was "LOM, Ltd." because it was "plainly obvious that the target

Defendant for that subpoena [was] LOM").  The plaintiff's notice defect, in inadvertently

including "PAC," constitutes harmless error.[1]

## 2.    The Plaintiff is Entitled to Substantial Deference in its Conciliation Procedures

        The defendant also moves the court to dismiss the complaint on the grounds that the FEC

failed to make a good faith effort to reach an agreement with the defendant prior to engaging this

lawsuit.  Def.'s Mot. at 15-20.  The plaintiff contends, however, that the court must defer to the

---

[1]    What's more, the FEC, upon learning of the error, took immediate steps to remedy the
defect (by sending proper notice) and by affording the defendant the opportunity to
respond.  Pl.'s Opp'n, Ex. 2.  These corrective actions no doubt reduced any prejudge to
Club for Growth, Inc. (if any, in fact, existed).

FEC's "attempt to conciliate," as required by the statute, and should not infuse its own determination as to whether the FEC's conciliation negotiations were fair.  Pl.'s Opp'n at 21. The court agrees with the plaintiff.

Under FECA, the FEC is required to "attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved."[2]  2 U.S.C. § 437g (a)(4)(A)(i).  In assessing whether the FEC complied with this statutory provision, the court shows high deference to the agency's action.  *Hagelin v. FEC*, 411 F.3d 237, 244 (D.C. Cir. 2005) (stating that "the FEC is 'precisely the type of agency to which deference should presumptively be afforded' because the FEC's bipartisan composition makes it especially fit to 'decide issues charged with the dynamics of party politics'") (citing *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981)); *Antosh v. FEC*, 599 F. Supp. 850, 853 (D.D.C. 1984). Reviewing the FEC's actions in this case with high deference to the agency, the court rules that the agency's actions were not arbitrary and capricious and that the agency complied with the statute.  *Hagelin*, 411 F.3d at 242.

On August 4, 2005, the parties met to discuss conciliation.  Def.'s Mot., Ex. 12.  The FEC submitted a conciliation proposal to Club for Growth on August 8, 2005.  *Id.*, Ex. 15.  Also, the FEC indicated on August 11, 2005 that it was "open to resolving this matter through

---

[2]     The defendant's motion contains a glaring error in citing an outdated statutory standard. The defendant argues that the FEC is required under FECA to "make every endeavor" to conciliate.  Def.'s Mot. at 16.  Yet, in 1980, Congress revised FECA to require only that the FEC "attempt" to conciliate.  2 U.S.C. § 437g (4)(A)(i).  Therefore, the defendant's arguments as to FECA's conciliation mandates is not merely unpersuasive, but twenty-six years outdated.

conciliation" and would "carefully consider the terms of any proposal." *Id.*, Ex. 16.  The FEC ultimately rejected Club for Growth's September 14, 2005 conciliation offer on September 19, 2005.  *Id.*, Ex. 18.  This course of events indicates that the FEC made an "attempt" at conciliation – precisely what the statute requires.[3]

The defendant argues that despite this sequence of events, the FEC's proposals were not made in good faith.  Def.'s Mot. at 15-17.  The defendant fails to cite any evidence or argument to support its position save that Club for Growth did not like the FEC's offers.  Simply put, FECA requires that the FEC come to the conciliation table, but it doesn't instruct the FEC on the nature of its offerings.  *See EEOC v. Keco Indus.*, 748 F.2d 1097, 1102 (6th Cir. 1984) (stating that the "apparent dissatisfaction with the EEOC conciliation attempt . . . is not the appropriate standard of review.  The district court should only determine whether the EEOC made an attempt at conciliation").  Moreover, the statute does not require the Commission to resolve the dispute solely through conciliation, but also expressly sanctions the FEC's use of "persuasion," 2 U.S.C. § 437g(a)(4)(A)(i), a process which, by its nature, involves a greater role in convincing and a lesser role in compromising.  *See* BLACK'S LAW DICTIONARY 1164 (Seventh Ed.) (defining "persuade" as "to induce (another) to do something," and defining "persuasion" as "the act of influencing or attempting to influence others . . .").  With FECA expressly authorizing the FEC

