UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Federal Election Commission, Plaintiff, | **)** | |
| | **)** | |
| v. | **)** | Case No. 1:05cv01851 (RMU) |
| | **)** | |
| The Club for Growth, Inc., Defendant. | **)** | |

**DEFENDANT CLUB FOR GROWTH'S MOTION TO CERTIFY THE
JUNE 5, 2006, ORDER FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(B)
AND FOR A STAY OF PROCEEDINGS PENDING APPEAL**

Defendant Club for Growth, Inc. ("Club") respectfully moves the Court to certify its June 5, 2006, Order (and Memorandum Opinion) for immediate appeal pursuant to 28 U.S.C. § 1292(b).[1]  As the Club shows below, this is the extraordinary case in which an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and … an immediate appeal from the order may materially advance the ultimate termination" of the case.  *Id.*  The ratification/jurisdiction issue is an important legal question separate from the merits that is conclusively resolved by the June 5 Order and that is effectively unreviewable on appeal from a final judgment.  *See GTE New Media Services, Inc. v. Ameritech Corp.*, 44 F. Supp. 2d 313, 316 (D.D.C. 1999) (Urbina, J.) (stating standards, collecting authority, and granting certification). Indeed, the need to assure that core First Amendment activity is not subjected to intrusion and burden without clear justification commonly leads courts to fully explore the threshold propriety of FEC actions before permitting them to proceed on the merits.  In order to adequately safeguard the Club's First Amendment rights against any unnecessary

---

[1]   The Club has conferred with the FEC, which will not consent to this motion.

encroachment, the Club also moves to stay the merits of this litigation pending consideration of the appeal on the ratification/jurisdiction issue.

I.  **THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION OVER THE THRESHOLD RATIFICATION/JURISDICTION RULING**

The June 5 Order found it "clear" that the FEC vote authorizing this case was "contrary to law." *See* Memorandum Opinion Denying the Defendant's Motion to Dismiss (filed June 5, 2006) ("Mem. Op.") at 10. It also noted that the FEC correctly had stated the controlling law in an earlier brief. *Id.* Thus, the agency commenced this action in knowing violation of clear law. The Court held, however, that under *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 706-09 (D.C. Cir. 1996), the FEC had cured the defect by voting to ratify the invalid authorization to sue. Mem. Op. at 10-13. The Court's ratification/jurisdiction ruling was conclusive, not preliminary or tentative. It resolved a purely legal issue (i.e., whether this suit is properly authorized) that is entirely distinct from the merits (i.e., whether the Club is a "political committee" or has made unlawful corporate expenditures).

The Court's opinion demonstrates that it considered the ratification/jurisdiction ruling with care, and the Club does not ask the Court to reconsider. However, as Judge Norgle recently said in granting § 1292(b) certification, a court may be confident in its own ruling and still acknowledge "that the Defendants present well-reasoned arguments in support of their position." *In re Ocwen Fed. Bank FSB Mortgage Servicing Litig.*, No. 04 C 2714, MDL 1604, 2006 WL 1371458, at *3 (N.D. Ill. May 16, 2006). *See also APCC Services, Inc. v. Sprint Communications Co.*, 297 F. Supp. 2d 90, 98 (D.D.C. 2003) ("[a]lthough this Court believes that its prior decisions … are correct, … the arguments in support of contrary conclusions are not insubstantial"). Similarly, in

granting certification in *GTE New Media*, this Court expressed no lack of confidence but granted certification because "certainly a substantial ground for difference of opinion" existed. 44 F. Supp. 2d at 316.

