UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL ELECTION COMMISSION,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | Case No.  1:05cv01851 (RMU) |
| v.   ) | |
| ) | OPPOSITION |
| CLUB FOR GROWTH, INC.,   ) | |
| ) | |
| Defendant.   ) | |

**FEC'S OPPOSITION TO CLUB FOR GROWTH'S MOTION TO CERTIFY THE JUNE 5, 2006, ORDER FOR APPEAL PURSUANT TO 28 U.S.C. 1292(b) AND FOR A STAY OF PROCEEDINGS PENDING APPEAL**

Deviation from the cardinal rule that only final judgments may be appealed requires a demonstration of exceptional circumstances.  Club for Growth, Inc. ("Club") has failed in each particular to meet the heavy burden of demonstrating, pursuant to 28 U.S.C. 1292(b), that the Court's June 5, 2006, Order (and Memorandum Opinion) ("Mem. Opin.") denying the Club's motion to dismiss "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Defendant's motion to certify must therefore be denied.  There is no dispute that the controlling precedent in the D.C. Circuit is <u>FEC v. Legi-Tech</u>, 75 F.3d 704 (D.C. Cir. 1996); the Club's motion contests only this Court's application of <u>Legi-Tech</u> to the facts presented in this case.  Such a fact-specific challenge is fundamentally unsuited to review on interlocutory appeal.  Moreover, appellate review at this stage would not materially advance the litigation, for even if the Club were to prevail on its motion, the appropriate remedy would not be dismissal of the lawsuit, but at most a limited stay of proceedings for additional conciliation talks.  Indeed, rather than "materially advancing" this

lawsuit, the Club's desire for an interlocutory appeal (and a stay of proceedings) would serve only to prolong resolution of the issues in this case.

**I.     THE JUNE 5, 2006, ORDER DOES NOT MEET ANY OF THE THREE REQUIREMENTS FOR CERTIFICATION PURSUANT TO 28 U.S.C. 1292(b)**

Section 1292(b) of Title 28 provides a limited exception to the rule that only final decisions of the district courts can be appealed.  As explained by the Supreme Court,

> The Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), was enacted to meet the recognized need for prompt review of certain nonfinal orders.  However, Congress carefully confined the availability of such review.  Nonfinal orders could never be appealed as a matter of right.  Moreover, the discretionary power to permit an interlocutory appeal is not, in the first instance, vested in the courts of appeals.  A party seeking review of a nonfinal order must first obtain the consent of the trial judge.  This screening procedure serves the dual purpose of ensuring that such review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals.  Finally even if the district judge certifies the order under § 1292(b), the appellant still "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."… The appellate court may deny the appeal for any reason, including docket congestion.

Coopers & Lybrand v. Livesay, 437 U.S. 463, 474-75 (1978) (footnotes and citations omitted). Under section 1292(b), "the movant bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  Virtual Defense and Development Int'l, Inc. v. Republic of Moldova, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) (internal quotations omitted).  "[T]he decision of whether to certify an issue for interlocutory appeal is addressed to the Court's discretion," In re Vitamins Antitrust Litigation, 2000 WL 34230081 at *4 (D.D.C. 2000), and ultimately "interlocutory appeals under 28 U.S.C. § 1292(b) are rarely allowed[.]"  First American Corp. v. Al-Nahyan, 948 F. Supp. 1107, 1116 (D.D.C. 1996) (citations omitted).

"[T]o establish a basis for an interlocutory appeal of a non-final order, the moving party must demonstrate three elements: (1) that the issue involves a controlling question of law; (2) that substantial contrary authority or other grounds for a difference of opinion exist; and (3) that immediate appeal would materially advance the ultimate determination of the litigation." Virtual Defense, 133 F. Supp. 2d at 22 (citing Trout v. Garrett, 891 F.2d 332, 335 n.5 (D.C. Cir. 1989)). If the district court elects to certify an issue under 1292(b), it must provide the appellate court with "a 1292(b) certification ... accompanied by th[e] court's reasons for believing that the statutory criteria are met." Tolson v. United States, 732 F.2d 998, 1003 (D.C. Cir. 1984). "Section 1292(b) 'is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals.'" Id. at 1002 (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2658.2, at 80 (2d ed. 1983)).

