UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Federal Election Commission, Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:05cv01851 (RMU) |
| | ) |
| The Club for Growth, Inc., Defendant. | ) |

**DEFENDANT CLUB FOR GROWTH'S REPLY TO
THE FEC'S OPPOSITION TO CERTIFICATION
FOR APPEAL AND FOR A STAY**

The FEC's "Opposition to Club for Growth's Motion to Certify the June 5, 2006, Order for Appeal" ("Opposition") falls short. The Opposition cannot deny that, if review is deferred, the Club will incur irreparable injury to core First Amendment rights, as well as substantial litigation burden. Nor, having already taken basic discovery at the administrative level, can the Opposition claim that the few months needed for such review will prejudice the FEC's case. The FEC created the ratification/jurisdiction issue by inexplicably violating a clear statute enacted to protect core First Amendment values. It has not acknowledged its conduct was unlawful or committed to refrain from future unlawful votes. Given the interests that are at stake – for the Club and for other future respondents – this is one of those unusual cases for which the discretion and flexibility of § 1292(b) exist. The Court should grant the motion to certify and stay.

**I.    THERE IS A SUBSTANTIAL THRESHOLD LEGAL ISSUE**

The Opposition mistakenly asserts (at 1) that the Club does not "dispute that the controlling precedent in the D.C. Circuit is *FEC v. Legi-Tech*, 75 F.3d 704 (D.C. Cir. 1996)." Not so. The Club recognizes that *Legi-Tech* is the closest available authority and that this Court ultimately concluded its principles control here. But the Club's Motion demonstrates that *Legi-*

*Tech* differed from this case in <u>fundamental</u> ways that could lead reasonable minds to permit certification here.

Simply stated, *Legi-Tech* permits the FEC to ratify a vote to sue where (i) the agency has <u>followed</u> its statute and (ii) has <u>fully and permanently cured</u> a later-discovered and non-prejudicial defect (iii) in circumstances that permit <u>a confident conclusion that dismissal would be futile</u>. By contrast, the FEC here (i) <u>violated</u> its statute and (ii) attempted only a <u>partial</u> cure (iii) in circumstances where a <u>dismissal cannot be found futile</u>. Deciding if *Legi-Tech* controls here requires just the type of "construction" and "extrapolation" the Opposition says (at 3) is properly certified. *See GTE New Media Services, Inc. v. Ameritech Corp.*, 44 F. Supp. 2d 313, 315-16 (D.D.C. 1999) (Urbina, J.) (certifying issue of whether established personal jurisdiction test should be extended to substantially different circumstances). Indeed, whether an agency may employ ratification to circumvent clear statutory commands is an issue of first impression particularly suited to §1292(b) certification. *See Beattie v. United States*, 690 F. Supp. 1068, 1069 (D.D.C. 1981) (noting the court certified an issue as one of first impression); *Bryan v. UPS, Inc.*, 307 F. Supp. 2d 1108, 1115 (N.D. Cal. 2001) (same).

The Opposition argues (at 4-5) that certification should not require the court of appeals to go "wading into the factual pond." But the facts relevant to the ratification/jurisdiction issue are undisputed. The Club is not seeking appellate fact-finding.

The Opposition denies (at 8-9) the FEC "knowingly" violated its statute, but the facts are not disputed. The June 5 Order held that the FEC had violated a "clear" statute. The FEC had followed that clear command for decades, both in practice and in its regulations, and FEC lawyers represented the agency could not do otherwise. It then violated the law. If the Club had acted thus, the FEC surely would accuse it of a "knowing" violation. But whatever label is

chosen, this is not the type of innocent compliance with the FEC's statute that was involved in *Legi-Tech*. Whether *Legi-Tech* should be extended to control here is a substantial legal issue on which reasonable minds can differ.

## II. THAT THRESHOLD LEGAL ISSUE IS CONTROLLING

The Opposition asserts (at 5) the ratification/jurisdiction issue is not controlling because a finding of non-ratification would not lead to "an automatic dismissal, and certainly not a dismissal with prejudice." But the Opposition never explains how, absent a valid vote, this action lawfully could commence. *See* 2 USC § 437g(a)(6)(A). And *Legi-Tech*, which the FEC deems controlling, clearly viewed effective ratification as necessary to avoid dismissal.

The Opposition argues (at 5) that, if ratification were not effective, the Club's only remedy would be a stay for negotiation "since the only possible prejudice [is] an improperly shortened conciliation period." That confuses two different violations: (i) failing to negotiate in good faith and (ii) bringing suit without a valid authorizing vote. Whether or not a stay might cure the first type of violation, it cannot supply the missing authority to litigate. The case cited by the FEC so holds. *FEC v. NRA*, 553 F. Supp. 1331, 1338 (D.D.C. 1983) (where a proper vote did not occur, jurisdiction is absent and a stay is not possible). Thus, *Legi-Tech* never suggested that a stay might cure the lack of a proper vote. The Club's appeal here relies upon the second type of violation.

