UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL ELECTION COMMISSION, | ) | Case No. 1:05cv01851 (RMU) |
| Plaintiff, | ) | |
| v. | ) | PLAINTIFF FEDERAL ELECTION COMMISSION'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT CLUB FOR GROWTH, INC. |
| CLUB FOR GROWTH, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF FEDERAL ELECTION COMMISSION'S
FIRST SET OF DISCOVERY REQUESTS
TO DEFENDANT CLUB FOR GROWTH, INC.**

TO:    DEFENDANT CLUB FOR GROWTH, INC.

c/o
Thomas W. Kirby and Carol A. Laham
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff Federal

Election Commission ("FEC" or "Commission") propounds the following Interrogatories and

Requests for Production (collectively, "Discovery Requests") to Defendant Club for Growth, Inc.

("Club").

## INSTRUCTIONS

In answering these Discovery Requests, please furnish all requested documents and

information in your possession, custody, or control, including any responsive documents or

information held by any persons acting on your behalf. However, you need not produce

documents and information that already have been produced by the Club to the Commission in

Matter Under Review ("MUR") 5365.

1

Each answer is to be given separately and independently, and unless specifically provided in a particular discovery request or permitted by Federal Rule of Civil Procedure 33(d), no answer shall be given solely by reference to a document. If you cannot answer any discovery request in full after exercising due diligence to secure the information requested, please respond to the extent possible and indicate your inability to respond to the remainder, stating whatever information or knowledge you have concerning the unanswered portion and detailing what you did in attempting to secure the unknown information. If any document cannot be produced in full, produce it to the extent possible, specifying the reasons for your inability to produce the remainder and stating whatever information, knowledge, or belief you have concerning the portion not produced.

Should you claim a privilege or have another objection with respect to any document, communication, or item about which information is sought, describe such item in detail sufficient to provide justification for the claim or other objection. Each claim of privilege must specify in detail all grounds upon which it rests, pursuant to Fed. R. Civ. P. 26(b)(5). No part of a discovery request shall be left unanswered simply because an objection is interposed to another part of the request. To the extent that you wish to redact the names and other identifying information (such as addresses or telephone numbers) of individual Club members or donors who have not been a part of the Club's management, Board, or Founders Committee/Leadership Council, you may identify each such individual with a pseudonym or unique identification number in place of his or her actual name.

Unless otherwise noted, please produce all documents responsive to these requests for the time period from January 1, 1999 to the present. These Discovery Requests are continuing in nature so as to require you to file supplementary responses or amendments during the course of

this litigation if you obtain further or different information prior to or during the trial of this action. Include in any supplemental answers the date upon which such further or different information came to your attention.

## DEFINITIONS

1.  "FEC" or Commission" shall mean Plaintiff Federal Election Commission.

2.  "Club" or "you" shall mean Defendant Club for Growth, Inc., its officers, directors, founders, employees, attorneys, agents, and any other persons acting on its behalf or under its control.

3.  "PAC" shall mean the Club for Growth PAC, Inc., its officers, directors, founders, employees, attorneys, agents, and any other persons acting on its behalf or under its control.

4.  "Citizens Club for Growth" shall mean the entity identified by David Keating at pages 68-69 of his deposition on March 23, 2005.

5.  "Political Club for Growth" shall mean the entity identified in CLUB 000080.

6.  "Communication" shall mean any transmittal of information, or recording or memorialization of such transmittal, in written, oral, electronic, digital, or any other form.

7.  "Document" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, emails, video recordings, audio recordings, phone messages, and electronic records. Each draft or non-identical paper or electronic document is a separate document within the meaning of this term.

8.  All numbered references to "CLUB _____" shall be to the documents produced by the Club in MUR 5365.

9.  "FECA" shall mean the Federal Election Campaign Act, as amended.

10.    "Founders Committee" shall mean the committee by the same name referenced in the Club's bylaws, and any successor committee or subgroup of the Club by the same or a different name, including but not limited to the Leadership Council.

11.    "Generic campaign activity" shall mean a public communication that promotes or opposes a political party and does not promote or oppose a clearly identified federal candidate or a non-federal candidate.

