UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL ELECTION COMMISSION, | ) |
| Plaintiff, | ) ) ) Civil Action No. 05-1851 (RMU) |
| v. | ) ) ) |
| CLUB FOR GROWTH, INC., | ) ) ) |
| Defendant, | ) ) |

**STIPULATION FOR ENTRY OF CONSENT JUDGMENT**

Plaintiff Federal Election Commission ("Commission") and defendant Citizens Club for Growth, Inc. f/k/a Club for Growth, Inc. ("Defendant") hereby stipulate that:

I.	The caption of these proceedings should be changed to Federal Election Commission v. Citizens Club For Growth, Inc.

II.	This action for declaratory, injunctive and other appropriate relief was instituted by the Commission pursuant to the express authority granted to the Commission under 2 U.S.C. §§ 437d(a)(6) and 437g(a)(6)(A). This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1345 as an action brought by an agency of the United States expressly authorized to sue by an Act of Congress.

**III.	Applicable Law**

1.	The Federal Election Campaign Act of 1971, as amended, 2 U.S.C. §§ 431-55 ("the Act"), defines a political committee as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar

year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 2 U.S.C. § 431(4)(A). In *Buckley v. Valeo*, 424 U.S. 1, 79 (1976), the Supreme Court construed the term "political committee" to "encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate."

    2.    The Act defines the term "contribution" as including "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i). When a statement in a solicitation "leaves no doubt that the funds contributed would be used to advocate [a candidate's election or] defeat at the polls, not simply to criticize his policies during the election year," then proceeds from that solicitation are contributions. *See FEC v. Survival Education Fund, Inc.*, 65 F.3d 285, 295 (2d Cir. 1995).

    3.    The Act defines the term "expenditure" as including "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(9)(A)(i).

    4.    The Act requires that within ten days of becoming a political committee, a committee must register with the Commission and file a statement of organization, which must include the name, address, and type of committee; the name, address, relationship, and type of any connected organization or affiliated committee; the name, address, and position of the custodian of books and accounts of the committee; the name and address of the treasurer of the committee; and a listing of all banks, safety deposit boxes, or other depositories used by the committee. *See* 2 U.S.C. § 433.

    5.    The treasurer of a political committee must file periodic reports of the committee's receipts and disbursements with the Commission for public disclosure. *See* 2

U.S.C. § 434(a)(1). In the case of committees that are not authorized committees of a candidate for Federal office, these reports shall include, *inter alia*, the amount of cash on hand at the beginning of the reporting period, *see* 2 U.S.C. § 434(b)(1); the total amounts of the committee's receipts for the reporting period and for the calendar year to date, *see* 2 U.S.C. § 434(b)(2); and the total amounts of the committee's disbursements for the reporting period and the calendar year to date. *See* 2 U.S.C. § 434(b)(4).

6. The Act provides that no person shall make contributions to any political committee that, in the aggregate, exceed $5,000 in any calendar year, with an exception for political committees established and maintained by a state or national political party. *See* 2 U.S.C. § 441a(a)(1)(C). Further, the Act prohibits any political committee from knowingly accepting any contribution in violation of the statutory limits. *See* 2 U.S.C. § 441a(f).

7. Pursuant to 2 U.S.C. § 441b(a), it is unlawful for any political committee to knowingly accept or receive, directly or indirectly, any contribution from a corporation or union made in connection with a federal election.

8. Pursuant to 2 U.S.C. § 441b, it is also unlawful for any corporation to make contributions or expenditures in connection with any federal election. *See also* 11 C.F.R. § 114.2(a).

9. Those Political Organizations established under Internal Revenue Code section 527 (26 U.S.C. § 527) that are not political committees under the Act are required to file disclosure reports with the Internal Revenue Service that include some, but not all, of the information political committees must report to the Commission. Unlike a political committee, a Section 527 organization may avoid disclosing certain receipts if it pays the highest corporate tax rate on such funds. In addition, a Section 527 organization which does not trigger political

committee status may accept contributions larger than $5,000 and accept funds from corporations and unions.