---

[3]     FECA requires the FEC to attempt to conciliate for a minimum period of 30 days and a maximum period of conciliation of 90 days.  2 U.S.C. § 437g(a)(4)(A)(i).  The defendant confuses the minimum with the maximum in complaining that the FEC "cut the 90-day period short."  Def.'s Mot. at 4.  FECA does not require that the FEC attempt to conciliate for 90 days and the court will not write such a requirement into the law.

to attempt to "persuade," the defendant's argument becomes even more meritless.[4]

The defendant asks this court to equate the statutory requirement that the FEC must attempt to resolve the dispute with a requirement that the FEC must make offers which are to Club for Growth's liking. Essentially, the defendant wants the court to scrutinize what the FEC offered during the negotiations. The court must decline this invitation. A review of the FEC's conciliation offers is a task outside of this court's institutional competence and a role not sanctioned by FECA. *Hagelin*, 411 F.3d at 237. In short, though the FEC's offers did not entice the defendant, the FEC nonetheless made the statutorily required attempts. 2 U.S.C. § 437g(a)(4)(A)(i).

### 3.    The Plaintiff Properly Ratified its Prior Decision to File Suit

The defendant's last attempt to avoid this lawsuit is its argument that the defendant failed to follow FECA's procedures for the institution of a lawsuit; namely, that the FEC authorized its General Counsel to file this lawsuit prior to the conclusion of the conciliation process. Def.'s Mot. at 13. The court finds the defendant's argument unpersuasive.

---

[4]     The plaintiff's complaint alleged that the defendant was both a political committee that failed to register, report, and refuse corporate and various other contributions, and an ordinary corporation that had made forbidden expenditures. Def.'s Mot. at 17-19. The defendant argues that the FEC failed to conciliate as to the allegation that Club for Growth was an ordinary corporation which had made forbidden expenditures. *Id.* To the defendant, FECA requires the FEC to engage in conciliation efforts as to all of the plaintiff's findings. *Id.* For the reasons set forth above, the court disagrees. The defendant cites *EEOC v. Sears, Roebuck & Co.*, 650 F.2d 14, 19 (2d Cir. 1981) in support of its decision. That decision, however, supports this court's conclusion. In *Sears, Roebuck & Co.*, the circuit court rejected the EEOC's decision to litigate those claims that it did not attempt to conciliate. *Id.*, 650 F.2d at 19. Here, by contrast, the defendant asks this court to dismiss all of the plaintiff's claims because the plaintiff was unwilling to conciliate as to a specific issue. Pl.'s Opp'n at 24 & n.16.

During the course of the conciliation process, the FEC General Counsel sent an undated letter to Club for Growth indicating that "[i]f we are unable to reach an agreement with your client, the Commission has authorized this Office to file suit in United States District Court." Def.'s Mot., Ex. 9.  Yet, FECA makes clear that the Commission's decision to authorize a lawsuit must occur posterior to the conclusion of the statutorily mandated conciliation process.  2 U.S.C. § 437g (a)(4)(A)(i)(stating that if "the Commission is unable to correct or prevent any violation of this act . . . the Commission may, upon an affirmative vote of four of its members, institute a civil action").  The defendant directs the court to an FEC brief in *Williams v. FEC*, 104 F.3d 237 (9th Cir. 1996), in which the Commission stated it is "not empowered even to consider filing a lawsuit until all the administrative procedures required by 2 U.S.C. § 437g(a), including conciliation, have been exhausted."  The plaintiff does not dispute, and the court agrees, that the plaintiff's first authorization to initiate this lawsuit prior to the completion of the conciliation process is contrary to law.  2 U.S.C. § 437g(a)(6)(A).  The court's inquiry, however, does not end there.

The court must now consider whether the plaintiff effectively cured this statutory defect by ratification of its first action.  *Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998).  "Ratification occurs when a principal sanctions the prior actions of its purported agent."  *Id.* at 212 (citing RESTATEMENT (SECOND) OF AGENCY § 82 (1958)); *See* Def.'s Reply at 4 (citing *FEC v. Legi-Tech*, *Inc*, 75 F.3d 704, 706 (D.C. Cir. 1996) in calling upon the court for "judicial analysis of whether the remedy is adequate").

On December 5, 2005, the FEC voted to ratify its prior decision authorizing the current lawsuit.  Pl.'s Opp'n, Ex. A.  The plaintiff argues that this ratification is valid and cures any

statutory defect that may have existed.  Pl.'s Opp'n at 13.  The court agrees.