Similarly, without asking the Court to change its ruling, the Club respectfully suggests there are substantial, reasoned arguments why *Legi-Tech* may not be applicable here. We start with the observation that *Legi-Tech* did not treat the ratification issue as easy. Instead, it weighed a variety of factors before ultimately accepting the ratification there. Nor did the FEC view the issue as easy. Instead it sought and obtained leave for supplemental briefing. *See* P.'s Mot. For Leave to File a Surreply at 1-2; P.'s Surreply at 1-5. Considerations weighing against allowing ratification here include the following:

a. The FEC brought this action in <u>knowing</u> violation of "<u>clear</u>" legal requirements. Mem. Op. at 10 (emphasis added). Moreover, the FEC never proffered a plausible reason for doing so. By contrast, the problem in *Legi-Tech* flowed from retroactive application of an unanticipated holding that the membership of the FEC was technically unconstitutional when suit was authorized. 75 F.3d at 706. Reasonable arguments exist that a decision allowing ratification to correct an unforeseen and understandable error should not be extended to allow an agency to continue, without consequences, conduct it knowingly commenced in clear violation of the law.

b. In this case, the FEC undermined Congress' carefully-structured conciliation procedure in a way that reduced the agency's intended incentives toward compromise. By contrast, the illegality in *Legi-Tech* had no discernible tendency to undermine the agency process and was consistent with the intent of Congress. There is a

reasoned argument that ratification should not be allowed where, as here, it facilitates disregard of a clear legislative command.

  c.  In *Legi-Tech*, the FEC's ratifying vote came after the Commission had reorganized to prevent possible similar violations. Here, the FEC remains free to bring unauthorized suits and then "cure" the violation whenever challenged. There is a reasoned argument that ratification should not be allowed where it encourages ongoing violations.[2]

  d.  In *Legi-Tech*, there was "some force" to the view that the FEC's action was not actually void but "only voidable." 75 F.3d at 708 n.4. By contrast, the FEC vote to sue here was a clear violation of the statute. There is a reasoned distinction between ratifying a voidable action and ratifying a clearly unlawful act.

  e.  The "ratifying" vote in *Legi-Tech* completely cured the only ground of illegality – the earlier participation of two improper but non-voting members. By contrast, the vote here did not cure the basic problem – that the FEC staff knew during conciliation that it could take the case to court without Commission scrutiny. The June 5 decision concluded it was enough that the Commission ultimately conducted a vote after 30 days of conciliation. Mem. Op. at 12. But, there is a reasoned argument that the reason Congress required a period of conciliation before a vote to sue was to maximize staff incentives to compromise. Thus, the Commission's procedure did not cure the

---

[2] In fact, the Commission voted to pre-authorize suit on at least two other occasions in the past year. Letter from Lawrence H. Norton, General Counsel, FEC, to Brian Svoboda, Esq., Attorney for the Mo. Democratic State Comm. and Rod Anderson, Perkins Coie LLP (July 12, 2005), *available at* http://eqs.nictusa.com/eqsdocs/00004F15.pdf; Letter from Lawrence H. Norton, General Counsel, FEC to Kirk L. Jowers, Esq. and Joseph M. Birkenstock, Esq., Attorneys for Salvatore Trovato, Caplin & Drysdale, Chartered (Oct. 19, 2005), *available at* http://eqs.nictusa.com/eqsdocs/00004940.pdf. The Commission has issued no order or regulation committing it to refrain from such certifications in the future.

violation because the agency still did not engage in 30 days of negotiation in the knowledge that what occurred would be reviewed by the Commission in deciding whether to sue.

  f. *Legi-Tech* invoked the principle that courts do not require futile acts, stressing that since "there had been no significant change in the membership of the Commission" and it was "inconceivable that [agency] decisions would differ in any way," refusing to give effect to the ratification and dismissing would be pointless. 75 F.3d at 708-09. This was part of a lengthy paragraph supported by citations that "remand to the agency is an unnecessary formality <u>where the outcome is clear</u>." *Id.* (emphasis added). By contrast, in this case, half of the Commission has turned over and it is impossible to say what the agency would do after a dismissal.[3] The June 5 Order declined to rely on the changed membership, ruling that doing so would be to speculate improperly on agency decision-making. Mem. Op. at 11-12. There is a reasoned argument, however, that *Legi-Tech*'s futility analysis only applies where factors such as a lack of membership turnover permit a court to confidently predict that a remand would accomplish nothing. If the possibility of a different outcome cannot be ruled out, then the futility principle should not be employed to excuse remand.