### A. The Order Does Not Involve A "Controlling Question of Law" Under 28 U.S.C. 1292(b)

The only legal issue raised by the motion to certify — whether the Commission's ratification of its vote to initiate a civil enforcement lawsuit against the Club was sufficient to cure any defect in the original vote — is not a "controlling question of law" as that criterion has been construed under section 1292(b).

> [T]he results of … [the] court's survey of cases certifying decisions for interlocutory appeal indicates that questions of law, as § 1292(b) uses that term, do not include the application of settled law to particular situations. Rather, questions of law that justify interlocutory appeals require courts to construe, reconcile, interpolate, or extrapolate laws or legal theories and then apply them to the facts of a case…. [T]he cases [the court] has reviewed always involve cases in which the law itself is unsettled.

Aspen Specialty Ins. Co. v. Muniz Engineering Inc., Civ. Act. No. H-05-0277, 2006 WL 1663732, at *3 (S.D. Tex. June 15, 2006) (first emphasis added; citations omitted).

3

Here, the Club merely asserts that this Court misapplied the D.C. Circuit's decision in Legi-Tech; it does not question that Legi-Tech is the settled and applicable precedent. Thus, the Club offers nothing more than a repeat of its already-rejected argument about how to properly apply Legi-Tech to the facts of this case, but this does not constitute a "question of law" under section 1292(b). See, e.g., Keystone Tobacco Co., Inc. v. United States Tobacco Co., 217 F.R.D. 235, 239 (D.D.C. 2003) ("Where the crux of an issue decided by the court is fact-dependent, the Court has not decided 'a controlling question of law' justifying immediate appeal; certification of the underlying legal question could only result in the court of appeals improperly wading into the factual pond of an ongoing matter"). The Club cites no cases that question or undermine Legi-Tech's holding, nor has the Club suggested that this Court's opinion is in tension with any other decision in this Circuit or elsewhere. As in Virtual Defense, this Court's opinion and order "[w]as not based ... on a disputed question of law," 133 F. Supp. 2d at 22, but on the application of settled law to the facts of this matter.[1]

Even if the Club could show that there is a "question of law" concerning Legi-Tech, the issue of whether the Commission's ratification vote was valid is also not "controlling" under section 1292(b), because the remedy the Club would have been entitled to, if the Commission's second vote had been invalid, would not have been dismissal of this case. The Club's motion

---

[1]    The questions of law at issue in APCC Services, Inc. v. Sprint Communications Co, L.P., 297 F. Supp. 2d 90 (D.D.C. 2003), and GTE New Media Services, Inc. v. Ameritech Corp., 44 F. Supp. 2d 313 (D.D.C. 1999), are thus easily distinguishable. The former involved an unsettled legal question about whether the underlying statute permitted a private right of action and, if so, whether assignees of the claims at issue would have standing to pursue any such action; the latter involved the novel question of whether non-physical (Internet only) contact with the District of Columbia satisfied the District's long-arm statute requirement for "a persistent course of conduct" within the jurisdiction so as to subject defendants to personal jurisdiction.