Moreover, the key prejudice is the frustration of Congress' intent that the key vote be whether, in light of completed conciliation, the agency wished to <u>initiate</u> litigation. A vote to <u>continue</u> litigation rather than confessing error and dropping suit is not at all the same thing and certainly does not offer the same protection to respondents' First Amendment interests. <u>Reasonable minds could find that the proper remedy is a dismissal and remand, putting the agency back in the position it should have been at the time of the litigation vote</u>.

The Opposition says the agency would just authorize a new lawsuit. But, as already discussed, the Commission has a controlling group of new members who continue to debate how Section 527 organizations should be regulated. Whether they would vote to sue involves the type of speculation about future affirmative agency action the June 5 Order disapproved. The Opposition does not dispute the Motion's showing (at 6) that threshold issues, such as personal jurisdiction, that lead to dismissals without prejudice are controlling and commonly certified.

### III. A PROMPT APPEAL AND STAY WILL PROTECT VITAL RIGHTS WHILE THREATENING NO PREJUDICE

The Opposition does not deny that, if discovery proceeds, the Club's core First Amendment rights will be heavily burdened. Nor does it deny that such burdens constitute irreparable injury. *See Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). The Opposition discounts such injury, observing (at 14-15) that almost all FEC lawsuits threaten First Amendment injury. But that is precisely why federal courts give such painstaking review to the authorization and justification of FEC litigation, as the Club's Motion demonstrated (at 7-9).

The Opposition observes (at 15) that the cases giving special threshold scrutiny to First Amendment burdens, to date have not involved § 1292(b). But the Opposition makes no attempt to show that § 1292(b) scrutiny is fundamentally different from the other types of threshold scrutiny that have been afforded. Nor does the Opposition claim that any court ever has denied § 1292(b) certification of a substantial threshold issue where First Amendment rights were threatened and the other criteria were satisfied. Whatever the reason for the lacuna in precedent, the point remains that deferring review of the ratification/jurisdiction issue risks substantial and irreparable injury to First Amendment rights of the highest order.

Moreover, major and unrecoverable litigation burdens will be imposed if the case proceeds. The Opposition asserts (at 13-14) that the FEC may not take all the discovery its litigation plan suggests. But it concedes (at 13 n.6) that administrative discovery was "hard-fought" and suggests no reason to expect any change here. Its suggestion that the Court can deal with this issue by addressing particular discovery requests is specious. The Court could reign in other forms of Commission excess, but it could not forbid otherwise proper discovery because of a future post-judgment appeal.

Prompt appeal offers a third benefit: it can prevent what the Opposition (at 8) calls the FEC's "recent practice of voting for contingent suit authority in some [undisclosed] circumstances." The Opposition blusters (at 7 n.3) that the Club "offers no basis for its assumption that the Commission would continue to engage in the practice of authorizing litigation on a contingent basis in disregard of this Court's conclusion . . . ." But the Opposition does not concede that practice is unlawful, admits (at 7 n.3) that the FEC followed the same unlawful procedure in two other recent cases, offers no commitment to stop, and asserts (at 8) that "the Commission can alter its interpretation of its governing statute." And the Opposition's trivialization (at 8) of representations by FEC counsel to the Ninth Circuit counsels against reliance on such statements.

Significantly, these benefits can be obtained without substantial cost. The FEC obtained basic discovery at the administrative level. The Opposition concedes (at 16) that the FEC deliberately "waited to press forward with discovery" pending ruling on the Club's Motion to dismiss. And the Opposition says (at 7) that, if certification led to a dismissal, the FEC's case would not be "significantly affected" by the lapse of time.

## IV. CONCLUSION

This is not ordinary litigation. A government agency seeks to impose intrusive and burdensome litigation burdens on a small advocacy organization that has a substantial claim that the proceeding is unlawful. That purely legal issue can be quickly presented and decided on appeal without substantial prejudice to the government which already has had basic discovery. In this unusual situation, the Court should exercise the discretion and flexibility granted by §1292(b) to authorize a prompt appeal and to stay further litigation while the appeal is decided.

Date: July 17, 2006

Respectfully submitted,

_____/s/_____
Carol A. Laham (D.C. Bar # 415171)
Thomas W. Kirby (D.C. Bar # 915231)
Caleb P. Burns (D.C. Bar # 474923)
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000  (202) 719-7049 (FAX)