12.    "Get out the vote" or "GOTV" shall mean contacting registered voters by telephone, in person, or by other individualized means, to assist them in engaging in the act of voting.

13.    "Management" shall mean the Club's current and former officers, including but not limited to its President, Vice President, Treasurer, Secretary, Executive Director, Membership Director, Director of Operations, Web Director, Director of Government Affairs, and Directors of Development or Strategic Development.

14.    Mass mailing" shall mean a mailing by United States mail, electronic mail, or facsimile of more than 500 pieces of mail matter of an identical or substantially similar nature within any 30-day period. "Substantially similar" shall mean communications that use or include substantially the same template, script or language, but vary in non-material respects such as customization by the recipient's name, occupation, group affiliation, or geographic location.

15.    "MUR 5365" shall mean the matter before the Commission that was initiated by the complaint filed with the Commission on May 13, 2003 by the Democratic Senatorial Campaign Committee, naming the Club as a respondent.

16.    "Person" shall mean any natural person, partnership, committee, association, corporation, or any other type of organization or entity within the scope of 2 U.S.C. § 431(11).

17.    With respect to a Person, "identify" shall mean to state the Person's full name, most recent business or residence address, and phone number.

18.    "Phone bank" shall mean more than 500 telephone calls of an identical or substantially similar nature, made either by human operators or by an automated system, within any 30-day period. "Substantially similar" shall mean communications, whether pre-recorded or live, which use or include substantially the same template, script or language, but vary in non-material respects such as customization by the recipient's name, occupation, group affiliation, or geographic location.

19.    "Political advertisement" shall mean any mass communication (by means of broadcast, cable, satellite, newspaper, magazine, internet, outdoor advertising facility, mass mailing or telephone bank) that references or discusses a federal election or election cycle, candidate for federal office, national political party committee or other political committee with federal candidates, or group of persons sharing a political philosophy (e.g., "liberals," "conservatives," "tax-and-spenders" "tax-cutters"). The term "political advertisement" shall include any drafts, versions, or working copies, and shall also include any such advertisements that were prepared for dissemination but were ultimately not disseminated.

20.    "Political poll" shall mean any poll that references or discuss a federal election or election cycle, candidate for federal office, national political party committee or other political committee with federal candidates, or group of persons sharing a political philosophy (e.g., "liberals," "conservatives," "tax-and-spenders" "tax-cutters").

21.    "Voter identification" shall mean acquiring information about potential voters, including, but not limited to, obtaining voter lists and creating or enhancing voter lists by

verifying or adding information about the voters' likelihood of voting in an upcoming election or their likelihood of voting for specific candidates.

22.    "Voter registration" shall mean contacting individuals by telephone, on person, or by other individualized means to assist them in registering to vote.

23.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Discovery Requests all responses that might otherwise be construed as outside their scope.

24.    Unless otherwise stated, any reference to the singular shall be construed as including the plural, and any reference to the plural shall be construed as including the singular.

## REQUESTS FOR PRODUCTION

The Commission requests that the Club produce the documents specified below, in their entirety, for inspection and copying at the Commission's office at 999 E Street, N.W., Washington, DC 20463, within 30 days after service of these Discovery Requests. All documents shall continue to be produced each day thereafter as may be necessary for the Commission to complete its examination and reproduction thereof. In lieu of production of the originals, clear and legible copies of the documents sought may be delivered to counsel for the FEC at the above address on or before the above deadline.

If any document called for in the Commission's document requests formerly was, but no longer is, within your possession, custody, or control, provide the following information for each such document:

      a.    a description of the nature and contents of the document;

b.     the name, title and address of each person who prepared the document and the name, title and address of each recipient of the document;

c.     the date(s) the document was prepared;

d.     the date(s) the document was received;

e.     the location of any duplicates or copies of the document;

f.     how the document was disposed of, the identity of the person(s) who disposed of it, the identity of the person(s) who authorized its disposal, and the date of disposal; and

g.     if the document was destroyed, the date of destruction, the reason for destruction, the person(s) who destroyed it, and the identity of the person(s) who directed that it be destroyed.