### IV. Relevant Facts

#### Defendant

10. Defendant is a Virginia corporation incorporated on May 4, 1999. Defendant filed a Notice of 527 Status with the Internal Revenue Service ("IRS") on July 19, 2000, registering as a political organization under 26 U.S.C. § 527. Between August 30, 2000 and December 31, 2004, Defendant made disbursements totaling approximately $15.1 million. Between January 1, 2005 and December 31, 2006, Defendant made disbursements totaling approximately $7.4 million. Defendant has neither registered as a political committee nor filed any reports of receipts and disbursements with the Commission.

11. In January, 2007, a 501(c)(4) organization purchased the name and non-monetary assets of Defendant. Accordingly, Defendant changed its name from Club for Growth, Inc. to Citizens Club for Growth, Inc. Around the time that Defendant changed its own name, Defendant changed the name of its connected political committee ("Defendant's PAC") from Club for Growth, Inc. PAC to Citizens Club for Growth, Inc. PAC.

#### Proceedings Before the Commission

12. In 2003, the Commission received a complaint from counsel to the Democratic Senatorial Campaign Committee complaining of an ad then being broadcast and asserting that the Defendant's activities required it to register as a political committee. An administrative matter ensued and the Commission ultimately made certain findings as described below.

Expenditures

13.     The Commission found that between 2000 and 2004, Defendant made expenditures totaling at least $1.28 million on communications to the general public expressly advocating the election or defeat of a clearly identified federal candidate.

14.     The Commission found that in 2000, Defendant made expenditures totaling $350,380.53 for advertisements and telephone messages containing express advocacy of the election or defeat of federal candidates, including $120,212 for "Keller and Sublette;" $120,479 for "Mission" radio and television advertisements; $49,266 for "Flake Commercial;" $20,792.49 for get-out-the-vote ("GOTV") calls made on behalf of Jeff Flake, a candidate in the Republican primary in Arizona's 1st Congressional District; and $39,631.04 for GOTV calls and push polls made on behalf of Ric Keller, a candidate in the Republican primary in Florida's 8th Congressional District.

15.     The Commission found that in 2001, Defendant made expenditures totaling $97,954.88 for advertisements and telephone messages containing express advocacy, including $81,604.88 for "Taxes" and $16,350 for push polls on behalf of Gunner Delay, a candidate in the Republican special primary in Arkansas' 3rd Congressional District.

16.     The Commission found that in 2002, Defendant made expenditures totaling $840,000 for television advertisements containing express advocacy, including $140,000 for "Courage;" $100,000 for "Garrett;" and $600,000 for "Daschle Democrats," which aired in six states.

Contributions

17.     The Commission found that: At least five fundraising solicitations mailed by Defendant between August 2000 and August 2004 clearly indicated that the funds received

5

would be targeted to the election or defeat of specific federal candidates. Defendant received well in excess of $1,000 in contributions in response to such solicitations.

18. The Commission found that: Defendant has regularly accepted contributions from individuals in excess of $5,000 per year. During the 2004 election cycle, Defendant accepted aggregate contributions as large as $475,000 from a single individual. From 2000 through March 31, 2005, Defendant accepted approximately $9.36 million in contributions from individuals that exceeded $5,000 per contributor per year, including $433,500 in 2000; $1,263,500 in 2001; $1,554,500 in 2002; $1,540,000 in 2003; $3,568,490 in 2004; and $1,000,790 as of March 31, 2005. From April 1, 2005 through the end of 2006, Defendant accepted $1,425,375 in contributions from individuals in excess of $5,000 per year.

19. The Commission found that: From 2000 until December 31, 2004, Defendant accepted contributions from corporations and allowed corporations to become members. Since 2000, Defendant has accepted over $93,550 in corporate contributions, including $10,000 in 2000; $45,000 in 2002; $7,500 in 2003; and $31,050 in 2004.

Defendant's Major Purpose

20. The Commission found that Defendant's major purpose is influencing federal elections and, more specifically, electing pro-growth Republicans to Congress, including specific federal candidates selected by Defendant in each election cycle.