The district court, in *Legi-Tech, Inc.*, ruled that the FEC could not ratify a prior action and remanded the case back to the agency to initiate a new proceeding.  *Legi-Tech*, *Inc*, 75 F.3d at 706.  Reversing this decision, the D.C. Circuit concluded that because the Commission's decision would likely not differ the second time around, the district court's dismissal constituted an unnecessary formality.  *Id.* 75 F.3d at 709.  In coming to this conclusion, the D.C. Circuit considered the "degree of continuing prejudice . . . and whether that degree of prejudice – if it exists – requires dismissal." *Id.*, 75 F.3d at 708.

Both parties rely on the D.C. Circuit's holding in *Legi-Tech* to support their positions. The defendant argues that a central factor driving the D.C. Circuit's decision was the fact that, as the court stated, even if the court were to remand the case to the agency, "it is virtually inconceivable that its decision would differ in any way the second time from that which occurred the first time."  Def.'s Surreply at 2-3 (citing *Legi-Tech*, 75 F.3d at 708).  As the defendant's argument goes, because three of the six members of the Commission have been replaced since the ratification vote, the prospect that the results of a new vote on whether to authorize the lawsuit is possible.  Def.'s Reply at 7.  Although the possibility of a different outcome of the vote exists, the court is unwilling to infuse its analysis with speculation as to the commissioners' likely votes.  The fact that there was no change in membership of the Commission in *Legi-Tech* supported the D.C. Circuit's holding in that case, but it was not a factual predicate for it.  To be sure, the court stressed its unwillingness to "examine the internal deliberations of the Commission, at least absent a contention that one or more of the Commissioners were actually biased."  *Legi-Tech*, 75 F.3d at 709.  If this court adopted the defendant's construction of *Legi-*

*Tech*, it would have to examine all of the changed circumstances and guess at the agency's

action.  The *Legi-Tech* decision cannot be construed so as to condone this type of intrusive and

certainly imprecise guesswork.[5]

In the case at bar, as in *Legi-Tech*, the Commission took corrective steps to cure the

statutory defect.  *Legi-Tech*, 75 F.3d at 708; *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489

(D.C. Cir. 1995) (distinguishing cases in which the agency refused to take corrective action).

The FEC, on December 5, 2005, rendered a new decision and affirmed its prior decision to

authorize the General Counsel to pursue litigation.  This action properly ratified the prior

decision for two reasons.  First, the FEC's action constituted a subsequent review of the

evidence.  *See Doolin*, 139 F.3d at 213 n. 11 (recognizing a subsequent agency action as a valid

ratification and indicating that the court will not "substitute our judgment for that of the

agency").  Second, because the FEC's December 5, 2005 action came after 30 days of

conciliation efforts, it was consistent with 2 U.S.C. § 437g (a)(4)(A)(i) & (a)(6)(A).[6]  *Id.*, 139

F.3d at 212 (stating that "it is essential that the party ratifying should be able not merely to do the

act ratified at the time the act was done, but also at the time the ratification was made") (quoting

---

[5]     Judicial inquiries of this sort run afoul of *Legi-Tech*, 75 F.3d at 709 (indicating the inappropriateness of judicial intrusion into internal agency actions) and *Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 468 (D.C. Cir. 1968) (recognizing the Commission as "an institutional agency" not a mere composition of its individual members).

[6]     The defendant argues that the FEC's December 5, 2005 vote was contrary to FECA because "the purported 'ratifying' vote was taken after the staff already stopped conciliating and taken [sic] the agency [sic] to court."  Def.'s Reply at 4.  Yet FECA requires that the Commission vote to institute a lawsuit only "if the Commission is unable to correct or prevent any violation of this act."  2 U.S.C. § 437g(a)(6)(A).  Because it is axiomatic that the Commission must conclude its conciliation attempts prior to determining that conciliation has failed, the defendant's argument is unpersuasive.

*FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)).


### IV.   CONCLUSION

For the reasons herein, the court denies the defendant's motion to dismiss.  An order

directing the parties in a manner consistent with this memorandum opinion is separately and

contemporaneously issued this 5th day of June, 2006.


RICARDO M. URBINA
United States District Court