---

[3] Interestingly, one of the new Commissioners recently gave notice that he doubted the new members would continue the former Commissioners' actions with respect to regulating "527 Organizations" such as the Club. "Since the original 'Explanation and Justification' was issued in November 2004 explaining why the Commission decided not to issue a [Section 527] regulation, three new Commissioners have joined the FEC. As one of those new Commissioners, I am extremely uncomfortable with trying to explain why the Commission acted the way it did in 2004 when I was not present and not a member of the Commission. I am skeptical that today's Commission will be able to reconstruct the rationales and thought processes of a Commission membership that no longer exists." Statement of Commissioner Hans A. Von Spakovsky, *Commission's Decision Not To Open New Rulemaking On 527 Organizations* (May 31, 2006) *available at* http://www.fec.gov/members/von_Spakovsky/speeches/statement20060531.pdf.

In sum, the June 5 Order decides a purely legal issue that is separate from the merits and as to which there are substantial grounds for difference of opinion.[4]

## II. THE RATIFICATION/JURISDICTION ISSUE IS CONTROLLING AND PROMPT RESOLUTION MAY MATERIALLY ADVANCE THE OUTCOME OF THIS PROCEEDING

The ratification/jurisdiction issue is controlling, and a prompt appeal of that issue may materially advance the outcome of this case. An issue is controlling if it may dispose of the entire lawsuit, instead of just a portion. *APCC Services, Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 105 (D.D.C. 2003) ("[c]ontrolling questions of law include issues that would terminate an action if the district court's order were reversed"). For example, "a question of law is controlling if it involves issues of personal or subject matter jurisdiction." *Id.* (collecting authority). As the June 5 Order recognized, the FEC may not commence an enforcement action without a valid authorizing vote. *See* Mem. Op. at 10 (citing 2 U.S.C. § 437g(a)(6)(A)). This Court has held that the FEC's pre-suit vote was clearly contrary to law. If that threshold defect has not been cured, then this suit is not authorized by law and must be dismissed in its entirety.

Because the ratification/jurisdiction issue is a matter of pure law that may dispose of the entire case, a prompt appeal also has the potential to materially advance the outcome. If the appeal succeeds, this complex and burdensome case will be over swiftly. The FEC complaint, the Joint Report Of The Parties Pursuant To LCvR 16.3(d) (April 18, 2006) ("Joint Report"), and the hard-fought proceedings at the agency level make clear the merits will involve intrusive, burdensome, and prolonged litigation effort. The Joint Report (¶ 8 and 8(a)) projects 8 to 9 months of discovery with the FEC stating it

---

[4] The Club also respectfully preserves its position on the other issues decided by the Order.

will need "up to 20 depositions (in addition to deposing any experts…) [and] up to 50 interrogatories," as well as insisting on the relevance of a wide range of documents.  That effort will intrude into and heavily burden the Club's core First Amendment activity.  Unnecessary encroachments on the Club's First Amendment rights can be avoided by conclusively resolving the threshold jurisdictional issues at the outset of this litigation.

In theory, the Commission might attempt to conduct further administrative proceedings and then initiate another lawsuit.  However, the June 5 Order holds that the Court should not speculate about what the new Commissioners might do.  Nor would such speculation matter.  When a case is dismissed for lack of personal jurisdiction, the merits are not affected and the suit may be reinstituted in another forum or even in the original forum if the defendant somehow becomes subject to service there.  But in *GTE New Media*, this Court certified its ruling that personal jurisdiction existed and noted that "[s]everal circuits have held that interlocutory appeal may be taken on the issue of personal jurisdiction."  44 F. Supp. 2d at 316 (collecting authority).  *See also AT&T Corp.*, 297 F. Supp. 2d at 105.

### III. THE THREAT TO CORE FIRST AMENDMENT RIGHTS MAKES CERTIFICATION EXCEPTIONALLY IMPORTANT IN THIS CASE

In granting certification in *GTE New Media,* this Court found that its threshold ruling sustaining personal jurisdiction could not effectively be reviewed on final appeal because heavy litigation burdens already would have been incurred.  44 F. Supp. 2d at 316.  Similarly here, the parties and the Court are at the threshold of burdensome litigation.  *See, supra* at 6-7.  Moreover, and importantly, the threatened burdens are not simply economic, but instead affect core First Amendment rights.  Courts routinely go out of their way to resolve threshold issues before allowing First Amendment burden.