assumes that the only way the Court could have cured a hypothetical defect in the Commission's ratification vote would have been to dismiss this action. To the contrary, however, the proper remedy would not have been an automatic dismissal, and certainly not a dismissal with prejudice. See Legi-Tech, 75 F.3d at 708 ("no matter what course was followed — other than a dismissal with prejudice (which not even Legi-Tech dares request) — some effects ... are to be presumed to have impacted on the action"). As the FEC explained in its opposition to the Club's motion to dismiss (at 19-20), even if the Commission's ratification vote were deemed ineffective and the underlying vote of contingent suit authority were not sufficient to authorize litigation, the only possible prejudice that the Club could have suffered would have been an improperly shortened conciliation period. As another judge of this court has found, an appropriate remedy for such a flaw would be to "stay the action pending cure by the FEC" instead of "dismiss[ing] the suit for want of subject matter jurisdiction." FEC v. Nat'l Rifle Assoc. of America, 553 F. Supp. 1331, 1333 (D.D.C. 1983). For example, the Court could address any potential prejudice caused to the Club by issuing an order requiring the Commission to engage in additional negotiations in an effort to conciliate this matter, while retaining jurisdiction of the lawsuit. Such an order, whether couched in terms of a remand or of a stay, would lead to a period of negotiations with the current Commission; but this is a "remedy" that the Club can avail itself of at any time simply by offering to reopen settlement negotiations.[2]

---

[2] The Club appears to be complaining that it is not enough to be able to have settlement talks with the Commission now, while the case remains on the Court's docket. The Club's suggestion (see Motion at 4) that it is entitled to a chance to have untainted negotiations with FEC staff prior to yet a third Commission vote on suit authority naively presumes both an artificial barrier between staff and the Commission, as well as the Commission's ability to forget everything that has transpired in this matter, such as its own previous votes. See Legi-Tech, 75 F.3d at 709 ("Legi-Tech may well be right in arguing that the Commission's 'review' of the case after NRA was decided was nothing more than a 'rubberstamp' ... [but] forcing the Commission to start at the beginning of the administrative process, given human nature, promises no more

> B.  **There Is No Substantial Contrary Authority Or Other Grounds For A Difference Of Opinion**

As explained above, the crux of the Club's argument is that it disagrees with this Court's interpretation and application of Legi-Tech, not that the decision in Legi-Tech is inapplicable or subject to any dispute within the D.C. Circuit or any other court. Defendant has not presented a single case as contrary authority, nor any "grounds for a difference of opinion" other than rehashing the arguments that were weighed and rejected by this Court in ruling on the motion to dismiss. Judges of this court have been quite direct in stating that this will not suffice:

> In the more traditional case, such as this one, where the party moving for certification pursuant to § 1292(b) disagrees with a court's order denying a motion to dismiss and granting discovery, other District Courts within this Circuit have stated unequivocally that
>
>> Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a "substantial ground for difference of opinion" sufficient to satisfy the statutory requirements for an interlocutory appeal.

Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting First American Corp., 948 F. Supp. at 1116). The Club's motion to certify fits squarely within this model. As in First American, where "[o]ther than their interpretation of [a Supreme Court case], [the defendants] … offered little to support their desired result," the Club has "not

---

detached and 'pure' consideration of the merits of the case than the Commission's ratification decision reflected").

Moreover, the statute does not provide a right to negotiate with FEC staff ignorant of the Commission's views on what it would take to avoid litigation. To the contrary, the Act contains no limits on the Commission's communications with its own staff and it provides that "the Commission," not just its staff, "shall attempt ... to correct or prevent such violations by informal methods of conference, conciliation and persuasion." 2 U.S.C. 437g(a)(4)(A)(i). The staff's participation in conciliation negotiations is based on delegation from the Commission, not on independent statutory authority. To the extent the Club really just seeks a vote among the new Commissioners, it has provided no authority questioning this Court's rejection (Mem. Opin. at 11-12) of speculation about how the change in the Commission's membership (which occurred only after the Club filed its motion to dismiss) might affect another vote. See also infra pp. 9-10.

6

persuaded the Court that conflicting authority exists on the issue presented under these facts."
948 F. Supp. at 1117 (citation omitted).