1.  All documents and communications that identify or discuss any mission, strategy, or purpose of the Club (whether ongoing in nature or limited to a particular period of time).

2.  All documents that discuss or quantify the Club's effect on federal elections, efforts to influence federal elections, or effectiveness at influencing federal elections.

3.  An example of each solicitation (by video, audio, mail, print media, email, website, or other means) for donations to the Club or membership in the Club, whether made by the Club itself or by an elected official or other person or entity on behalf of the Club, including any response form, response envelope or other response mechanism that accompanied each solicitation.

4.  Any cover sheets, transmittal letters, slips, check stubs, notes, emails, and other documents or communications from donors that accompanied or referenced donations to the

Club and that include any reference by a donor to a federal candidate, national political party, or federal election.

5. All communications to the Club's donors or "members" (or prospective donors or "members") that reference or discuss a federal election, candidate for federal office, national political party committee or other political committee with federal candidates, or group of persons sharing a political philosophy (e.g., "liberals," "conservatives," "tax-and-spenders" "tax-cutters") involved in an election for federal office, including but not limited to documents currently or formerly posted on the "members only" section of the Club's website.

6. An example of each notice of, or invitation to, a Club fundraising event.

7. All political advertisements (as defined supra at p. 5) paid for by the Club, either directly or indirectly, including but not limited to scripts, video or audio recordings, and print copies.

8. Copies of any political polls (as defined supra at p. 5) undertaken or funded by the Club, either directly or indirectly, and copies of the results of each such poll.

9. All documents that reflect or relate to the Club's decision-making process regarding, or any specific decisions concerning, whether to endorse, support or oppose, directly or indirectly, particular candidates for federal office (as defined in 2 U.S.C. § 431(2)), including but not limited to documents relating to any candidate forums, interviews, meetings, or evaluations. This request is not limited to support or opposition that expressly advocated for or against a particular federal candidate.

10. All documents and communications that reflect or relate to any assistance or advice concerning elections, campaigns, or advertising provided by the Club (or any consultant or independent contractor hired by the Club) to any candidate for federal office, campaign

committee of a federal candidate, national political party committee, other political committee
(as defined by the FECA), political organization (as defined by section 527 of the Internal
Revenue Code), or person financing, creating or disseminating political advertising.

11. All documents and communications that reflect or relate to any voter registration
activity, voter identification, or get-out-the-vote ("GOTV") activity, or any generic campaign
activity, undertaken or funded by the Club in connection with any election in which a federal
candidate was on the ballot, including but not limited to the amount spent by the Club on each
such activity.

12. All documents and communications that relate to the Club's donations to the Council
for Responsible Government between October 17 and November 25, 2002, or any other
donations made to the Council for Responsible Government.

13. All documents and communications that relate to the Club's donations to the
Michigan Chamber of Commerce between July 1 and September 30, 2000, or any other
donations made to the Michigan Chamber of Commerce.

14. All documents and communications that relate to the Club's donations to the
American Conservative Union between July 1 and November 27, 2000, or any other donations
made to the American Conservative Union.

15. All documents and communications that relate to the Club's donations to America's
PAC in October 2004, or any other donations made to America's PAC.

16. All of the Club's current and former articles of incorporation, certificates of
incorporation, by-laws, resolutions, and amendments thereto.

17. All Board of Directors meeting agendas disseminated to Board members prior to or
at any specific meetings, and all minutes of those meetings as approved by the Board.

18. All annual budgets of the Club.

19. All Founders Committee/Leadership Council meeting notices disseminated to Founders Committee/Leadership Council members prior to or at any specific meetings, and all minutes of those meetings.

20. All documents related to the dissolution of the Political Club for Growth, including any such documents or communications generated prior to January 1, 1999.

21. All documents and communications that identify or discuss the origins or purpose of Citizens Club for Growth, or the reason for its existence under a name separate from the Club.