21. The Commission found that: In its public statements and communications to its supporters, Defendant has stated that its goal is to elect fiscally conservative Republican candidates to Congress. In its initial registration with the IRS, for example, Defendant averred that it was "primarily dedicated to helping elect pro-growth, pro-freedom candidates through political contributions and issue advocacy campaigns." In numerous fundraising solicitations,

Defendant asserted that the mission of Defendant is to "elect more pro-growth leaders to Congress," "help Republicans keep control of the House and take back the Senate," "elect pro-growth congressmen who will fight to cut taxes and limit government," "help Republicans retain control of the House and Senate in the upcoming elections," "help Republicans keep control of Congress," and "defeat status quo incumbents." In a January 23, 2003 letter from Stephen Moore, Defendant stated that its goals for the 2004 election cycle were (emphasis in original):

> Priority #1 -- <u>Raise the heat on weak Republicans and vulnerable Democrats who might sabotage the President's Economic Growth and Tax Cut Legislation</u>. We want those weak-kneed Republicans to worry about a challenge in their next primary. If they don't do what's right for the country, our ads will lay the groundwork to replace them.
>
> Priority #2 -- <u>Lay the groundwork to elect 20 more new Club for Growth candidates to Congress</u>. The more principled Republican members there are in the House and Senate, the more likely that we will see leaders and rank and file members of Congress with the backbone to do what's right for our country.
>
> Priority #3 -- <u>Elect more Club for Growth Senators</u>. The razor-thin Republican Majority is way too thin to get much accomplished. We need more votes in the Senate, reliable votes for economic growth, limited government and tax cut legislation.
>
> Priority #4 -- <u>Double our membership</u>. The more members we have, the more money we can raise for the very best candidates. Instead of generating $10 million to defeat the liberal Democrat tax and spenders, deploy a $15 to $20 million warchest to elect a working free market, pro-growth majority in Congress.

22. The Commission found that: Defendant's disbursements also show that its major purpose is influencing federal elections. Between August 30, 2000 and December 31, 2004, Defendant made disbursements totaling approximately $15.1 million, the vast majority of which were made in connection with federal elections, including, but not limited to, funding for candidate research, polling, and advertisements and other public communications referencing a clearly-identified federal candidate. In 2004, for example, Defendant spent approximately 88

7

percent of its total disbursements on advertising supporting or criticizing clearly identified federal candidates.

23. During this same period, Defendant's disbursements for state and local campaign activity comprised a small amount of its total spending.

V. Defendant contends that it made all of its fundraising communications with the good faith belief that they did not constitute solicitations for contributions under 2 U.S.C. § 431(8)(A)(i), that Defendant did not receive such contributions, and that its disbursements did not constitute expenditures under 2 U.S.C. § 431(9). Furthermore, Defendant contends that it operated under the good faith belief that it had not triggered political committee status, and that it fulfilled the applicable regulatory requirements via disclosure to the Internal Revenue Service of its overall receipts and disbursements.

VI. For purposes of this settlement, and in order to avoid protracted litigation costs, without admitting or denying each specific basis for the Commission's conclusions, Defendant no longer contests that:

1. Defendant violated 2 U.S.C. §§ 433 and 434 by failing to register and report as a political committee as of August 2000.

2. Defendant violated 2 U.S.C. § 441a(f) by accepting contributions from individuals in excess of $5,000 and violated 2 U.S.C. § 441b(a) by accepting corporate contributions.

VII. The Court should enter the attached Consent Judgment.

VIII. This stipulation resolves all matters arising from MUR 5365 and this litigation. Apart from enforcing the attached judgment, the Commission will take no further action regarding the matters described herein as to possible violations of the Act by Defendant. The

matters described herein include, but are not limited to, any potential violations by Defendant arising from or relating to Defendant's status as a political committee that may have occurred from the date of Defendant's incorporation to the date of this Consent Judgment. Further, the Commission will take no further action against any contributor to Defendant for the contributions that were the subject of MUR 5365 and this litigation.

Respectfully submitted,

FOR PLAINTIFF:

*/s/ Thomasenia P. Duncan*

Thomasenia P. Duncan
General Counsel

David Kolker (D.C. Bar # 394558)
Acting Associate General Counsel

Kevin Deeley
Acting Assistant General Counsel

Steve N. Hajjar
Attorney

FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, DC 20463
(202) 694-1650
(202) 219-0260 (FAX)

Date: August 22, 2007

FOR DEFENDANT:

*/s/*

Carol A. Laham (D.C. Bar # 415171)
Thomas W. Kirby (D.C. Bar # 915231)
Caleb P. Burns (D.C. Bar # 474923)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7000

Date: August 13, 2007