The First Amendment provides flatly that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. There may be uncertainty about the full range of speech that is protected (e.g., defamation, obscenity, commercial advertising), but there is "universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Yet this Complaint attacks precisely such core speech.

Although current First Amendment doctrine permits some regulation of core speech, the "weighty constitutional objections" that arise require that resulting burdens be "meticulously scrutinized and substantially restricted." *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 387 (D.C. Cir. 1981). Thus, the courts take a far more active threshold role in assuring that FEC litigation is authorized before allowing it to proceed. *Id.* (requiring careful threshold scrutiny of the FEC's jurisdiction to issue an investigative subpoena); *FEC v. Larouche Campaign*, 817 F.2d 233, 234 (2$^d$ Cir. 1987) (per curiam) (applying "exacting scrutiny" when the FEC seeks to "tread in an area rife with first amendment associational concerns"). Where jurisdiction is at issue, courts often employ "a two-step procedure" under which the jurisdictional issue is resolved before a merits inquiry is allowed into First Amendment activity. *See Machinists Non-Partisan*, 655 F.2d at 396-97 & n.32 (citing with approval *Reader's Digest Ass'n, Inc. v. FEC*, 509 F. Supp. 1210 (S.D.N.Y. 1981) (mandating a two-step process so that FEC jurisdiction can be assured before inquiry proceeds)).

The procedures Congress requires the FEC to follow before authorizing suit "were devised and made mandatory … to avoid unnecessary intrusion on First

Amendment interests." Br. of FEC, *Williams v. FEC*, 104 F.3d 237 (9th Cir. 1996) (No. 95-55320), 1995 WL 17070069, at *20. Courts should "take a hard look" to be sure those procedures have been satisfied <u>before</u> allowing the FEC to impose the intrusive burdens of litigation on public speakers. *FEC v. NRA*, 553 F. Supp. 1331, 1338 (D.D.C. 1983); *Galliano v. U.S. Postal Service*, 836 F.2d 1362, 1370 (D.C. Cir. 1988). These considerations strongly favor threshold appellate review of the ratification/jurisdiction issue.

### IV. A STAY SHOULD BE GRANTED PENDING APPEAL

Many types of issues may be certified under § 1292(b), and in some cases it makes sense for discovery to proceed during the appeal. Here, however, an important benefit of certification will be to resolve a <u>threshold</u> issue before irreparable injury is inflicted on First Amendment rights and unrecoverable litigation burden is incurred. Thus, a stay is proper, as § 1292(b) itself contemplates.

The FEC cannot plausibly object to a stay. After all, the FEC allowed the administrative complaint to lie inactive for more than a year. Moreover, the FEC acquiesced in a *de facto* stay during the six months the motion to dismiss was pending.[5] Because the appeal will involve a pure issue of law, the appeal can be presented quickly. Indeed, if the FEC thinks it necessary, it can seek expedited briefing.

---

[5] Although the FEC made a perfunctory statement in the Joint Report that it wished to initiate discovery, it did nothing to follow up. And the grounds it advanced for commencing discovery were largely met by the Club's undertaking to preserve certain materials.

**CONCLUSION**

This case was commenced in clear violation of law, and reasonable arguments exist that the unlawfulness has not been cured. That threshold legal issue should be resolved before merits litigation proceeds. Otherwise, the Club may suffer serious and irreparable injury because of its core First Amendment activity. The Court should certify the June 5 Order for appeal and stay proceedings until the appeal is resolved.

Date: June 22, 2006                                        Respectfully submitted,

                                                           /s/
                                                           _____
                                                           Carol A. Laham (D.C. Bar # 415171)
                                                           Thomas W. Kirby (D.C. Bar # 915231)
                                                           Caleb P. Burns (D.C. Bar # 474923)
                                                           WILEY REIN & FIELDING LLP
                                                           1776 K Street, NW
                                                           Washington, DC 20006
                                                           (202) 719-7000
                                                           (202) 719-7049 (FAX)