Even if the Club could meet its burden under section 1292(b) merely by disagreeing with the Court's <u>application</u> of settled precedent, as the Commission explained in its opposition to the motion to dismiss (at 13-14), this case presents an <u>easier</u> determination than <u>Legi-Tech</u> that the Commission's ratification vote to authorize this suit was effective and sufficient.  Here, unlike in <u>Legi-Tech</u>, there was no constitutional defect to overcome but only a possibly premature vote to authorize suit against the Club.  Moreover, in <u>Legi-Tech</u> the D.C. Circuit's decision regarding the availability and effectiveness of ratification votes by the FEC affected many then-ongoing lawsuits that had been affected by an earlier determination that the FEC's composition was constitutionally defective, including cases where the Commission would have been unable to pursue such matters anew due to statute of limitations defenses.  Here, by contrast, the ratification vote affected only this case, and there is no argument that the FEC's case against the Club would be significantly affected by a statute of limitations defense.[3]

The Club also attempts to distinguish this case from <u>Legi-Tech</u> by accusing the FEC of commencing this lawsuit in "knowing" violation of the administrative requirements of the

---

[3]   Citing two instances of contingent suit authority votes almost a year ago in other administrative matters, the Club argues that allowing this suit to continue would encourage the Commission to repeat what happened in this case. Mot. at 4 & n.2.  The Club fails to note, however, that in each of those Matters Under Review, no litigation ensued because the Commission and the respondents entered into conciliation agreements.  <u>See</u> Conciliation Agreement In Matter Under Review 5611 (Missouri Democratic State Committee and Rod Anderson, in his official capacity as treasurer), *available at* http://eqs.nictusa.com/eqsdocs/00004944.pdf, and Conciliation Agreement In Matter Under Review 5453 (Salvatore Trovato), *available at* http://eqs.nictusa.com/eqsdocs/00004F29.pdf.  In any event, however, the Club offers no basis for its assumption that the Commission would continue to engage in the practice of authorizing litigation on a contingent basis in disregard of this Court's conclusion, and thus the Club's concern that the Commission would repeat the challenged behavior is unfounded, and provides no basis for distinguishing <u>Legi-Tech.</u>

Federal Election Campaign Act ("FECA" or "Act"). Mot. at 3. This is inaccurate, both as a matter of fact and as a construction of this Court's opinion and order, and forms no basis for distinguishing Legi-Tech from this case. Because no party had ever challenged a vote for contingent suit authority in a lawsuit before, there was no court decision interpreting the Act to bar the type of decision made while this matter was still before the Commission. The Commission explained in its opposition to the motion to dismiss (at 16-19) the legal basis for its position that a contingent suit authority vote arguably fits within the requirements of 2 U.S.C. 437g(a)(6) and thus was not contrary to law. The Club's accusation of a "knowing" decision to commence suit outside the requirements of FECA rests on a line, taken out of its context, in a brief that the FEC filed in FEC v. Williams, 104 F.3d 237 (9th Cir. 1996), in which the Commission was arguing against the application (for the first time) of a five-year statute of limitations to the agency's ability to seek civil penalties under the Act. A single line in a court brief, of course, does not constitute a formal Commission construction of the requirements of the Act; and even if the sentence from the Williams brief had reflected a formal agency action, rather than merely the Commission's litigation position at that time, the Commission can alter its interpretation of its governing statute so long as the change is explained. Our opposition to the motion to dismiss did explain the legal basis for the Commission's more recent practice of voting for contingent suit authority in some circumstances, and while the Court did not agree with the Commission's interpretation of the statute, there was no suggestion in the June 5, 2006, Memorandum Opinion and Order that the FEC had "knowingly" violated any of the administrative requirements in 2 U.S.C. 437g.