22. All of the Club's press releases.

23. All of the Club's IRS Forms 1120-POL, as filed with the Internal Revenue Service.

24. The Club's 2005 IRS Form 990.

25. All documents (including, but not limited to, electronic databases in electronic form) that track donor responses to Club fundraising solicitations or fundraising events, or otherwise reflect whether a donation was made in response to a particular fundraising solicitation or event. As stated in the Instructions on page 2, to the extent that you wish to redact the names and other identifying information (such as addresses or telephone numbers) of individual Club members or donors who have not been a part of the Club's management, Board, or Founders Committee/ Leadership Council, you may identify each such individual with a pseudonym or unique identification number in place of his or her actual name.

26. All documents that identify or discuss how to understand or use any databases produced in response to the previous document request (Request No. 25), including but not limited to the meaning of particular codes or fields in such databases.

27. An example of the self-addressed stamped envelopes referenced in CLUB 000062, CLUB 000067-68, and CLUB 000073.

28. All communications (or, in any instance when multiple copies of a standardized communication were sent, an example of each such communication) thanking donors to the Club for contributing in response to a particular solicitation or for a particular purpose.

29. All documents that identify or reflect individual donations to the Club of more than $5,000, either singly or in combination with other donations from a single donor in a calendar year.

30. All documents that identify the date, source and amount of corporate donations to the Club.

31. All internal communications (other than those to or from counsel) or communications with the Club's members, donors, vendors, or consultants that address the Club's status under the FECA or under section 527 of the Internal Revenue Code, or that address the Club's efforts to comply with the requirements of these statutes.

32. All documents referring or relating to the Club's past and present policies related to disposal or destruction of documents.

33. All documents referring or relating to any instances when Club documents were disposed of or destroyed.

34. All documents identified in, used, or relied upon in preparing your answers to the accompanying Interrogatories.

## INTERROGATORIES

The Commission requests that the Club respond to the following Interrogatories by serving a copy of its answers on counsel for the Commission within 30 days after service of these Discovery Requests. Unless otherwise noted, please provide answers that cover the time period from January 1, 1999 to the present. Business records produced in lieu of a written answer pursuant to Federal Rule of Civil Procedure 33(d) shall be produced in their entirety for inspection and copying at the offices of the Commission on or before the same date, and shall be identified by bates number and the interrogatory to which they are responsive.

1.    Identify each written or recorded (e.g., on videotape, CD or DVD) solicitation for donations to the Club or membership in the Club, and the amount of money received in response to each such solicitation. For written or recorded solicitations, "identify" shall mean to provide the date(s) and bates number(s) of the solicitation.

2.    Identify each person, including any contractors, who solicited funds for the Club, including oral solicitations, and for each person state the time period during which s/he solicited funds for the Club and whether the solicitations were written, oral, or both.

3.    Identify, by date and bates number, each Club political advertisement or political poll, whether and when each such advertisement or poll was disseminated or taken, and the amount spent by the Club on each such advertisement or poll.

4.    Separately identify (by category and year) the amount of money spent by the Club on: political advertising; political polling; phone banks; mass mailings; and candidate research and evaluation (as described by the Club on its website, in CLUB 000063, and David Keating's March 23, 2005 deposition at pages 72-73).

5.    Identify each state or federal candidate that the Club or PAC endorsed, supported or opposed, directly or indirectly, and for each such candidate, set forth the amount of earmarked contributions that the Club or PAC received for such candidate; the amount of disbursements the PAC has made, in whole or in part, related to such candidate (or such candidate's opponent); and the amount of disbursements the Club has made, in whole or in part, related to such candidate (or such candidate's opponent).  This interrogatory is not limited to support or opposition that expressly advocated for or against a particular state or federal candidate.

6.    Identify each person (other than outside counsel) who participated in, or provided documents or information for, the preparation of your responses to these Discovery Requests. With respect to each such person, identify the specific Interrogatories and/or Requests for Production, and state whether the person participated in preparing the response, or provided documents or information.

Respectfully submitted,

Lawrence H. Norton
General Counsel

Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

David Kolker
Assistant General Counsel
(D.C. Bar #394558)

Erin K. Monaghan
Attorney
(D.C. Bar #438434)


Kevin Deeley
Attorney

FOR THE PLAINTIFF
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C.  20463
(202) 694-1650
(202) 219-0260 (FAX)

Date: August _30_, 2006