All of the Club's attempts to distinguish this case from Legi-Tech on interpretations of the facts herein are, in the end, nothing more than an attempt to engage the "new" Commission

8

in a review of this lawsuit, on the speculative possibility of a different outcome.[4]  It should be noted that this was not the basis of the Club's original motion to dismiss, which was filed well before there was any change in the Commission's membership.  In any event, this Court has already strongly rejected the defendant's invitation to start down the slippery slope of speculating what other actions the agency could take:

> Although the possibility of a different outcome of the vote [authorizing this lawsuit] exists, the court is unwilling to infuse its analysis with speculation as to the commissioners' likely votes.  The fact that there was no change in membership in the Commission in Legi-Tech supported the D.C. Circuit's holding in that case, but it was not a factual predicate for it.  To be sure, the court stressed its unwillingness to "examine the internal deliberations of the Commission, at least absent a contention that one or more of the Commissioners were actually biased." Legi-Tech, 75 F.3d at 709.  If this Court adopted the defendant's construction of Legi-Tech, it would have to examine all of the changed circumstances and guess at the agency's action.  The Legi-Tech decision cannot be construed so as to condone this type of intrusive and certainly imprecise guesswork.

Mem. Opin. at 11-12.  Defendant has offered no case law, and no new arguments, for its proposition that the Court should wade into an agency's past and future decisionmaking and guess whether a change in the institution's composition might lead to a different result.  Legi-Tech prohibits such intrusion without an allegation of actual bias by any member of the FEC, a contention the Club has not made.  Because the Club has offered no contrary authority to Legi-

---

[4]  The Club quotes (Mot. at 5 n.3) out of context a recent statement by one Commissioner, in which he discussed his concerns regarding the ability of the new Commissioners, who were not present during a prior rulemaking, to rewrite the Explanation & Justification in support of the conclusion reached in that proceeding.  In that rulemaking, the FEC decided not to issue a general rule regarding the status of "527 organizations" as political committees.  See Shays v. FEC, 424 F. Supp. 2d 100 (D.D.C. 2006) (remanding case to FEC to either promulgate a rule or explain its decision not to promulgate a rule).  The Club implies that this Commissioner's comments about how to proceed with the Shays remand should be interpreted to foreshadow the Commissioner's opinion about this case, but nothing in that quotation suggests any disagreement with the Commission's authorization of this lawsuit or with the legal basis on which it was authorized.  This kind of out-of-context quotation is irrelevant, both factually and in any attempt to distinguish the outcome in Legi-Tech.

9

Tech and no other grounds for departing from its application here, the motion for certification should be denied.

### C. An Immediate Appeal Would Not Materially Advance The Ultimate Determination Of Litigation Between The Parties

As discussed supra, pp. 5-6, even if the Club's motion to dismiss had been successful, the appropriate remedy would not have been dismissal of the lawsuit. In any event, even if the Club's motion to certify were granted and the D.C. Circuit were to return the matter to this Court with instructions to dismiss the case or remand it to the FEC, this would not end the matter. In that event, the underlying administrative procedures would revive and move forward, with further efforts between the FEC and the defendant to conciliate the probable cause findings that the Commission has already made. If such efforts were not fruitful, there would be no bar to the agency bringing another de novo civil enforcement action pursuant to 2 U.S.C. 437g(a)(6) against the Club.[5] Thus, again, if all that the Club would obtain through dismissal of this action is the chance to negotiate with the agency, then even a dismissal of the current action would not materially advance the ultimate resolution of the issues between the parties. As noted above, there is nothing preventing the Club from offering to negotiate regarding settlement of this lawsuit at any time.

---

[5]  While a later initiation of yet another lawsuit might leave the FEC unable to seek civil penalty awards for certain unlawful contributions to the Club that could fall outside the five-year statute of limitations in 28 U.S.C. 2462, the Commission would still be able to seek declaratory and injunctive relief regarding all of the Club's violations of the Act, and thus the Club would be in virtually the same position in defending a later-brought lawsuit as it is right now. Moreover, evidence about activity that took place outside the limitations period would still be relevant in evaluating the Club's major purpose, a critical part of the legal determination of whether the Club should have registered with the Commission as a political committee. Thus, any alleged burdens from discovery would likely not be different in any such future action.

As the Court noted in its Opinion rejecting the Club's argument that the Commission failed to negotiate in compliance with the FECA's requirements, the fact that the Club did not like the conciliation offers made by the Commission does not equate to a failure to meet the statute's requirements that the FEC attempt to conciliate, for there is no "requirement that the FEC must make [settlement] offers which are to Club for Growth's liking." Mem. Opin. at 9. Moreover, even if the Commission were ordered to engage in further conciliation efforts, nothing in this case would provide a basis for a court to order the Commission to rescind its probable cause findings or to conciliate in a way that the Commission believes would be insufficient "to correct or prevent such violation[s]," 2 U.S.C. 437g(a)(4)(A)(i). In light of the broad discretion the Commission has to make conciliation proposals, it is hard to understand how requiring the Commission to engage in another round of conciliation — rather than just responding to any settlement offers the Club may wish to make now — would materially advance this litigation. See also supra, pp. 5-6 n.2 (Club has no statutory right to negotiate with staff ignorant of the Commission's view on what is necessary to avoid litigation). In sum, any settlement negotiations the Club seeks to initiate can be conducted in parallel with the continuation of proceedings in this case. Such an approach, rather than the unnecessarily delay-filled path demanded by the Club, would allow the parties to materially advance the resolution of the issues involved in this enforcement action.

    **D.**    **The Club's Motion for Certification Must Meet The Elements Set Out In 28 U.S.C. 1292(b), Not The Requirements Of The Collateral Order Doctrine**

The Club's motion before this Court was brought pursuant to 28 U.S.C 1292(b), not the collateral order doctrine, which is an exception to the requirement of finality that permits certain interlocutory appeals under 28 U.S.C. 1291. See Cohen v. Beneficial Industrial Loan Corp., 337

U.S. 541, 545-46 (1949); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990) (citing Cohen). Under that doctrine — which does not require an appellant to bring a motion in the district court first — one of the factors considered by a court of appeals in assessing its jurisdiction over an interlocutory appeal brought under section 1291 is whether the order to be reviewed is "'effectively unreviewable on appeal from a final judgment.'" Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1126 (D.C. Cir. 2004) (quoting Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)). Although this factor is not one of the criteria in section 1292(b), the Club's motion (at 1) argues that the Court's order denying the motion to dismiss is "effectively unreviewable on appeal from a final judgment." Even if this consideration were relevant to the instant motion, however, the Club's assertion is incorrect. The Club's motion to dismiss argued that this Court lacked subject matter jurisdiction; such a defense can be raised at any time, including on appeal after this Court reaches a final judgment on the merits. Indeed, a "litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." Kontrick v. Ryan, 540 U.S. 443, 455 (2004) (citations omitted). Thus, the jurisdictional issue raised in the Club's motion can be raised effectively on appeal from a final judgment. Even if the Club were to bring an appeal under section 1291, it could not demonstrate appellate jurisdiction under the collateral order doctrine.

      **E.    Permitting Interlocutory Appeals For Decisions Like The Order At Issue Here Would Erode The Final Judgment Rule**

As explained above, certification under 1292(b) is rarely granted, even when a motion to dismiss has been denied by the district court. If this were not the case, there would be little left of the final judgment rule. Since successful motions to dismiss will always end the legal proceedings between the parties, if that fact were enough to warrant interlocutory review,

interlocutory review of failed motions to dismiss would become the rule, not the exception.  If a motion to dismiss such as this one — based on a question of subject-matter jurisdiction that can be raised on appeal after final judgment — qualified for certification simply because the losing party disagrees with the district court's careful application of governing circuit precedent to the facts, then there could scarcely be a motion to dismiss that would not be certifiable.

The Club attempts to make the anticipated burdens of discovery in this lawsuit appear so heavy that "effective" review (Mot. at 1, 6-7) of this Court's decision cannot be had in the ordinary course of appellate proceedings.  First, "effective" review is not the proper question for certification under section 1292(b).  See supra section I.D.  Second, the legal issue that is the basis of the Club's motion to dismiss concerns the Commission's vote to initiate this litigation, not a discovery issue.  Third, the subject-matter jurisdiction issue, which is actually the subject of the Court's order, can be reviewed after final judgment.

In any event, almost all defendants wish to avoid discovery, so if that were a basis for allowing interlocutory review, it, too, would swallow the final judgment rule.  Moreover, the Club paints the FEC's position on discovery, as presented to the Court in the parties' Joint LCvR 16.3(d) Report, as necessarily obtrusive and overly broad.  However, the Club fails to note that it did not object to the Commission's statement that a limited expansion of the authorized numbers of interrogatories and depositions "may be necessary" in this litigation,[6] see Joint Report at 4 (filed April 18, 2006; emphasis added), and that the Club itself could not even predict the scope of its own discovery, beyond the fact that it needed one month more than what the FEC thought

---

[6]   As noted by the Club, its stance during the FEC's administrative proceedings could easily be characterized as "hard-fought" (Mot. at 6); given this history, the FEC's caution at the Joint Report stage of the litigation in signaling to the Court that adequate discovery might require additional depositions and interrogatories beyond the minimum authorized under the Federal Rule of Civil Procedure is logical and far from the threat the Club attempts to conjure.

13

would be appropriate.  Id. at 4-5.  The Club's argument also ignores the fact that it has already provided documents to the FEC during the course of the administrative investigation, and thus as to at least some issues it responses to discovery will be only a matter of supplementation.

More importantly, the Club's mere assertion that discovery, or some particular portion thereof, could become unduly burdensome on the Club is both utter speculation and insufficient grounds for stopping the lawsuit.  This Court can rule upon any discovery dispute that might arise as this lawsuit moves forward, orders which themselves are not ordinarily subject to interlocutory appellate review.  See, e.g., Byrd v. Reno, 180 F.3d 298, 302 (D.C. Cir. 1999) (even civil contempt for refusal to obey discovery order must wait for review following final decision); cf. United States v. Philip Morris Inc., 314 F.3d 612, 620 (D.C. Cir. 2003) ("narrow subset" of attorney-client privilege rulings may be appealable under the collateral order exception to the final order rule under section 1291).  Discovery in this matter, despite the Club's unsupported predictions, could never approach the orders of magnitude considered by this Court and other district court judges in such cases as APCC Services (five related lawsuits, one under supervision by a special master, and over $1 million spent on document discovery with perhaps years more to go), and GTE New Media Services (a "Complex Track" case in which "limited" discovery had already exceeded 200 boxes of documents).[7]

The Club also proffers (Mot. at 7) the fact that discovery in a lawsuit under the FECA will involve inquiry into First Amendment activities as a reason why the Court should certify its decision for appellate review.  Almost all lawsuits under the FECA, however, review activities that relate to spending money on federal campaigns, thus involving both First Amendment

---

[7] These two decisions also appear to have conflated an element of the collateral order doctrine under section 1291 — whether the order would be effectively unreviewable on appeal from a final judgment — into their analysis of the propriety of certification under 1292(b).

14

activity and the compelling governmental interest of preventing the corruption of the nation's representative democracy. This does not mean, however, that in every enforcement lawsuit filed by the FEC, threshold issues must be given interlocutory appellate review. To the contrary, the Club does not cite a single FEC statutory enforcement suit in which such an interlocutory appeal has been certified.[8] Instead, the Club's motion wrongly attempts to equate subpoena enforcement decisions, in which courts have evaluated whether the Commission is acting within its own statutory jurisdiction in conducting an administrative investigation before enforcing discovery into First Amendment activities,[9] with this Court's determination that the Commission has validly authorized this lawsuit, in which there is no dispute that the substantive violations alleged are within the subject-matter jurisdiction of both the Commission and the court. See Mot. at 8-9. The Court's determination that the Commission has satisfied the statutory requirements for litigating this action has no direct relationship to the Club's speculation about the potential burdens of discovery. In other words, the Club's talismanic invocation of the First Amendment proves too much and should be rejected; this undifferentiated argument could be used to justify 1292(b) certification every time an issue arises that could delay or limit discovery.

---

[8]   The FEC is by no means the only federal agency with statutory and regulatory responsibilities that affect First Amendment activities, yet the Club has also failed to cite any enforcement cases from agencies such as the Federal Communications Commission or the Federal Trade Commission in which a First Amendment rationale was successfully invoked to gain certification of a threshold issue for interlocutory appeal.

[9]   See, e.g., FEC v. Machinists Non-Partisan Political League, 655 F.2d 380, 389 (D.C. Cir. 1981) (in subpoena enforcement action, "[w]e do not . . . demand of the FEC that it show a compelling interest before it may obtain the information it seeks. Instead, we may assume arguendo that if the FEC has statutory jurisdiction to conduct this investigation, then a compelling interest for the subpoenaed information can be shown").

15

## II.    GRANTING A STAY OF PROCEEDINGS IS UNNECESSARY AND WOULD DELAY RESOLUTION OF THIS LAWSUIT

Even if the Court grants the Club's motion for certification, it should not stay this lawsuit while the D.C. Circuit considers whether to grant such an appeal. As the language of section 1292(b) clearly indicates, a stay of district court proceedings while a litigant pursues permission from the court of appeals to bring its interlocutory appeal and, if successful, during the pendency of the appellate action, is not automatic. To the contrary, the statute explicitly presumes that there will <u>not</u> be a stay: "application for an appeal . . . shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." In this case, the Club resisted discovery during the administrative proceedings and has resisted commencement of discovery so far in this litigation. Further delay is not in the public interest, especially as the 2006 elections are approaching.

The Club claims (Mot. at 9) that the FEC has "acquiesced in a <u>de</u> <u>facto</u> stay" of this lawsuit while the motion to dismiss was pending, but this is incorrect. The Commission waited to press forward with discovery during the motion's pendency for multiple reasons, not the least of which was deference to the Court's consideration of the motion. When the FEC insisted on holding the required Rule 26(f) conference, despite the pendency of the motion, the Club was adamantly opposed to any discovery-related activity, even going so far as to object to Rule 26(a) initial disclosures in the Joint Report (an objection which still stands until the Court rules upon its validity) and to inform FEC counsel that in the event of a ruling against the Club, defendant would file for section 1292(b) certification. This behavior was entirely in keeping with the Club's longstanding resistance to disclosure, and the FEC's decision to await a ruling on the Club's objection to initial disclosures before initiating discovery and to hold staff resources available to oppose the promised certification motion in no way rises to the level of acquiescing

16

in an stay of discovery, much less to one extending for what may be additional months before the Court of Appeals acts on a motion for interlocutory appeal.[10]

## CONCLUSION

For the reasons stated above, the Commission respectfully requests that the Court deny defendant's motion to certify and motion for a stay of proceedings. A proposed order is submitted herewith, as required by LCvR 7(c).

Respectfully submitted,

/s/
Lawrence H. Norton
General Counsel

/s/
Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

/s/
David Kolker
Assistant General Counsel
(D.C. Bar #394558)

/s/
Erin K. Monaghan
Attorney
(D.C. Bar #438434)

FOR THE DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C. 20463
(202) 694-1650
Date: July 6, 2006                (202) 219-0260 (FAX)

---

[10] The Club's baseless assertion (Mot. at 9) that "the FEC allowed the administrative complaint to lie dormant for a year" is irrelevant to any evaluation of whether a stay of litigation proceedings is warranted if certification is granted.